IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rooterman, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>Klodian Belegu, Quality Air Care Corporation and RM Water Damage Restoration LTD<br><br>*Defendants*. | Docket No. 1:24-cv-13015 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED HEARING**

Plaintiff Rooterman, LLC ("Rooterman") hereby submits this memorandum in support of its motion for a preliminary injunction and expedited hearing (the "Motion").

## I.   INTRODUCTION

Plaintiff is requesting that the Court grant injunctive relief based on the substance of its Verified Complaint. Specifically, Plaintiff seeks to restrain and enjoin Klodian Belegu, a former Rooterman franchisee who, individually or through Quality Air Care Corporation (of which he is/was sole owner) owned 13 franchise markets, from: his individual (and/or through his defendant corporations') ongoing unauthorized use and display of Plaintiff' trademarks, service marks, and other marks; his individual (and/or through his defendant corporations'); his breaches of post-franchise termination restrictive covenants; and his individual (and/or through his defendant corporations') improper use of Plaintiff's confidential and trade secret information.

All of the relevant factors to be considered in granting a preliminary injunction are present: (1) Plaintiff has a strong likelihood of success on the merits; (2) the relative harm to the

Defendants, if any, is outweighed by the irreparable harm that has occurred and will continue to occur to Plaintiff if the injunction is not granted; (3) the Defendants' unauthorized use of Plaintiff's trademarks, service marks, and other marks at issue harms the public interest; and, (4) it is in the best interest of the public for the Court to grant the Motion.

## II.  FACTUAL BACKGROUND

Rooterman is a national franchise brand, and has duly registered numerous trademarks, identified in Exhibit B to the Verified Complaint filed December 5, 2024. Rooterman grants franchises to qualified persons to establish and operate businesses that provide residential and commercial plumbing, drain, and related services to same which can include, without limitation, clean up/restoration services upon such things as water damage. Rooterman does so under a standard and unique system developed by the company. As part of the franchise agreement, Rooterman grants the right to use its federally-registered trade name, logo and other proprietary marks; *provided however,* that a franchisee must operate in accordance with Rooterman's uniform standards and meet the duties and requirements set forth by way of contract (*i.e.*, the applicable franchise agreement(s)) (the "Rooterman System").

Rooterman details its proprietary and unique Rooterman System in its various proprietary training operations manuals, and requires each franchisee to comply therewith. Rooterman supports and assists each franchised location, in part, by monitoring the franchisee's compliance with its standards, specifications, policies, and procedures. This support and assistance enables Rooterman to duplicate the customer experience everywhere, and it also safeguards the goodwill, favorable reputation, and positive image associated with the Rooterman System and its logos, symbols, trademarks, and service marks.

Since its founding by A. Corp., which was acquired in early 2022, Rooterman has expended substantial amounts of time, money, and effort to create and promote its favorable reputation and positive image by, among other things, developing strong brand recognition of its distinctive color schemes, logos, and symbols as trademarks, and service marks to identify the source, origin, and sponsorship of its system's facilities and services, all of which are identified in Exhibit B to the Verified Complaint (the "Rooterman Marks"). Pursuant to the Rooterman franchise agreements, all right, title, and interest in the Rooterman Marks, as well as the logos, trade styles, color combinations, designs, signs, symbols, and slogans of Rooterman used by franchisees in their franchised businesses, are owned by and remain solely vested in Rooterman.

Belegu, either individually or through the defendant Quality Air Care Corporation he solely owned, owned 13 franchise markets, acquired from 2019-2021. A true and correct copy of an exemplar of the 13 franchise agreements is attached as Exhibit C to the Verified Complaint; however, as the Verified Complaint sets forth, all 12 others are identical in all relevant respects. Thus, Belegu had the right to use the Rooterman Marks in 13 territories, and he (or Quality Air Care Corporation) was bound by the provisions of those franchise agreements, and the provisions identified in Exhibit C to the Verified Complaint.

Belegu was sent a default notice on August 12, 2024 as a result of his failure to pay royalties and other fees, which was a violation of Section 15.2(A) of the franchise agreements. *See* Verified Complaint, Exhibit C at § 15.2(A). This Section states in pertinent part: "Franchisee acknowledges that the occurrence of one or more of the events in this Section 15.2 would cause harm to the franchise and thereby lessen its value." *See* Verified Complaint, Exhibit C at § 15.2(A). Belegu failed to cure this default within the 30 calendar days he was offered. As such, all 13 franchise

agreements were terminated by notice dated September 16, 2024, and a true and correct copy of that notice is attached as Exhibit E to the Verified Complaint.

Upon termination, Belegu was obligated to completely disassociate from the franchise, return any proprietary and/or confidential manuals or materials, and not use any of the Rooterman System Marks. *See* Verified Complaint, Exhibit C at § 16(B). The Franchise Agreements state in relevant part:

> Upon termination or expiration of this Agreement, Franchises shall within 30 calendar days . . . Cease to hold himself or herself out as an [Rooterman] System franchise, cease the use of the Trademarks, logos, designs, materials, methods, promotional materials whether or not furnished by A Corp. and all other advertising, including without limitation, all forms of telephone directory advertising, and remove all signs, and Trademarks, in whatever form, from the location of the A Corp. office licensed by this Agreement and from all vehicles . . . [and] Return to A Corp. all manuals and printed materials belonging to A Corp. or bearing the [Rooterman] Trademarks.

*See* Verified Complaint, Exhibit C at §§ 16(B)-(C)

The Franchise Agreements also set forth certain protocols and procedures required of Belegu upon termination, including *inter alia*: (a) taking such action as may be required to ensure the change or deletion of the Rooterman Marks from internet advertisements, listings, or domains; (b) cease holding himself out as a Rooterman System franchise; (c) promptly returning all manuals and printed materials belonging to the Rooterman System or bearing the Rooterman Marks; (d) ceasing use of the Rooterman Marks, color combinations, designs, symbols and slogans. *See* Verified Complaint, Exhibit C at § 16.

Notably, the Franchise Agreements set forth a 3-year non-competition/non-solicitation restriction, and the area applicable was 100 miles of the territory of the franchise and 100 miles of the territory of any other franchisee. *See* Verified Complaint, Exhibit C at § 18.1. Notably, the Franchise Agreements state in relevant part:

> Franchisee agrees that as a condition of his affiliation with A Corp., its key personnel and stockholders, if applicable, shall execute covenants not to compete embodying these terms on forms provided by A Corp. Franchisee acknowledges that such prohibitions are necessary to protect A Corp's trade secrets and to otherwise insure the integrity of the [Rooterman] System and the rights of A Corp's other franchisees.

*See* Verified Complaint, Exhibit C at § 18.1. Each franchise agreement provided protections for the confidential information/trade secrets of the Rooterman system, and mandated that these materials be returned upon termination. *See* Verified Complaint, Exhibit C at §§ 16(C), 18.2.

The Franchise Agreements also provide Rooterman with a right to seek injunctive relief in the event of a violation of Rooterman's rights in relation to those marks. *See* Verified Complaint, Exhibit C at §§ 18.1, 18.2.

However, Belegu has failed to comply with his obligations under the Franchise Agreements, including by: (a) failing to comply with the above obligations in full and return any operation manuals or other confidential, proprietary and trade secret materials to Plaintiff; (b) flagrantly misusing the Rooterman Marks as alleged in the Verified Complaint; and (c) directly and flagrantly competing and soliciting in violation of the exclusivity/non-competition/non-solicitation/confidentiality protections in the Franchise Agreements. Specifically, Belegu does so through a company that goes by the name above, "RM Water Damage Restoration LTD". Indeed, this Company is, in effect, the same operating entity Belegu formed while he was a franchisee (formed in December 2022 – *i.e.,* the same year Plaintiff purchased the Rooterman assets and franchise agreements from A. Corp.) Belegu has been, in essence, operating his full franchise business in 13 markets under another name.

Indeed, contrary to his post-termination obligations, Belegu and his entities continued to operate a Rooterman business displaying and advertising the Rooterman Marks. The most flagrant and offensive violation is the website, www.rootermanplumberservices.com, as indicated in

5

Exhibit A to the Complaint. This website was recently rerouted to a website, www.911SewerDrain.com.[1] Thus, it is possible Belegu has finally taken certain steps required, but not all of them, as there are multiple other matters to address, as detailed in Paragraph 19 of the Verified Complaint, including, without limitation:

a. https://x.com/rootermannj

b. https://maps.app.goo.gl/d8x4Y4eMCPXoSZ46A

c. https://www.yelp.com/biz/Rooterman-of-nj-toms-river

d. https://www.homeadvisor.com/rated.RooterMan.130537299.html

Further, it is even notable, curious and questionable that Belegu has chosen "RM" (the initials of Rooterman) to lead his company's name, RM Water Damage Restoration. This RM is one of Plaintiff's franchise marks as well. *See* Verified Complaint, Exhibit B. Belegu even employs persons who hold themselves out as working for his company, and that this company is "d/b/a Rooterman". *See* Verified Complaint, Exhibit D.

In short, Defendants continue to represent to the world that they are "Rooterman of New Jersey" when, since termination, they are most certainly not. Defendants use multiple trademarks of Rooterman, including even the "RM" logo, and Rooterman to the Rescue, throughout their website, and claim substantial goodwill for themselves that belongs to Rooterman.

---

[1]   Plaintiff continues to investigate this matter and, if appropriate, anticipates the possibility of amending the complaint to include this entity as a defendant. For example, as of this day, a Google search of "Rooterman of New Jersey" brings up an ad for 911 Sewer & Drain. (*See* Exhibit 1 hereto) This means that this company is still using Rooterman marks to direct traffic to Belegu's "new" website.

Moreover, to the extent 911 Sewer & Drain is some new entity, it is notable that Belegu claims it has been operating since 2020. (*See* Exhibit 2 hereto) which would be in direct competition with Belegu's multiple franchises, purchased between 2019 and 2021.

This is not just a violation of the Lanham Act; it is a violation of the post-termination restrictive covenants in all 13 of Belegu's franchise agreements.

### III. ARGUMENT

A party seeking a preliminary injunction must show that it is likely to succeed on the merits, that it is likely to suffer irreparable harm without an injunction, that the balance of equities tips in its favor, and that an injunction serves the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022).

Under 15 U.S.C. § 1116, federal courts can grant a preliminary injunction to enjoin activity that infringes federally registered trademarks. *Polar Corp. v. PepsiCo, Inc.*, 789 F.Supp.2d 219, 226 (D. Mass. 2011); *see also 7-Eleven, Inc v. Grewal*, 60 F.Supp.3d 272, 280 (D. Mass. 2014). The statute provides as follows: "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits . . . ." 15 U.S.C. § 1116(a). Thus, the "likelihood of success on the merits" factor is especially important to the preliminary injunction determination. *See* 15 U.S.C. § 1116(a); *PepsiCo, Inc.*, 789 F.Supp.2d at 226 (noting other factors for trademark infringement injunctions follow determinations of likelihood of consumer confusion); *Dunkin' Donuts Franchised Rests. LLC v. Wometco Donas Inc.*, 53 F.Supp.3d 221, 227 (D. Mass. 2014) (finding likelihood of success on the merits the most significant factor).

As more-fully described below, and as shown by the Verified Complaint, Rooterman has established all four factors necessary for an Order granting the preliminary relief sought. Accordingly, Plaintiff's request for injunctive relief should be granted.

A. **<u>Rooterman Has a Strong Likelihood of Success on the Merits of its Claims</u>**

A party seeking a preliminary injunction must show that it is likely to succeed on the merits. *Wometco Donas Inc.*, 53 F.Supp.3d at 227 (citing *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). To succeed on a trademark infringement and unfair competition claim, the "plaintiff must prove (1) the mark is entitled to trademark protection, and (2) use by another in commerce that is likely to cause confusion as to the source or sponsorship of the goods or services." *PepsiCo, Inc.*, 789 F.Supp.2d at 226. Here, like in *PepsiCo, Inc.*, Rooterman is entitled to trademark protection as it has distinctive federally registered trademarks. *Id.* (finding federal registration of a distinctive mark eligible for trademark protections); *see also Copy Cop, Inc. v. Task Printing, Inc.*, 908 F.Supp. 37, 43 (D. Mass. 1995) (finding federal registration of marks prima facie evidence of exclusive right to use registered mark in commerce).

"While evidence of actual confusion is 'often deemed the best evidence of possible future confusion' proof of actual confusion is not essential to finding likelihood of confusion." *Borinquen Biscuit Corp. v. M.V. Trading Corp*, 443 F.3d 112, 120 (1st Cir. 2006) (quoting *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006)). Consequently, the owner of the registered trademark is entitled to relief if use of the contested mark is likely to cause such a likelihood of confusion. *Id.*; *see KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004).

Typically, the First circuit employs an eight-part test to determine whether a likelihood of confusion exists in trademark infringement cases. *See Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 10 (1st Cir. 2012) (quoting *Pignons S. A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981)).

However, the traditional likelihood of confusion analysis is generally unnecessary in the context of a suit against a former franchisee for the continued use of the plaintiff's trademarks. As this Court has stated: "In cases where the use of the franchisor's mark is uncontroverted, a likelihood of consumer confusion is presumed." *Grewal*, 60 F.Supp.3d at 289-280 (D. Mass. 2014); see also *Curves Int'l v. Fox*, 2013 U.S. Dist. LEXIS 66235 at *4 (D. Mass. May 9, 2013) ("It is unnecessary to wade individually through the eight factors informing a 'likelihood of confusion' analysis here, where a franchisee has persisted in unauthorized use of her former franchisor's trademark to operate a business identical to that of her formally licensed franchise.").

Notably, this Court has previously held that "[t]he continued use of a trademark after breach of a franchise agreement is alone dispositive of the infringement issue." *Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc*, 139 F.Supp.2d 147, 158 (D. Mass. 2001); *see also Fox*, 2013 U.S. Dist. LEXIS 66235 at *4 (finding former franchisee's continued unauthorized use of franchise trademark "without doubt likely to sow consumer confusion"); *Fantastic Sams Franchise Corp. v. Talukders Inc.*, 2019 U.S. Dist. LEXIS 241162 at *6 (D. Mass. Jul. 31, 2019) ("Consumer confusion is presumed, however, in cases where a former franchisee continues to use its franchisor's marks and hold itself out as an authorized franchise when that is no longer the case.").

In this case, the Defendants have continuously used the Rooterman Marks since the Franchise Agreements were terminated. First, and most egregiously, the Defendants have brazenly continued to conduct business using the "Rooterman" trademarks, intellectual property, and name by, *inter alia*, their use of the website www.rootermanplumberservices.com for over two months post-termination. *See* Verified Complaint, at Exhibit A; *id.* at ¶¶ 1, 15. This website, and other infringing websites, purport to show that Defendants hold themselves out as an authorized Rooterman franchise, even though the Franchise Agreements were terminated pursuant to

9

Belegu's failure to cure defaults. *See id.* at ¶¶ 13, 15, 19. Notably, Defendants employ persons who hold themselves out as working for "RM Water Damage Restoration," and that this company is "d/b/a Rooterman". *See* Verified Complaint, Exhibit D.

Indeed, defendants continue to have a Twitter handle, Google Maps address, Yelp reference, and Home Advisor page identifying themselves as Rooterman of New Jersey in Toms River, New Jersey. *See* Verified Complaint, ¶ 19. Terminated as of September 16, 2024, the post-termination use of the Rooterman Marks was both expressly prohibited under the Franchise Agreements and an intentional violation of the Lanham Act. Moreover, it gives the confusing and erroneous impression that it is Plaintiff that is the entity conducting business from those sites, when Plaintiff is clearly not. It is completely plausible (and logical) that consumers will erroneously believe the Defendants' work is being carried out under the Rooterman name. This is inappropriate as a matter of contract and trademark law, and also a matter of great concern should the work not meet Rooterman's quality and brand standards. Such confusion and contact will result in considerable and irreparable harm to Rooterman's business and its relationship with customers. *See Gav-Stra Donuts, Inc*, 139 F.Supp.2d at 158 (continued use of a trademark post-franchise termination dispositive of trademark infringement).

Under these circumstances, the Defendants' practice of continued infringement on the Rooterman Marks after the termination of the Franchise Agreements is likely to cause confusion among consumers as to the relationship between Rooterman and the Defendants. This Court should recognize that Rooterman has met its burden of establishing a strong likelihood of success on its trademark infringement claim, as well as irreparable harm under the logic of the cases above that in the area of trademark law, showing a likelihood of success on the merits will drive the irreparable harm inquiry as well.

Rooterman is also likely to succeed on its claims because the Defendants agreed to refrain from any such infringement by and through the Franchise Agreements, yet have clearly violated these provisions. The Defendants' continued use of the intellectual property, trademark, and trade dress constitutes a clear violation of Sections 16 and 18 of the Franchise Agreements, which explicitly requires immediate cessation of use of the Rooterman Marks after termination. *See* Verified Complaint, ¶¶ 16-17; 44. Defendants have even additionally failed to return proprietary and confidential franchise manuals and other materials to Plaintiff. *Id.* There remain multiple internet listings still tied to Belegu in Toms River, New Jersey, meaning further that the Defendants have failed to "contact the internet service provider or website, which provide internet advertisement services, and request the change or deletion of the Trademarks, logos, and designs from the internet advertisements, listings, or domains" as required by Section 16(B) of the Franchise Agreements. *Id.* at ¶ 19.

Plaintiff has established likelihood of success on the merits of its claim for breach of contractual and notably, Defendants acknowledged and agreed, pursuant to Sections 18.1 and 18.2 of the Franchise Agreements, that if they failed to perform any of the aforementioned obligations, as required by the Franchise Agreements, Rooterman would be entitled to preliminary injunctive relief, as well as other remedies. *See* Verified Complaint, <u>Exhibit C</u>, at § 18. *See N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (factoring into its analysis the parties' agreement in their contract that a breach would cause irreparable injury), citing *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (parties' contractual provisions pertaining to agreement to injunctive relief entitled to some weight in the analysis of whether to grant injunctive relief); *see also Am. Health, Inc. v. Chevere*, Civil Action No. 12-1678-PG, 2013 U.S. Dist. LEXIS 135070 (D.P.R. Sept. 19, 2013).

Accordingly, for this reason as well, the relief requested by Rooterman in its Motion should be granted.

### B. Rooterman Will be Irreparably Harmed Absent This Court Granting Its Motion for A Preliminary Injunction

Without injunctive relief, Rooterman will suffer immediate and irreparable injury as a result of the Defendants' continued unauthorized use of the Rooterman Marks. In the trademark context, 15 U.S.C. § 1116(a) creates a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits for a violation of any right of a registrant of a mark registered in the Patent and Trademark Office. 15 U.S.C. § 1116(a); *see also Fritz v. Arthur F. Little, Inc.*, 944 F.Supp. 95, 98 (D. Mass. 1996) (quoting *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 611 (1st Cir. 1988) ("If the plaintiffs can show a likelihood of success on the merits, "irreparable harm is usually presumed."); *Grewal*, 60 F.Supp.3d at 289-280 ("In cases where the use of the franchisor's mark is uncontroverted, a likelihood of consumer confusion is presumed."). Courts recognize that irreparable injury occurs when two businesses use the same or similar trademarks and, as the First Circuit has stated: "every customer diverted to a defendant may be an undetectable loss, even a permanent one, to the plaintiff. Thus, a presumption of irreparable injury makes some sense." *Dialogo LLC v. Dantiago-Bauza*, 425 F.3d 1, 4 (1st Cir. 2005).

Here, Plaintiff has established a strong likelihood of success on the merits because the Defendants have illegally continued the unauthorized use of the Rooterman Marks. Thus, irreparable harm should be presumed, and Rooterman should be found to have satisfied the second factor of the four-part test. Even without that presumption, courts have found that the loss of customer goodwill and business relationships that are a consequence of unfair competition constitute irreparable harm. *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633,

640 (1st Cir. 1992) ("By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified, and, thus, the trademark owner cannot adequately be compensated."); *Fox*, 2013 U.S. Dist. LEXIS 66235 at *6 (holding that where former franchisee continues to use franchisor's trademark to "operate a business identical to that of her formerly licensed franchise," the franchisor "suffers harm to its goodwill and reputation, and is unable to protect its other franchisees from the actions of [defendant] while she holds herself out to be a legitimate . . . franchise."); *Grewal*, 60 F.Supp.3d at 280-81 (holding franchisor "will be unable to protect the quality of its brand in the absence of a consensual and ongoing franchisor-franchisee relationship" where former franchisee continued to use franchise trademarks).

Indeed, the First Circuit holds: "[b]y its very nature injury to goodwill and reputation is not easily measured or fully compensable in damages. Accordingly this kind of harm is often held to be irreparable." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 20 (1st Cir. 1996); *see also Sony BMG Music Entm't v. Tenenbaum*, 2009 U.S. Dist. LEXIS 115734, at *4 (D. Mass. Dec. 7, 2009) ("Once copyright infringement is established, irreparable injury is generally presumed, as is the conclusion that monetary damages alone are inadequate to compensate plaintiffs."); *see also Haber,* 188 F.3d at 49 (factoring into its analysis the parties' agreement in their contract that a breach would cause irreparable injury),

In this case, Defendants' misuse of the Rooterman Marks has resulted in Rooterman losing control over a number of proprietary items, and over the quality of goods and services provided under the Rooterman Marks in Belegu's markets, thereby resulting in clear irreparable harm to

Plaintiff and its trademarks. This Court should find that Rooterman has met its burden of establishing irreparable harm absent injunctive relief.[2]

### C. A Preliminary Injunction Will Not Cause Harm to Anyone Other Than The Offending Defendants, Which Does Not Outweigh the Harm to Plaintiff

The harm Rooterman will continue to suffer to its goodwill, reputation, and established customer base without a preliminary injunction far outweighs any harm the Defendants will suffer, if any, should such injunctive relief be granted. In fact, the only potential harm to Defendants are lost profits resulting from their misuse of the Rooterman Marks and violation of the restrictive covenants to which they are bound. This is not irreparable at all. This is, at best, a monetary consequence of Defendants' brazen and intentional conduct.[3]

Moreover, as one court noted, this type of argument deserves no weight, as harm in the form of lost profits where a former franchisee utilizes a franchisor's trademarks without permission, is not entitled to consideration in assessing the harm caused by an injunction. *See Wometco Donas Inc.*, 53 F.Supp.3d at 232 (finding former franchisee's potential of lost profits alone does not constitute sufficient hardship); *see also Classic Lawn Ornaments, Inc.*, 843 F.2d at 611 ("Where the only hardship that the defendant will suffer is lost profits from an activity

---

[2]   In *7-Eleven, Inc. v. Grewal,* the Court partially denied the plaintiff's motion for preliminary injunction as to enforcement of the franchise agreement's "non-compete clause," rejecting the argument that there was irreparable harm as a result of lost profits from a single franchise location selling convenience products. *See Grewal*, 60 F.Supp.3d at 283-286. This is not Plaintiff's argument here. Plaintiff's argument here is in light with *Curves Int'l. See Curves Int'l*, 2013 U.S. Dist. LEXIS 66235, at *6 (finding non-compete agreement necessary to protect franchisor's business, especially where franchisee "acknowledged as much in the Franchise Agreement").

[3]   Notably, as set forth in the Motion filed herewith, Defendants also ceased paying royalties to Plaintiff and owe Plaintiff substantial royalties, a matter which will be arbitrated. In this regard, Defendants undertook a very calculated path to deprive Plaintiff of revenues, retain revenue they should not retain, and continue to use Plaintiff's trademarks and compete in violation of their restrictive covenants post-default and termination. If anything, any "monetary" harm that may be claimed by Defendants to oppose the Motion should be balanced against the financial harm to Plaintiff that Defendants already caused.

has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'"). And, in a related context, the Second Circuit has rejected any such argument Defendants might make here, holding that prohibiting a party from deliberately infringing upon another party's trade dress does not give the usurping party "any standing to complain that his vested interests will be disturbed." *My–T Fine Corp. v. Samuels,* 69 F.2d 76, 78 (1934) (Hand, J.).

For these reasons, the balance of the equities favors Rooterman, and a preliminary injunction should be issued.

### D. A preliminary injunction will serve the public interest.

The public will benefit from the issuance of a preliminary injunction because it will require the Defendants to disassociate and distinguish their business from Rooterman in every way, and not just "some" ways. See, e.g., Footnote 1, supra. Defendants will not be allowed to represent Rooterman in any way, and when members of the public seek out Rooterman, they will not be misdirected to an entity that is not actually Rooterman. Rooterman customers and members of the public who desire to use well-established Rooterman branded services will actually receive what they wanted to receive.

Notably, where an injunction would halt confusion in the marketplace, public policy weighs in favor of preliminary injunctive relief. *See Grewal*, 60 F.Supp.3d at 282 (quoting *Hypertherm, Inc. v. Precision Products, Inc.*, 832 F.2d 697, 700 (1st Cir. 1987) ("Given the societal value of full disclosure and fair competition, together with the policy of the law to provide at least minimal protection to established trade names, courts are in agreement that preventing customer confusion is clearly in the public interest."); *see also Wometco Donas Inc.*, 53 F.Supp.3d at 232 (finding public interest lies in favor of granting a preliminary injunction where former franchisee

refused to pay renewal fees and continued to operate as a legitimate franchise and use franchise trademarks).

For these reasons, this fourth factor weighs in favor of Plaintiff's requested injunctive relief as well.

## IV. CONCLUSION

For all of the foregoing reasons, the Motion should be granted in its entirety, and Plaintiff awarded the injunctive relief sought and set forth in its Proposed Order attached to its Motion.

Respectfully submitted,

ROOTERMAN, LLC

By its counsel

Dated: December 6, 2024

*Jeffrey M. Rosin*

Jeffrey M. Rosin, BBO# 629216
O'HAGAN MEYER, PLLC
140 Kendrick Street, Bldg. C
Needham, MA 02494
Telephone: (617) 843-6800
Fax: (617) 843-6810
jrosin@ohaganmeyer.com

**CERTIFICATE OF SERVICE**

 I hereby certify that on the 6th day of December 2024, the Plaintiff's Memorandum in Support of Its Motion for Preliminary Injunction and Expedited Hearing was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/Jeffrey M. Rosin/*
Jeffrey M. Rosin
