IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rooterman, LLC ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Docket No. 1:24-cv-13015 |
| ) | |
| Klodian Belegu, Quality Air Care ) | |
| Corporation, RM Water Damage ) | |
| Restoration LTD and 911 Sewer & Drain ) | |
| Corporation.) ) | |
| *Defendants.* ) | |

## PLAINTIFF'S REVISED MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION TO CONFORM WITH AMENDED COMPLAINT FILED DECEMBER 16, 2024

Plaintiff Rooterman, LLC ("Rooterman") hereby submits this memorandum in support of its motion for a preliminary injunction and expedited hearing (the "Motion").

## I.     INTRODUCTION

Plaintiff is requesting that the Court grant injunctive relief based on the substance of its Verified Amended Complaint. Specifically, Plaintiff seeks to restrain and enjoin Klodian Belegu, a former Rooterman franchisee who, individually or through Quality Air Care Corporation (of which he is/was sole owner) owned 13 franchise markets, from: (a) his individual (and/or through his defendant corporations') ongoing unauthorized use and display of Plaintiff' trademarks, service marks, and other marks; (b) his individual (and/or through his defendant corporations') solicitation of Plaintiff's customers for Defendants' own separate business; (c) his clear breaches of post-franchise termination restrictive covenants while he competes in the identical business and identical territories he served in his franchise capacity; and his individual (and/or through his

1

defendant corporations') improper continued use of Plaintiff's confidential and trade secret information, as he has failed to return any of that proprietary information to Plaintiff..

All of the relevant factors to be considered in granting a preliminary injunction are present: (1) Plaintiff has a strong likelihood of success on the merits of each of its two claims; (2) the relative harm to the Defendants, if any, is outweighed by the irreparable harm that has occurred and will continue to occur to Plaintiff if the injunction is not granted; (3) the Defendants' unauthorized use of Plaintiff's trademarks, service marks, and other marks at issue harms the public interest; and, (4)  it is in the best interest of the public for the Court to grant the Motion.

## II.    FACTUAL BACKGROUND

Rooterman is a national franchise brand, and has duly registered numerous trademarks, identified in Exhibit B to the Verified Amended Complaint filed December 16, 2024. Rooterman grants franchises to qualified persons to establish and operate businesses that provide residential and commercial plumbing, drain, and related services to same which can include, without limitation, clean up/restoration services upon such things as water damage. Rooterman does so under a uniform and standard, but unique franchise system developed by the company. As part of the franchise agreement, Rooterman grants the right to use its federally-registered trade name, logo and other proprietary marks to franchisees; *provided however,* that a franchisee must operate in accordance with Rooterman's uniform standards and meet the duties and requirements set forth by way of contract (*i.e.*, the applicable franchise agreement(s)) (the "Rooterman System").

Rooterman details the Rooterman System in its various proprietary training operations manuals, and requires each franchisee to comply therewith. Rooterman supports and assists each franchised location, in part, by monitoring the franchisee's compliance with its standards, specifications, policies, and procedures.  This support and assistance enables Rooterman to

duplicate the customer experience everywhere, and it also safeguards the goodwill, favorable reputation, and positive image associated with the Rooterman System and its logos, symbols, trademarks, and service marks.

Since its founding by A. Corp., which was acquired by Plaintiff in early 2022, Rooterman has expended substantial amounts of time, money, and effort to continue to develop and promote its reputation and goodwill by, among other things, developing strong brand recognition of its distinctive color schemes, logos, and symbols as trademarks, and service marks to identify the source, origin, and sponsorship of its system's facilities and services, all of which are identified in Exhibit B to the Verified Complaint (the "Rooterman Marks"). Pursuant to the Rooterman franchise agreements, Rooterman makes clear that all right, title, and interest in the Rooterman Marks, as well as the logos, trade styles, color combinations, designs, signs, symbols, and slogans of Rooterman used by franchisees in their franchised businesses, are owned by and remain solely vested in Rooterman and such trademarks can only be used by permission from Rooterman.

Belegu, either individually or through the defendant Quality Air Care Corporation he solely owned, owned 13 franchise markets, acquired from 2019-2021. A true and correct copy of an exemplar of the 13 franchise agreements is attached as Exhibit C to the Verified Complaint; however, as the Verified Complaint sets forth, all 12 others are identical in all relevant respects. Thus, Belegu had the right to use the Rooterman Marks in 13 territories, each identified in the Verified Complaint, and he (or Quality Air Care Corporation) was bound by the provisions of those franchise agreements, and the provisions identified in Exhibit C to the Verified Complaint.

Belegu was sent a default notice on August 12, 2024 as a result of his failure to pay royalties and other fees, which was a violation of Section 15.2(A) of the franchise agreements. *See* Verified Complaint, <u>Exhibit C</u> at § 15.2(A). This Section states in pertinent part: "Franchisee acknowledges

that the occurrence of one or more of the events in this Section 15.2 would cause harm to the franchise and thereby lessen its value." *See* Verified Complaint, <u>Exhibit C</u> at § 15.2(A). Belegu failed to cure this default within the 30 calendar days he was offered. As such, all 13 franchise agreements were terminated by notice dated September 16, 2024, and a true and correct copy of that notice is attached as Exhibit K to the Verified Complaint.

Upon termination, Belegu was obligated to completely disassociate from the franchise, return any proprietary and/or confidential manuals or materials, and not use any of the Rooterman System Marks. *See* Verified Complaint, <u>Exhibit C</u> at § 16(B). The Franchise Agreements state in relevant part:

> Upon termination or expiration of this Agreement, Franchises shall within 30 calendar days . . . Cease to hold himself or herself out as an [Rooterman] System franchise, cease the use of the Trademarks, logos, designs, materials, methods, promotional materials whether or not furnished by A Corp. and all other advertising, including without limitation, all forms of telephone directory advertising, and remove all signs, and Trademarks, in whatever form, from the location of the A Corp. office licensed by this Agreement and from all vehicles . . . [and] Return to A Corp. all manuals and printed materials belonging to A Corp. or bearing the [Rooterman] Trademarks.

*See* Verified Complaint, <u>Exhibit C</u> at §§ 16(B)-(C)

The Franchise Agreements also set forth certain protocols and procedures required of Belegu upon termination, including *inter alia*: (a) taking such action as may be required to ensure the change or deletion of the Rooterman Marks from internet advertisements, listings, or domains; (b) cease holding himself out as a Rooterman System franchise; (c) promptly returning all manuals and printed materials belonging to the Rooterman System or bearing the Rooterman Marks; (d) ceasing use of the Rooterman Marks, color combinations, designs, symbols and slogans. *See* Verified Complaint, <u>Exhibit C</u> at § 16.

Notably, the Franchise Agreements set forth a 3-year non-competition/non-solicitation restriction, and the area applicable was 100 miles of the territory of the franchise and 100 miles of

the territory of any other franchisee. *See* Verified Complaint, <u>Exhibit C</u> at § 18.1. Notably, the Franchise Agreements state in relevant part:

> Franchisee agrees that as a condition of his affiliation with A Corp., its key personnel and stockholders, if applicable, shall execute covenants not to compete embodying these terms on forms provided by A Corp. Franchisee acknowledges that such prohibitions are necessary to protect A Corp's trade secrets and to otherwise insure the integrity of the [Rooterman] System and the rights of A Corp's other franchisees.

*See* Verified Complaint, <u>Exhibit C</u> at § 18.1. Each franchise agreement provided protections for the confidential information/trade secrets of the Rooterman system, and mandated that these materials be returned upon termination. *See* Verified Complaint, <u>Exhibit C</u> at §§ 16(C), 18.2.

The Franchise Agreements also provide Rooterman with a right to seek injunctive relief in the event of a violation of Rooterman's rights in relation to those marks.  *See* Verified Complaint, <u>Exhibit C</u> at §§ 18.1, 18.2.

However, Belegu has failed to comply with his obligations under the Franchise Agreements, including by: (a) failing to comply with the above obligations in full and return any operation manuals or other confidential, proprietary and trade secret materials to Plaintiff; (b) flagrantly misusing the Rooterman Marks as alleged in the Verified Complaint; and (c) directly and flagrantly competing and soliciting in violation of the exclusivity/non-competition/non-solicitation/confidentiality protections in the Franchise Agreements. Specifically, Belegu does so through a company that goes by the name above, "RM Water Damage Restoration LTD" and/or "911 Sewer & Drain". Indeed, these Companies are, in effect, the same operating entities Belegu formed while he was a franchisee (formed in December 2022 – *i.e.,* the same year Plaintiff purchased the Rooterman assets and franchise agreements from A. Corp.) Belegu has been, in essence, operating his full franchise business in 13 markets under another name.

Those 13 franchise markets are as follows: Bergen County, Ocean County, Essex County, Monmouth County, Morris County, Hudson County, Middlesex County, Passaic County, and Somerset County in New Jersey Bergen County in New Jersey; Rockland County, Richmond County and West Chester County in New York, and Bucks County and Montgomery County in Pennsylvania. *See* Verified Complaint, ¶ 12.

Belegu (and/or his applicable entity) have and continue to be directly engaged in services comprising the Rooterman System within the identical area of his former franchise counties, which is the restricted area for the restrictive covenants at issue. *See* Verified Complaint, Exhibit F (911 Sewer & Drain conducting business throughout New Jersey and in New York). Indeed, Belegu, through his Defendant corporations, have and continue to provide the same services as Rooterman, including emergency plumbing services, drain cleaning, sewer line repair and replacement, water heater repair and installation, toilet repair and installation, garbage disposal repair and installation, sump pump repair and installation, leak detection, and pipe repair and replacement, among other services. *See* Verified Complaint, Exhibit G. Notably, Belegu applied to register a trademark for 911 Sewer & Drain on or about April 8, 2022, within a few months of Plaintiff's acquisition of A. Corp's interest in Rooterman. *See* Verified Complaint, Exhibit D. These marks were first used in commerce on or about February 26, 2024, just before Belegu (and/or his applicable entity) began a continued failure to pay applicable royalties and fees under such Franchise Agreements. *Id.* Moreover, the 911 Sewer & Drain website contains blog posts dating back to August 10, 2023. *See* Verified Complaint, Exhibit E. It is reasonable to believe that Belegu, through his Defendant corporations, began to compete directly and solicit customers from Plaintiff well before the termination of the franchise agreements. It is reasonable to believe that Belegu has intentionally,

and willfully, breached the covenants of his franchise agreements since right after Plaintiff acquired the assets of A. Corp.

Indeed, contrary to his post-termination obligations, Belegu and his entities even continued to operate a Rooterman business displaying and advertising the Rooterman Marks. The most flagrant and offensive violation is the website, www.rootermanplumberservices.com, as indicated in Exhibit A to the Amended Complaint. This website was recently rerouted to a website, www.911SewerDrain.com.[1] Moreover, Belegu continues to use the Rooterman marks and names to unlawfully direct customers to his competing businesses. The Facebook and Google pages for 911 Sewer & Drain were created on former Rooterman pages, and still contain references to the Rooterman marks and names. *See* Verified Complaint, Exhibit H; *id.*, Exhibit I. Thus, it is possible Belegu has finally taken certain steps required, but not all of them, as there are multiple other matters to address, as detailed in Paragraph 28 of the Verified Complaint, including, without limitation:

    a.   https://x.com/rootermannj

    b.   https://maps.app.goo.gl/d8x4Y4eMCPXoSZ46A

    c.   https://www.yelp.com/biz/Rooterman-of-nj-toms-river

    d.   https://www.homeadvisor.com/rated.RooterMan.130537299.html

Further, it is even notable, curious and questionable that Belegu has chosen "RM" (the initials of Rooterman) to lead his company's name, RM Water Damage Restoration.  This RM is

---

[1]    As of this day, a Google search of "Rooterman of New Jersey" brings up an ad for 911 Sewer & Drain. (See Exhibit 1 hereto) This means that this company is still using Rooterman marks to direct traffic to Belegu's "new" website.

Moreover, to the extent 911 Sewer & *Drain* is some new entity, it is notable that Belegu claims it has been operating since 2020. (See Exhibit 2 hereto) which would be in direct competition with Belegu's multiple franchises, purchased between 2019 and 2021.

one of Plaintiff's franchise marks as well. *See* Verified Complaint, <u>Exhibit B</u>. Belegu even employs persons who hold themselves out as working for his company, and that this company is "d/b/a Rooterman".  *See* Verified Complaint, <u>Exhibit J</u>.

In short, Defendants continue to represent to the world that they are "Rooterman of New Jersey" when, since termination, they are most certainly not. Defendants use multiple trademarks of Rooterman, including even the "RM" logo, and Rooterman to the Rescue, throughout their website, and claim substantial goodwill for themselves that belongs to Rooterman. Defendants continue to be directly engaged in services comprising the Rooterman system within the restricted area. Furthermore, Defendants have and continue to unfairly compete with Plaintiff and use Plaintiff's confidential and trade secret information post-termination.

This is not just a violation of the Lanham Act; it is a violation of the post-termination restrictive covenants in all 13 of Belegu's franchise agreements.

## III.    ARGUMENT

A party seeking a preliminary injunction must show that it is likely to succeed on the merits, that it is likely to suffer irreparable harm without an injunction, that the balance of equities tips in its favor, and that an injunction serves the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022).

Under 15 U.S.C. § 1116, federal courts can grant a preliminary injunction to enjoin activity that infringes federally registered trademarks. *Polar Corp. v. PepsiCo, Inc.*, 789 F.Supp.2d 219, 226 (D. Mass. 2011); *see also 7-Eleven, Inc v. Grewal*, 60 F.Supp.3d 272, 280 (D. Mass. 2014). The statute provides as follows: "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the

merits . . .." 15 U.S.C. § 1116(a). Thus, the "likelihood of success on the merits" factor is especially important to the preliminary injunction determination. *See* 15 U.S.C. § 1116(a); *PepsiCo, Inc.*, 789 F.Supp.2d at 226 (noting other factors for trademark infringement injunctions follow determinations of likelihood of consumer confusion); *Dunkin' Donuts Franchised Rests. LLC v. Wometco Donas Inc.*, 53 F.Supp.3d 221, 227 (D. Mass. 2014) (finding likelihood of success on the merits the most significant factor).

As more-fully described below, and as shown by the Verified Complaint, Rooterman has established all four factors necessary for an Order granting the preliminary relief sought. Accordingly, Plaintiff's request for injunctive relief should be granted.

### A.   Rooterman Has a Strong Likelihood of Success on the Merits of its Claims

A party seeking a preliminary injunction must show that it is likely to succeed on the merits. *Wometco Donas Inc.*, 53 F.Supp.3d at 227 (citing *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). To succeed on a trademark infringement and unfair competition claim, the "plaintiff must prove (1) the mark is entitled to trademark protection, and (2) use by another in commerce that is likely to cause confusion as to the source or sponsorship of the goods or services." *PepsiCo, Inc.*, 789 F.Supp.2d at 226. Here, like in *PepsiCo, Inc.*, Rooterman is entitled to trademark protection as it has distinctive federally registered trademarks. *Id.* (finding federal registration of a distinctive mark eligible for trademark protections); *see also Copy Cop, Inc. v. Task Printing, Inc.*, 908 F.Supp. 37, 43 (D. Mass. 1995) (finding federal registration of marks prima facie evidence of exclusive right to use registered mark in commerce).

"While evidence of actual confusion is 'often deemed the best evidence of possible future confusion' proof of actual confusion is not essential to finding likelihood of confusion." *Borinquen*

*Biscuit Corp. v. M.V. Trading Corp*, 443 F.3d 112, 120 (1st Cir. 2006) (quoting *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006)). Consequently, the owner of the registered trademark is entitled to relief if use of the contested mark is likely to cause such a likelihood of confusion. *Id.*; *see KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004).

Typically, the First circuit employs an eight-part test to determine whether a likelihood of confusion exists in trademark infringement cases. *See Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 10 (1st Cir. 2012) (quoting *Pignons S. A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981)).

However, the traditional likelihood of confusion analysis is generally unnecessary in the context of a suit against a former franchisee for the continued use of the plaintiff's trademarks. As this Court has stated: "In cases where the use of the franchisor's mark is uncontroverted, a likelihood of consumer confusion is presumed." *Grewal*, 60 F.Supp.3d at 289-280 (D. Mass. 2014); see also *Curves Int'l v. Fox*, 2013 U.S. Dist. LEXIS 66235 at *4 (D. Mass. May 9, 2013) ("It is unnecessary to wade individually through the eight factors informing a 'likelihood of confusion' analysis here, where a franchisee has persisted in unauthorized use of her former franchisor's trademark to operate a business identical to that of her formally licensed franchise.").

Notably, this Court has previously held that "[t]he continued use of a trademark after breach of a franchise agreement is alone dispositive of the infringement issue." *Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc*, 139 F.Supp.2d 147, 158 (D. Mass. 2001); *see also Fox*, 2013 U.S. Dist. LEXIS 66235 at *4 (finding former franchisee's continued unauthorized use of franchise trademark "without doubt likely to sow consumer confusion"); *Fantastic Sams Franchise Corp. v. Talukders Inc.*, 2019 U.S. Dist. LEXIS 241162 at *6 (D. Mass. Jul. 31, 2019) ("Consumer

confusion is presumed, however, in cases where a former franchisee continues to use its franchisor's marks and hold itself out as an authorized franchise when that is no longer the case.").

In this case, the Defendants have continuously used the Rooterman Marks since the Franchise Agreements were terminated. First, and most egregiously, the Defendants have brazenly continued to conduct business using the "Rooterman" trademarks, intellectual property, and name by, *inter alia*, their use of the website www.rootermanplumberservices.com for over two months post-termination. *See* Verified Complaint, at <u>Exhibit A</u>; *id.* at ¶¶ 1, 15. This website, and other infringing websites, purport to show that Defendants hold themselves out as an authorized Rooterman franchise, even though the Franchise Agreements were terminated pursuant to Belegu's failure to cure defaults. *See id.* at ¶¶ 13, 15, 19, 32. Notably, Defendants employ persons who hold themselves out as working for "RM Water Damage Restoration," and that this company is "d/b/a Rooterman". *See* Verified Complaint, <u>Exhibit J</u>.

Indeed, defendants continued to have a Twitter handle, Google Maps address, Yelp reference, and Home Advisor page identifying themselves as Rooterman of New Jersey in Toms River, New Jersey. *See* Verified Complaint, ¶ 19.[2] Defendants further have had, post-franchise termination, a Google Maps address and Facebook page with references to the Rooterman marks and names. *See* Verified Complaint, ¶ 29. Terminated as of September 16, 2024, the post-termination use of the Rooterman Marks was both expressly prohibited under the Franchise Agreements and an intentional violation of the Lanham Act. Moreover, it gives the confusing and erroneous impression that it is Plaintiff that is the entity conducting business from those sites, when Plaintiff is clearly not. It also gives the confusing and erroneous impression that Plaintiff

---

[2]    While Belegu is taking steps to make further changes since receiving copies of Plaintiffs' court papers, this should not foreclose the entry of a Court Order requested here, as the Court Order will help ensure that all violations of Plaintiff's rights, whatever they may be, must cease.

connected with the Defendant corporations, when Plaintiff is clearly not. It is completely plausible (and logical) that consumers did (and will continue to) erroneously believe the Defendants' work is being carried out under the Rooterman name.  This is inappropriate as a matter of contract and trademark law, and also a matter of great concern should the work not meet Rooterman's quality and brand standards. Such confusion and contact will result in considerable and irreparable harm to Rooterman's business and its relationship with customers. *See Gav-Stra Donuts, Inc*, 139 F.Supp.2d at 158 (continued use of a trademark post-franchise termination dispositive of trademark infringement).

Under these circumstances, the Defendants' practice of continued infringement on the Rooterman Marks after the termination of the Franchise Agreements is likely to cause confusion among consumers as to the relationship between Rooterman and the Defendants. This Court should recognize that Rooterman has met its burden of establishing a strong likelihood of success on its trademark infringement claim, as well as irreparable harm under the logic of the cases above that in the area of trademark law, showing a likelihood of success on the merits will drive the irreparable harm inquiry as well.

Rooterman is also likely to succeed on its claims because the Defendants agreed to refrain from any such infringement by and through the Franchise Agreements, yet have clearly violated these provisions.  The Defendants' continued use of the intellectual property, trademark, and trade dress constitutes a clear violation of Sections 16 and 18 of the Franchise Agreements, which explicitly requires immediate cessation of use of the Rooterman Marks after termination. *See* Verified Complaint, ¶¶ 19-21; 54. Defendants have even additionally failed to return proprietary and confidential franchise manuals and other materials to Plaintiff. *Id.* There remain multiple internet listings still tied to Belegu in Toms River, New Jersey, meaning further that the Defendants

have failed to "contact the internet service provider or website, which provide internet advertisement services, and request the change or deletion of the Trademarks, logos, and designs from the internet advertisements, listings, or domains" as required by Section 16(B) of the Franchise Agreements. *Id.* at ¶ 19.

The Defendants further continue to unfairly compete with Plaintiff within the restricted area, in violation of Section 18.1 of the Franchise Agreement. *Id.* at ¶¶ 20-25; *id.*, <u>Exhibit F</u>. The Defendants are directly engaged in services comprising the Rooterman System, including services such as emergency plumbing services, drain cleaning, sewer line repair and replacement, water heater repair and installation, toilet repair and installation, garbage disposal repair and installation, sump pump repair and installation, leak detection, and pipe repair and replacement, among other services. *Id.* ¶¶ 22-23; *id.*, <u>Exhibit G</u>. They do so through RM Water Damage Restoration and/or 911 Sewer & Drain, literally doing the exact same thing, in the exact same territories where Belegu and/or Quality Air Corporation had their franchise rights.  Moreover, the 911 Sewer & Drain website further advertises Franchise Opportunities. *Id.* ¶ 25; *id.*, <u>Exhibit G</u>.

Plaintiff notes that the Proposed Order it seeks is <u>only</u> to cease and desist violating restrictive covenants in the identical counties in which Belegu and/or Quality Air Care Corporation did business and had rights as franchisees.  With this Proposed Order, Plaintiff is asking for relief that is <u>less than</u> what the franchise agreements permit, as such franchise agreements required restrictions within 100 miles of any such counties as well.

For these reasons, Plaintiff has also established likelihood of success on the merits of its claim for breach of contractual obligation.  Notably, Defendants acknowledged and agreed, pursuant to Sections 18.1 and 18.2 of the Franchise Agreements, that if they failed to perform any of the aforementioned obligations, as required by the Franchise Agreements, Rooterman would be

entitled to preliminary injunctive relief, as well as other remedies. *See* Verified Complaint, <u>Exhibit</u> <u>C</u>, at § 18. *See N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (factoring into its analysis the parties' agreement in their contract that a breach would cause irreparable injury), citing *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (parties' contractual provisions pertaining to agreement to injunctive relief entitled to some weight in the analysis of whether to grant injunctive relief); *see also Am. Health, Inc. v. Chevere*, Civil Action No. 12-1678-PG, 2013 U.S. Dist. LEXIS 135070 (D.P.R. Sept. 19, 2013).

Accordingly, because there is a likelihood of success on the merits of both of Plaintiff's claims, this basis for the relief requested by Rooterman in its Motion is warranted.

### B.    Rooterman Will be Irreparably Harmed Absent This Court Granting Its Motion for A Preliminary Injunction

Without injunctive relief, Rooterman will suffer immediate and irreparable injury as a result of the Defendants' continued unauthorized use of the Rooterman Marks, and violation of their restrictive covenants.  In the trademark context, 15 U.S.C. § 1116(a) creates a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits for a violation of any right of a registrant of a mark registered in the Patent and Trademark Office. 15 U.S.C. § 1116(a); *see also Fritz v. Arthur F. Little, Inc.*, 944 F.Supp. 95, 98 (D. Mass. 1996) (quoting *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 611 (1st Cir. 1988) ("If the plaintiffs can show a likelihood of success on the merits, "irreparable harm is usually presumed."); *Grewal*, 60 F.Supp.3d at 289-280 ("In cases where the use of the franchisor's mark is uncontroverted, a likelihood of consumer confusion is presumed."). Courts recognize that irreparable injury occurs when two businesses use the same or similar trademarks and, as the First Circuit has stated: "every customer diverted to a defendant may be an undetectable loss, even a

permanent one, to the plaintiff. Thus, a presumption of irreparable injury makes some sense." *Dialogo LLC v. Dantiago-Bauza*, 425 F.3d 1, 4 (1st Cir. 2005).

Here, Plaintiff has established a strong likelihood of success on the merits because the Defendants have illegally continued the unauthorized use of the Rooterman Marks and competed directly in the identical counties where Belegu and/or Quality Air Care Corporation were franchisees (in fact, they did so for some time, and appear to be continuing to do so, using the very same Rooterman trademarks). Thus, irreparable harm should be presumed, and Rooterman should be found to have satisfied the second factor of the four-part test. Even without that presumption, courts have found that the loss of customer goodwill and business relationships that are a consequence of unfair competition constitute irreparable harm. *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992) ("By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified, and, thus, the trademark owner cannot adequately be compensated."); *Fox*, 2013 U.S. Dist. LEXIS 66235 at *6 (holding that where former franchisee continues to use franchisor's trademark to "operate a business identical to that of her formerly licensed franchise," the franchisor "suffers harm to its goodwill and reputation, and is unable to protect its other franchisees from the actions of [defendant] while she holds herself out to be a legitimate . . . franchise."); *Grewal*, 60 F.Supp.3d at 280-81 (holding franchisor "will be unable to protect the quality of its brand in the absence of a consensual and ongoing franchisor-franchisee relationship" where former franchisee continued to use franchise trademarks).

Indeed, the First Circuit holds: "[b]y its very nature injury to goodwill and reputation is not easily measured or fully compensable in damages. Accordingly, this kind of harm is often held to be irreparable." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 20 (1st Cir.

1996); *see also Sony BMG Music Entm't v. Tenenbaum*, 2009 U.S. Dist. LEXIS 115734, at *4 (D. Mass. Dec. 7, 2009) ("Once copyright infringement is established, irreparable injury is generally presumed, as is the conclusion that monetary damages alone are inadequate to compensate plaintiffs."); *see also Haber,* 188 F.3d at 49 (factoring into its analysis the parties' agreement in their contract that a breach would cause irreparable injury),

In this case, Defendants' misuse of the Rooterman Marks has resulted and will continue to result in Rooterman losing control over a number of proprietary items, and over the quality of goods and services provided under the Rooterman Marks in Belegu's markets, thereby resulting in clear irreparable harm to Plaintiff and its trademarks. This is exactly what the restrictive covenants in Belegu's (and his entity's) franchise agreement were designed to protect against, and it is a fair and legitimate business interest to seek to protect. Moreover, the Defendants' direct competition with Rooterman and flagrant misuse of trade secrets will further result in clear irreparable harm to Plaintiff. This Court should find that Rooterman has met its burden of establishing irreparable harm absent injunctive relief.[3]

### C.    A Preliminary Injunction Will Not Cause Harm to Anyone Other Than The Offending Defendants, Which Does Not Outweigh the Harm to Plaintiff

The harm Rooterman will continue to suffer to its goodwill, reputation, and established customer base without a preliminary injunction far outweighs any harm the Defendants will suffer, if any, should such injunctive relief be granted. In fact, the only potential harm to Defendants are

---

[3]    In *7-Eleven, Inc. v. Grewal,* the Court partially denied the plaintiff's motion for preliminary injunction as to enforcement of the franchise agreement's "non-compete clause," rejecting the argument that there was irreparable harm as a result of lost profits from a single franchise location selling convenience products. *See Grewal*, 60 F.Supp.3d at 283-286. This is not Plaintiff's argument here.  Plaintiff's argument here is in light with *Curves Int'l. See Curves Int'l*, 2013 U.S. Dist. LEXIS 66235, at *6 (finding non-compete agreement necessary to protect franchisor's business, especially where franchisee "acknowledged as much in the Franchise Agreement").

lost profits resulting from their misuse of the Rooterman Marks, trade secrets, and confidential information, and violation of the restrictive covenants to which they are bound. This is not irreparable at all. This is, at best, a monetary consequence of Defendants' brazen and intentional conduct.[4] To the extent Belegu and his entities are, by Court Order, restricted, he may certainly suffer harm, but that harm in the loss of his own goodwill but that will be the exact harm that the restrictive covenants were designed to tell him he would not be able to have. That is, Belegu could not "change the sign on the door" and just start taking all of the goodwill that was Plaintiff's investment in those markets for his own purposes.

Moreover, as one court noted, any monetary harm to Belegu or his entities deserves no weight, as harm in the form of lost profits where a former franchisee utilizes a franchisor's trademarks without permission, is not entitled to consideration in assessing the harm caused by an injunction. *See Wometco Donas Inc.*, 53 F.Supp.3d at 232 (finding former franchisee's potential of lost profits alone does not constitute sufficient hardship); *see also Classic Lawn Ornaments, Inc.*, 843 F.2d at 611 ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'"). And, in a related context, the Second Circuit has rejected any such argument Defendants might make here, holding that prohibiting a party from deliberately infringing upon another party's trade dress does not give the usurping party "any

---

[4]  Notably, as set forth in the Motion filed herewith, Defendants also ceased paying royalties to Plaintiff and owe Plaintiff substantial royalties, a matter which will be arbitrated. In this regard, Defendants undertook a very calculated path to deprive Plaintiff of revenues, retain revenue they should not retain, and continue to use Plaintiff's trademarks and compete in violation of their restrictive covenants post-default and termination. If anything, any "monetary" harm that may be claimed by Defendants to oppose the Motion should be balanced against the financial harm to Plaintiff that Defendants already caused.

standing to complain that his vested interests will be disturbed." *My–T Fine Corp. v. Samuels,* 69 F.2d 76, 78 (1934) (Hand, J.).

Moreover, as indicated above, Plaintiff is seeking <u>less than</u> it is entitled to with its restrictive covenants, and <u>only</u> seeking an Order that restrains Belegu in the identical counties in which he did business, and not seeking an Order that restrains Belegu within a 100 mile radius thereof. In this regard, there is less harm to Defendants by way of Plaintiff's proposed more narrowly tailored preliminary Order.[5]

For these reasons, the balance of the equities favors Rooterman, and a preliminary injunction should be issued.

### D. **A preliminary injunction will serve the public interest**.

The public will benefit from the issuance of a preliminary injunction because it will require the Defendants to disassociate and distinguish their business from Rooterman in every way, and not just "some" ways. <u>See, e.g.</u>, Footnote 1, <u>supra.</u> Defendants will not be allowed to represent Rooterman in any way, and when members of the public seek out Rooterman, they will not be misdirected to an entity that is not actually Rooterman. Rooterman customers and members of the public who desire to use well-established Rooterman branded services will actually receive what they wanted to receive.

Notably, where an injunction would halt confusion in the marketplace, public policy weighs in favor of preliminary injunctive relief. *See Grewal*, 60 F.Supp.3d at 282 (quoting *Hypertherm, Inc. v. Precision Products, Inc.*, 832 F.2d 697, 700 (1st Cir. 1987) ("Given the societal

---

[5]    Defendants request this without waiver (as all modifications to the franchise agreements must be in writing and signed by the parties, per Section 19.3 of Exhibit C to the Verified Amended Complaint). Defendants expressly reserve all rights to seek further relief if discovery so requires. Indeed, Belegu is currently looking to franchise 911 Sewer & Drain, and because 911 Sewer & Drain is a direct competitor this, in and of itself, threatens to harm Plaintiff well beyond the actual counties where Defendants do business.

value of full disclosure and fair competition, together with the policy of the law to provide at least minimal protection to established trade names, courts are in agreement that preventing customer confusion is clearly in the public interest."); *see also Wometco Donas Inc.*, 53 F.Supp.3d at 232 (finding public interest lies in favor of granting a preliminary injunction where former franchisee refused to pay renewal fees and continued to operate as a legitimate franchise and use franchise trademarks).

      For these reasons, this fourth factor weighs in favor of Plaintiff's requested injunctive relief as well.

## IV.  CONCLUSION

      For all of the foregoing reasons, the Motion should be granted in its entirety, and Plaintiff awarded the injunctive relief sought and set forth in its Proposed Order attached to its Amended Motion.

                    Respectfully submitted,

                    ROOTERMAN, LLC

                    By its counsel

Dated: December 19, 2024         *Jeffrey M. Rosin*

                    Jeffrey M. Rosin, BBO# 629216
                    O'HAGAN MEYER, PLLC
                    140 Kendrick Street, Bldg. C
                    Needham, MA 02494
                    Telephone: (617) 843-6800
                    Fax: (617) 843-6810
                    jrosin@ohaganmeyer.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of December 2024, *Plaintiff's Memorandum in Support of Its Motion for Preliminary Injunction and Expedited Hearing* was electronically filed.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*Jeffrey M. Rosin*
Jeffrey M. Rosin