UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rooterman, LLC,<br><br>              Plaintiff,<br><br>   v.<br><br>Klodian Belegu, Quality Air Care Corporation, RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation.<br><br>              Defendants. | Civil Action No. 1:24-cv-13015<br><br>**DECLARATION OF<br>KLODIAN BELEGU** |

I, Klodian Belegu, hereby declare:

1. I am over 18 years of age and have never been convicted of a crime involving fraud or dishonesty. I have knowledge of the facts set forth herein, and if called as a witness, could and would testify competently thereto.

2. I am a Defendant in the above-captioned matter. I make this declaration in support of Defendants' Opposition to Plaintiff's Revised Motion for a Preliminary Injunction (the "opposition").

3. In 2019 & 2020, Defendants Klodian Belegu and Quality Air Care Corporation ("QAC"), along with non-party Water Damage Solution of Bergen, LLC, executed a series of franchise agreements with non-party A Corp. One agreement, for Monmouth and Ocean Counties, was dated September 10, 2020, with a commencement date of August 19, 2020, but was not executed until January of 2021.

4. A true and correct copy of the foregoing Agreement is filed herewith as **Exhibit 1**.

5. At no time were Defendants 911 Sewer & Drain Corporation or Water Damage Restoration Ltd f/k/a RM Water Damage Restoration Ltd parties to any franchise agreement.

6. This entity changed its name on December 27, 2024.

7. A true and correct copy of the Name Change Certificate is filed herewith as **Exhibit 2**.

8. Upon information and belief, Rooterman, LLC, is but one of the businesses owned by Premium Service Brands ("PSB"), which also owns 360˚ Painting, ProLift Garage Doors, Maid Right, Kitchen Wise & Closet Wise, Window Gang, Rubbish Works Junk Removal, The Grout Medic, and House Doctors.

9. A true and correct copy of the webpage available at https://www.premiumservicebrands.com/franchise-brands/ is filed herewith as **Exhibit 3**.

10. At all relevant times, PSB's agents operated Plaintiff Rooterman and all of my communications with Plaintiff were through PSB agents.

11. Individually and through QAC, I invested hundreds of thousands of dollars in advertising to build up my franchises; he had no interest in losing them.

12. In January 2023, I found that the Google business result for "Rooter-Man" in Lakewood, New Jersey (one of the franchise territories) had a phone number of (732) 905-5477, which was the phone number for a competitor and prior franchisee.

13. This was not an isolated listing—dozens of Google listings for mine & QAC Rooterman territories had phone numbers that did not direct to the actual franchisee.

14. Although things got worse upon the PSB acquisition, it was not run much better under A Corp.; I had to send A Corp. an email showing a series of Google listings for QAC territories advertising "Rooterman" that were not, in fact, QAC listings.

15. A true and correct copy of that 11/12/19 email is attached hereto as **Exhibit 4**.

16. Rather than taking action, A Corp. told me to try to handle it myself.

17. A true and correct copy of that 11/13/19 email is attached hereto as **Exhibit 5**.

18. On February 26, 2024, PSB's marketing employees held a virtual meeting with a number of franchisees to review PSB's failures, including its deficient website.

19. One of the most significant issues was the lack of micro-sites.

20. A micro-site helps a customer locate a local service provider; a customer from Lakewood, NJ (or wherever), might not want to hire a service provider, like Rooterman, that shows a NY, NJ & PA territory.

21. For example, if there is a micro-site for Rooterman of Ocean County, NJ, the Lakewood customer would feel that they are getting a local technician who can serve their needs.

22. When A Corp. ran the franchise, I and QAC developed and set up our own websites, and A Corp. worked with me on at least 22 micro-sites.

23. PSB, through Plaintiff, prohibited this and took over all website marketing.

24. On November 15, 2023, PSB/Plaintiff eliminated my & QAC's micro-sites.

25. A true and correct copy of the 9/10/2024 email is attached hereto as **Exhibit 6**.

26. After numerous complaints, only approximately half of the necessary micro-sites were launched by PSB/Plaintiff on May 19, 2024.

27. A true and correct copy of the 9/12/2024 email is attached hereto as **Exhibit 7**.

28. Despite the breached by Rooterman, and despite an arbitrary increase of $1,332 per month, I and QAC continued to make our necessary payments.

29. A true and correct copy of the Green Royalty Summary is attached hereto as **Exhibit 8**.

30. PBS/Plaintiff, however, also maintained a separate accounting system that purported to double-bill me and QAC monthly, with it indicating that a balance was owed.

31. A true and correct copy of the 9/13/2024 statement is attached hereto as **Exhibit 9**.

32. On September 16, 2024, Plaintiff terminated all 13 agreements based on a purported "default[.]" FAC at ¶ 13. Since then, I and QAC ceased using the Rooterman name and Plaintiff's alleged marks.

33. Despite it not even being a franchisee, and being engaged in an entirely different line of business than Rooterman's services, I even removed the "RM" from Defendant Water Damage Restoration's name.

34. This is despite Plaintiff not owning a word mark for "RM"—the "RM" marks identified (ECF No. 7-2) are for Reg. Nos. 6,013,441; 6,027,468; and 6,027,470 are in Class 37 (Drain cleaning services; Plumbing; Plumbing services; Drain and sewer cleaning and rootering services) and none are for just the letters "RM"—all are stylized or part of a logo. Anything remaining, such as the Google, Yelp, and HomeAdvisor listings Plaintiff complains about (FAC at ¶ 28 (a), (b), and (c)) or in Mr. Hershner's LinkedIn profile (FAC at ¶ 31 and Ex. J. thereto (ECF No. 7-10)) are not under any of the defendants' control.

35. Defendants do not control the comments to the 911 Sewer & Drain Google Business listing (FAC at ¶ 29 and Ex. I thereto (ECF No. 7-8) or the comments to the 911 Sewer and Drain Facebook page (FAC at ¶ 29 and Ex. H thereto (ECF No. 7-9).

36. Defendants do not have control over the X/Twitter handle identified in the complaint, and efforts to have X/Twitter address the issue were made.

37. Nor are Defendants using the www.rootermanplumberservices.com domain for marketing or advertising purposes, and once Google has completed the task of updating my personally-owned website links to the new domain, I will gladly transfer it to Plaintiff.

RANDAZZA | LEGAL GROUP

38. If I make the transfer before Google completes the task, I will lose the benefit of tens of thousands of dollars spent on the website, independent of anything to do with the "Rooterman" name.

39. A true and correct copy of the *Redirect and Google Search* Google page is attached hereto as **Exhibit 10**.

40. At no point was Water Damage Restoration f/k/a RM Water Damage Restoration engaged in the plumbing and drainage business.

41. I and QAC were given our franchises and neither A Corp. nor Plaintiff took any steps to exercise quality control, ignoring the right to inspect operations and records retained in Section 12.8 of the franchise agreement.

42. Plaintiff and A Corp. never inspected the work performed.

43. Plaintiff and A Corp. never accompanied employees on the job to ensure that services were performed to expectations.

44. In fact, Plaintiff and A Corp. set no expectations and provided absolutely no training in performing the rootering and plumbing services marketed under the Rooter-Man name.

45. Plaintiff and A Corp. cannot be found to have exercised reasonable control because they exercised no control.

46. Even though the franchise agreement (ECF No. 7-3 at § 11) purported to direct which vehicles, equipment, and uniforms should be used, A Corp and Plaintiff did not actually undertake to do so.

47. Plaintiff and A Corp. were given numerous opportunities to address former franchisees who were reaping the benefits of mine and QAC's territories through the Google

listings using the Rooter Man name. They failed to act, requiring me to attempt to take it into my own hands.

48. Although I applied for a service mark in 911 Sewer & Drain (word mark) in 2022 and organized 911 Sewer & Drain Corporation in February 2024, this was for cautionary purposes; 911 Sewer & Drain did not begin active operations until after the franchise agreements were terminated.

49. Even what the franchise agreement purports to be confidential—the franchise agreement itself (Section 18.2)—is not, else, upon information and belief, Plaintiff would have filed a redacted version or sought to file it under seal. And despite Section 18.2 mentioning "formulas," there are no formulas here—in fact, what sets my and QAC's rootering business apart from competitors was the service provided and the uncommon use of jet machines and cameras, which is not something that came from A Corp. or Plaintiff.

50. It was I and QAC who built up the business without the necessary assistance of PSB/Plaintiff.

51. I repeatedly gave A Corp. and Plaintiff notice of potential infringement under Section 8.5(A) of the Agreement.

52. At no point did A Corp. or Plaintiff take action to protect any marks or grant me or QAC permission under Section 8.5(B) to do so themselves.

53. At no point did A Corp. or Plaintiff provide the training promised in Section 9.1. At no point did A Corp. or Plaintiff provide the Additional Assistance of the Grand Opening Promotional Program (9.3(A)), Seminars (9.3(D)), On-Going Assistance and Supervision (9.3(E)), Initial Sales Assistance (9.3(F)), or the tools and supplies (9.3(G)).

54. Plaintiff utterly failed to replace the microsites as promised.

55. If the Court does see fit to issue a preliminary injunction, then the bond should be at least a year's lost income for Defendants. Such is at least $ 3,000,000.00

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 1-13-2025           By: _____
                                Klodian Belegu