IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Rooterman, LLC )<br>)<br>  *Plaintiff,* )<br>)<br>v. )<br>)<br>Klodian Belegu, Quality Air Care )<br>Corporation, RM Water Damage )<br>Restoration LTD and 911 Sewer & Drain )<br>Corporation. )<br>  *Defendants*. )<br>) | Docket No. 1:24-cv-13015<br><br>**LEAVE TO FILE GRANTED<br>ON JANUARY 21, 2025** |

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
ITS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Rooterman, LLC ("Rooterman") hereby submits this reply memorandum ("Reply") in further support of its motion for a preliminary injunction ("Motion").

## I.   INTRODUCTION

Defendants' Opposition to Rooterman's Motion ("Opposition") is notable for what it admits, and also for what it fails to address. What is generally clear from the Opposition is that Defendants (via defendant Klodian Belegu, who individually owns all corporate defendants) are scrambling to try to stop using the Rooterman trademarks, but still have not finished, and still believe there are certain things they should never have to do. Thus, the proposed Court Order Plaintiff requests is critical to protect its rights.

Indeed, Belegu's process of disassociating started approximately two months ago, even though Belegu's franchises were terminated approximately four months ago. Ways that Belegu continues to try to disassociate include removing the "RM" from his company name on December

1

27, 2024 (after he retained counsel and filed a motion for additional time to respond to Plaintiff's Motion. (See Docket No. 13)).[1] That said, there is much more to be done and Belegu continues to refuse to do much of it. From the evidence submitted by Plaintiff that, for example, with the rootermanplumberservices.com website (attached as Exhibit A to the Motion), and other internet activity which Belegu unabashedly acknowledges and seems to want to continue, Defendants improperly used and continue to use Plaintiff's trademarks and engage in flagrant competition in violation of Belegu's franchise covenants. Belegu even admits to a failure to return Plaintiff's confidential manuals for operating the Rooterman business. (See Opposition at 13, n.8) But as the Reply Declaration details herewith, there is much more that has not been returned. (See Reply Decl of N.King herewith, ¶¶ 7, 9) And, Belegu continues to confuse the market by not turning over domains, data and URLs pertaining to 911 Sewer & Drain business that are confusing the market about whether that business is actually a Rooterman business. (Id. ¶ 5, Exhibits C and D; id. ¶ 8, Exhibit E)[2]

Indeed, a disturbing way Belegu's Opposition addresses his and other Defendants' breach of Plaintiff's statutory and contractual rights is to beg for permission to finish up misusing them right now. In this respect, Belegu's Declaration refers generally to transferring "URLs" to some new website, instead of the offending website, and he pleads that if this process were interrupted now, he would lose tens of thousands of dollars, but he provides no details about these efforts at all. (See Opposition, Exhibit 1 thereto, Belegu Decl, ¶¶ 37-39) And, the bottom line is that Belegu is admitting that he has a number of "URLs" that are apparently misdirecting something now,

---

[1] This does not change the fact that RM Water Damage is Belegu's competing corporation even if the RM is removed, as Rooterman's brand includes water damage restoration as part of its offerings. See Reply Decl. of N. King, filed herewith, ¶ 4 (www.rooterman.com/services/restoration)

[2] What Belegu is referring to here is entirely unclear. He cannot excuse his behavior with a lack of evidence, nor with his claim that his offending actions are "controlled by third parties." (See Opposition at 6) He has a duty to take actions to cease and desist all offending behavior.

though what those URLs are is a mystery, and neither Belegu's Declaration nor Defendants' Opposition identifies them. This, among other things, makes the relief requested by Plaintiff more critical because the evidence presented and reasonable inferences thereon show that some or all of such URL's were (or still are) using the Rooterman marks and they are now apparently "redirecting" Google users to some new website, presumably 911 Sewer & Drain, which directly competes with Rooterman.

Defendants' effort to try to throw "sand" at the matter by bringing up things that happened in 2019/2020/2021 before Premium Service Brands purchased the Rooterman assets and trademarks from A. Corp. in 2022 are irrelevant. Also irrelevant is the half-hearted argument Rooterman did not adequately build or assist with "micro-sites." Micro-sites were admittedly a marketing experiment and effort with A. Corp., but even the correspondence about those micro-sites attached as Exhibits to Defendants' Opposition demonstrate Plaintiff making efforts to cooperate and sort those matters out with Belegu during the term of his franchise relationship. That is a natural business partnership between franchisor and franchisee who look to collaborate on effective marketing.³ However, given Defendants' protests about those matters and apparent frustration by Belegu that he invested heavily in those micro-sites *while he was a franchisee,* a substantial question arises as to whether he is still using any of those micro-sites because he considers them "his" despite the franchisor contractually owning all intellectual property and materials developed during the term of the franchise. (See Exhibit C to the Amended Complaint,

---

³ A franchisor has an absolute right, as well as a duty, to control marketing system-wide. See 16 C.F.R. § 436.1(h) (defining a franchise by, among other things, the requirement upon a franchisor to exercise a "significant degree of control" over the franchisee's methods of operation). In fact here, as in many franchise relationships, this was a contractual right as well. See Amended Complaint, Exhibit C thereto, § 7 (detailing the franchisor's right to control all marketing and advertising), § 12.1.C (detailing the franchisor's right to modify and adopt new procedures and programs)).

§§ 7.1B, 16B)

In sum and substance, Defendants' Opposition not only admits Belegu's violation of Plaintiff's statutory and contractual trademark rights, but also, the effort to excuse doing so confirms Belegu's (and all corporate Defendants, which he solely owns) willful and wrongful intent.  At this time, based on the Verified Complaint and Belegu's admissions in his Opposition, it is clear that Defendants are unabashedly competing with Rooterman in the identical markets Belegu and his entities owned franchises, and Plaintiff has good evidence to infer and support how discovery will reveal they have been doing so since the inception of Defendants' competing corporations.[4] In this regard, despite Defendants' untenable arguments to the contrary, noncompetition agreements are very much validated and upheld by courts in the franchise context, particularly upon the termination of a franchise relationship. Indeed, where would Dunkin Brands be, for example, if every donut franchise could terminate and simply change the signage to "Dippin Donuts."  Trademarks, branding, goodwill, and reputation would be reduced to mere library books on a shelf, and franchisees would have unfettered ability to buy in, learn, and then leave, taking all of the franchisor's investment and goodwill with them. That is exactly what Belegu did here with RM Water Damage Restoration and 911 Sewer & Drain, and what he now protests he somehow had the right to do, and it is highly improper. To excuse such an unabashed breach of contract, Defendants' Opposition boldly claims that Plaintiff has no "legitimate business interest" in stopping Belegu from competing. Caselaw is quite clear otherwise.

Once again, Plaintiff is not seeking extraordinary relief with its Motion.  Plaintiff is seeking

---

[4]    Plaintiff reminds this Court, however, that beyond the request for injunctive relief, permitted by Exhibit C to the Amended Complaint outside of arbitration, these matters will be litigated in the separate AAA arbitration commenced by Plaintiff to address all of defendants statutory and contractual violations. This action was commenced to obtain injunctive relief only, and if such relief is granted, Plaintiff will seek a stay of matters herein pending arbitration.

relief that any franchisor would rightfully want, and that is both statutorily and contractually available to it: cease and desist using Plaintiff's trademarks, return Plaintiff's proprietary and confidential information, and cease and desist from competing with Plaintiff in the identical markets where Belegu owned his franchises. Plaintiff is not even asking Belegu or his entities to cease and desist competing 100 miles from Belegu's former franchise territories, though it readily could ask for that contractually. (See Amended Complaint, ¶ 20, citing Exhibit C, §18.1) Thus, even the relief Plaintiff requests is narrowly tailored and confined to protect its legitimate business interest in the most narrow of ways: *i.e.,* its goodwill and customers in only the zip codes in which Belegu was a franchisee, identified herewith. (See Reply Decl of N.King filed herewith, ¶ 3, Exhibit B thereto)

## II.  NOTABLE FACTUAL FAILURES WITH BELEGU'S RESPONSE

From Page 1 of Defendants' Opposition, there are flagrant misstatements. Among them is the comment on Page 1 that Plaintiff "vaguely points to a list of marks it owns" and "no marks are being infringed on." Then, on Page 3, Defendants state that "since then [the termination of Belegu's franchise agreements on September 16, 2024], Belegu and QAC ceased using the Rooterman name and Plaintiff's alleged marks." (See also id. Opposition, p.9)  Exhibit A to the Amended Complaint belies this: *i.e.,* Belegu's website, Rootermanplumberservices.com was, as of December 4, 2024, plastered with Plaintiff's trademarks. This is nearly 3 months after Belegu's franchise agreements were terminated September 16, 2024. In other words, from September 17th to at least December 4, 2024, Belegu was continuing to use Plaintiff's trademarks and confuse the market. The specific trademark he is using is reflected on p.3 of Exhibit B to the Amended Complaint (*i.e.,* the "Rooterman 'To The Rescue'" logo, trademarked March 17, 2020; Reg. No. 6,013,446). There is nothing "vague" about that, and there is clear infringement of Plaintiff's

marks in that activity. Title 15 of the U.S. Code, Section 1125(a), forbids the use of, among other things, "any word, term, name [etc.]" likely to cause confusion, or mistake or deceive in the market, and that is precisely what Belegu has done. The "rootermanplumberservices.com" website now even redirects to 911 Sewer & Drain to this day. (See Reply Decl of N.King filed herewith, ¶ 8, Exhibit E thereto) Along similar lines, Exhibit 1 to Plaintiff's Memorandum in Support of its Motion shows the insertion of the words "Rooterman of New Jersey" into a Google search page, and Belegu's competing corporation, defendant 911 Sewer & Drain, appearing. And, Exhibit 2 to Plaintiff's Memorandum shows 911 Sewer & Drain's business being exactly the same business as Rooterman.[5] Thus, it is false for Belegu to state on pp. 3-4 in his Opposition: "Despite it not even being a franchisee, and being engaged in an entirely different line of business than Rooterman's services," Belegu has taken supposed all proper steps. He has not. His company, 911 Sewer & Drain, is engaged in an identical business as Rooterman.

If Belegu is not making flagrant misstatements of fact in his Opposition, he is arguing proverbial "red-herrings." For example, Belegu argues that two corporate defendants (911 Sewer & Drain, and RM Water Damage Restoration) were not part of Belegu's many franchise agreements. (See Opposition at 2) Belegu appears to be trying to position his case in a way that he can establish a separate corporation to infringe on Plaintiff's marks *during his franchise relationship and afterward* and rightfully compete with Plaintiff all along. Not so. A party to a restrictive covenant cannot escape the covenant by forming a corporation to compete instead. That would make a mockery of every restrictive covenant.

As another example of a "red-herring," Belegu purports to present evidence that Rooterman somehow did not pursue others who were violating their contractual obligations, referencing a phone number in Lakewood, New Jersey, and other Google listings that did not direct traffic to

---

[5] Compare Amended Complaint, ¶ 22 (listing Rooterman services) and ¶ 23 (listing 911 Sewer & Drain services).

Rooterman franchises. There is zero factual support for Belegu's statements but, in any event, and much of it appears to pre-date Plaintiff's acquisition of A.Corp. (See Opposition at 2) That said, as set forth in the Reply Decl of Plainitff's General Counsel herewith, Rooterman (even when owned by A. Corp. has taken numerous steps to enforce its trademarks (far from abandoning them, as Belegu argues) (See Reply Decl of N.King, filed herewith ¶ 2, Exhibit A thereto, and Reply Decl of J.Rosin, filed herewith))

Belegu even engages in a tortured argument to try to set up a dispute about the use of the letters "RM" and whether they are a word or a design mark.[6] (See Opposition at p. 4) This is all beside the point. What the use of the RM letters reflects is Belegu's clear attempt to confuse and present this as a Rooterman business when it was not. And notably, Belegu reflects his consciousness of that wrongdoing by acknowledging changing that RM name on December 27, 2024, after being sued, reading Plaintiff's complaint, and hiring counsel to defend.

The only argument that appears not to be filled with misstatements or red-herrings comes within one that has them. That is, Belegu falsely argues that he is no longer using "rootermanplumberservices.com" for "marketing or advertising," yet, he attests that there are "personally-owned website links" he is having Google update to a new website domain. (See Opposition at p. 4). That is a subject for substantial discovery. *Exactly what are these supposed "personally-owned website links"? What words and phrases do they use? When did he create them? Was it during his franchise relationship?* If so, worth pointing out, Plaintiff can claim a right, title and interest in them, both by way of its existing trademark rights, and pursuant to Exhibit C to the Amended Complaint, Section 8.1. That Belegu is now treating them as his own,

---

[6] Belegu claims in Footnote 4 of his Opposition that Belegu's in-laws initials and his wife's initials backwards are "RM." A more reasonable inference is that the "RM" was intended to confuse the public that the entity was associated with Rooterman, which does have a design mark reflecting "RM" in a colorful circle. (See Amended Complaint, Exhibit B thereto, at p.4)

when they may not be, and that he has not returned them or turned them over to the franchisor, and that he is using them to redirect the public to his competing entity(ies) is part of the problem Plaintiff seeks to stop with its proposed Order.

Ultimately, apparently understanding at least part of his wrongdoing, Belegu pleads for mercy and time to make the changes he claims he is making with Google, since he will supposedly "lose the benefit of tens of thousands of dollars spent on the website [www.rootermanplumberservices.com]." (See Opposition at 4, n. 6) But here is where Plaintiff's case remains strong as well. Belegu admits spending tens of thousands of dollars building the very website that flagrantly misused Plaintiff's trademarks and continues to this day to do so. (See Reply Decl of N.King, filed herewith, ¶ 8)  However, it is Plaintiff who is entitled to the fruits of that investment, not Belegu. His statutory and contractual obligation was to disassociate completely upon termination of his franchises, and not misuse trademarks and intellectual property to compete. To use a metaphor, if the rootermanplumberservices.com website were a vehicle, Belegu had (and has) no right whatsoever to remove the engine, and strip all of its parts and tires, and leave the franchisor with merely the shell body. He must return his all components of his business that rely on "Rooterman" to the franchisor, and he must not compete in violation of his restrictive covenant.

This Court should enter the proposed Order Plaintiff seeks.

### III.    ARGUMENT

**A. Defendants' Arguments That Plaintiff Does Not Show A Likelihood of Success On the Merits of its Section 1125(a) and Section 1114 Claims Ignore The Evidence**

Plaintiff first argues that Plaintiff has not shown any "use" of its trademarks. That, of course, requires one to ignore all of the evidence summarized above. What Belegu has done, and continues to do reflects a clear violation of Section 1125(a) and, under Section 1114(1)(a)-(b),

8

Belegu and his offending defendant corporations are liable. See *ABH Nature's Products, Inc. v. Supplement Manufacturing Partner, Inc.*, 2024 WL 13452228 (E.D.N.Y. March 29, 2024) (holding former co-owners redirection of URL to new website violation of Lanham Act)

Belegu's competing businesses that have used and misused Plaintiff's trademarks include his website, rootermanplumberservices.com, 911 Sewer & Drain, and "RM" Water Damage Restoration, even if the "RM" was removed three weeks ago (as it has always been a corollary to the Rooterman business that franchisees could augment their businesses as franchisees by engaging in water damage restoration, a typical further problem in the event of a clogged drain, see Reply Decl of N.King, ¶4).[7]

Arguing that Plaintiff's case is "moot", as Defendants do on Page 6 of their Opposition, is meritless. It literally requires the Court to read Belegu's Declaration, accept conclusory statements in it at face value, ignore the lack of evidentiary support for multiple statements, have no questions for cross-examination, and conclude that "because Belegu said so," there is no more infringement occurring. Yet, such a line of logic is belied by Belegu's own Declaration, which itself states that he is still working with Google to finish up what he needs to do to protect his investment in rootermanplumberservices.com. Along similar lines, while Belegu states that he has contracted X/Twitter to "address the issue," he provides no information about when these efforts were taken or what they entail. (See Belegu Decl, ¶ 36). This, in part, is why the injunction and Order is needed. With Belegu having flagrantly misused Plaintiff's trademarks, and with his continued protests about what he still needs to do, the Court should be very clear with its Order that, whatever he is doing, to the extent it continues to misuse Plaintiff's

---

[7] Rooterman, through their authorized franchisees, offer leak detection services and restoration services for water, fire, and mold damage. See *Services*, Rooterman, https://www.rooterman.com/services/ (last visited Dec. 16, 2024); see also Exhibit C to the Amended Complaint, § 8.3.

trademarks, it must cease. Plaintiff is hardly asking for "moot" relief. It is asking this Court to recognize that Belegu's very disjointed and difficult to follow declaration, unsupported by any actual evidence, does not prove his innocence at all. Indeed, the proposed Order Plaintiff seeks asks that Belegu takes the steps required by the Order, and then report back to the Court with a status report about those steps. That is exactly what 15 U.S.C. §1116(a) contemplates.[8]

Defendants' positioning of Plaintiff's case as a request for "reverse veil piercing" is off base. That is not what Plaintiff seeks at all. Here, and clearly, RM Water Damage Restoration and 911 Sewer & Drain are Belegu's competing corporations. As noted above, even if rootermanplumberservices.com is typed into the Google search box, once "enter" is pressed on the keyboard, the website that appears is 911SewerDrain.com. (See Reply Decl of N.King, filed herewith, ¶8) That is not just likely to cause confusion; it is a certainty to cause confusion.

Defendants' argument pertaining to Plaintiff's supposed "abandonment" of its marks fares no better and is readily refuted herewith by the evidence that Plaintiff routinely protects its trademarks. (See Reply Decl of N.King, filed herewith, ¶2)[9] Of course, Belegu's argument also ignores this very case, whereby on September 16, 2024, when his franchise agreements were terminated, he was told to cease and desist using the Rooterman marks (see Amended Complaint, Exhibit K), and when the undersigned sent follow-up communications that were ignored by Belegu as well. (See Reply Decl of J. Rosin, Exhibit 1 thereto) All of these efforts reflect Plaintiff duly enforcing its trademark rights and not abandoning them.

---

[8] See §1116(a) noting the ability of a court to issue an injunction and that "Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction."

[9] While Belegu's partly complains about what A. Corp. did or did not do, any such claims lapsed by way of a contractual limitations period, and such arguments are waived. (See Amended Complaint, Exhibit C thereto, Section 19.7.G)

Belegu's arguments that there is no likelihood of success on the merits of Plaintiff's contract claim, for breach of the non-competition clauses, or failure to return Plaintiff's confidential and proprietary information also lack merit. As an initial matter, Belegu admits not returning Plainitff's confidential information. (See Opposition at 13, n.8) And, there is substantial confidential information and other matters (such as Rooterman phone numbers) he is responsible for returning that he has not returned. (See Reply Decl of N.King, ¶¶ 7, 9) While Belegu defends against the breach of his non-compete by arguing that 911 Sewer & Drain Corporation, which formed in 2022, "did not begin active operations" until after his franchise agreements were terminated, (see Opposition at p.13), that claim is subject to substantial doubt, given the registration of its marks in 2022 and active work organizing it in 2024. (Id.) Regardless, it proves Belegu's violation of the non-competition clause. Indeed, as set forth above and in the Reply Declaration of Nathan King, 911 Sewer & Drain is the re-routed business of rootermanplumberservices.com. It is plainly a competing entity. At the bottom of its website, 911sewerdrain.com, it even references the ability to own a franchise in its name. Make no mistake, Belegu has engaged in a wholesale effort to build his very own "Rooterman," which is exactly that a franchise restrictive covenant guards against.

      Belegu's back-up arguments consist of defenses that Plaintiff has "unclean hands" and/or was allegedly the first to breach the contracts. (See Opposition at 16) Neither of those arguments are supported with any clear detail demonstrating that they will be dispositive defenses. But most of the arguments pertain to occurrences by A.Corp., and as noted about in Footnote 9, any such defenses of inaction or breach by A.Corp. prior to plainitff's acquisition in 2022, would be barred by the contractual 1-year limitations period in Belegu's franchise agreements. (See Amended Complaint, Exhibit C thereto, at Section 19.7.G)

### B. Defendant's Half-Page Argument That Plaintiff Cannot Show Irreparable Harm Deserves About The Same Attention

Plaintiff demonstrated in its opening Memorandum how, if there is trademark infringement, there should be a rebuttable presumption of irreparable harm. (See Motion/Memorandum at pp. 10-12); see also El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 395 (2nd Cir. 1986) ("One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark."). Moreover, the Supreme Judicial Court of Massachusetts has recognized that a franchisee competing with its franchisor is irreparable harm because it bespeaks the improper use of confidential information, trade secrets and goodwill that a former franchisee possesses but might be "impossible to prove." Boulanger v. Dunkin Donuts, Inc., 442 Mass. 635, 643, n.12 (2004); see also K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Circ. 1989) ("[H]arm to goodwill, like harm to reputation, is the type of harm not readily measurable or fully compensable in damages - and for that reason, more likely to be found 'irreparable.'").

Given the likelihood of success on the merits of Plaintiff's claims, but Defendants half-page attention to arguing there is no irreparable harm, it is safe to conclude that Defendants cannot overcome the presumption that should be applicable here. That Belegu has submitted a self-serving affidavit that he supposedly does not "wish to continue" using Plaintiff's trademarks is nothing more than a whisper in the wind, particularly when in his own submission, Belegu pleads for additional time to stop using Plaintiff's trademarks. (See Opposition at 4, n.6, citing Belegu Decl at ¶¶ 38-39) That Belegu pleads for mercy pertaining to his business does not change the direct harm to Plaintiff's goodwill he is harming by competing in the exact zip codes he was a franchisee.

12

Per Boulanger and other authority cited by Plaintiff, in the franchise context, this is necessarily irreparable harm.

### C. Belegu's Remaining Arguments Deserve Little Attention As Well

Clear from Belegu's Opposition and his Declaration, he feels justified in what he did. He bought 13 franchise markets and invested in them. But, he did not feel that his franchisor was doing all it could to support him. To combat this, he set up competing corporations, RM Water Damage Restoration, and 911 Sewer & Drain, and either immediately diverted business away from his franchise or, alternatively, when he was fully ready to launch, he stopped paying royalties to his franchisor and devoted all of his time to his competing businesses. Then, when his franchise agreements were terminated, he continued to use the Rooterman name, marks, and associated goodwill to drive business to his competing businesses. Despite demand, he did not start doing anything to change until he was sued and hired counsel.

There is nothing "inequitable" in issuing the Order requested by Plaintiff. Quite the contrary, doing so ensures that Defendants cannot literally do the identical thing in the identical markets, when Belegu's contracts say he cannot. In fact, requiring that he cease and desist using trademarks and competing in those identical markets -- and, again, not reaching 100 miles outside of those markets, which Plaintiff has the right to do -- is itself a voluntary offer of a "balancing of equities" in Defendants' favor. In his regard, Plaintiff seeks merely to protect the goodwill and loyalty of the customers in the precise markets Belegu had franchises, and not 100 miles further. That is a tipping of the scales that should weigh heavily in Plaintiff's favor on this favor. See, e.g. Boulanger, 442 Mass. at 644 (recognizing that in the business context, particularly when the business relationship terminates (in this case by sale), an expansive geographic restriction in a non-compete would be viewed as more likely reasonable) (citations omitted)).

13

Belegu's claim that the public would be harmed if he could not provide plumbing and drain services is pure conjecture. Simply doing a Google search for plumbers in Toms River, NJ, where Belegu's principal office lies, yields a plethora of plumbers throughout New Jersey. Moreover, to the extent there is any need for a plumber in this or any other market, new businesses can emerge to fill that need. Certainly, the public has an equal interest in new and local plumbers being welcomed to Toms River, and elsewhere, or national plumbing competitors expanding to meet a local need. Indeed, there are trade schools throughout New Jersey, for example, turning out more hopeful and future plumbers by the year. https://eastwick.edu/hohokus-school-of-trades/; https://www.lincolntech.edu/campus/south-plainfield-nj If anything, the public interest strongly favors a marketplace that welcomes them, and not one by which Belegu has a choke-hold.

**D. Defendants' Request For A $3 Million Bond Is An Overreach**

Defendants request for a $3 million bond in their Opposition is a transparent request for the Court to monetarily punish Plaintiff. That aside, the request is premised upon a conclusory claim about Defendants' supposed year of income. Belegu does not attach any books or records to support that claim of income. He also does not even tie the claim to all Defendant corporations or just one or more of them. Moreover, he fails to set forth whether this is a gross number, or net income.

A court has wide discretion in determining whether to require the posting of a bond, and a court can choose to issue an injunction with no bond. See Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 782-783 (10th Cir. 1964). One factor that can sway a court not to require a bond is whether the plaintiff obtaining the injunction can pay for any damages caused by the wrongful issuance of an injunction. Id.; see also Anderson Foreign Motors, Inc. v. New England Toyota Distributors, Inc., 475 F. Supp. 973, 990 (D. Mass. 1979) (noting discretion under Rule 65(c) and

lack of evidence that plaintiff could pay damages from any wrongfully issued injunction as a reason to hold a subsequent hearing on the amount of an appropriate bond). Here, as Belegu's own affidavit acknowledges, plaintiff Rooterman is one of many franchises owned by Premium Service Brands. There is no evidence that Rooterman is underfunded. In fact, it has been a top franchise for over 20 years and there are over 450 locations in the United States. See [https://plumbing-franchise.rooterman.com/faq/what-is-the-history-of-rooterman-what-does-tomorrow-look-like-for-the-plumbing-franchise-faq](https://plumbing-franchise.rooterman.com/faq/what-is-the-history-of-rooterman-what-does-tomorrow-look-like-for-the-plumbing-franchise-faq)  It is speculative to suggest at this stage that (a) Defendants would have to completely cease doing business as a result of the injunction requested, particularly since Plaintiff is not looking to enforce the 100 mile radius it could enforce, (b) issuing the injunction restricting Defendants from competing in the identical franchise territories previously owned by Belegu would, in any way, be wrongful (indeed, as noted above, Belegu's arguments about a lack of legitimate business interests, unclean hands, or prior breach, have no merit at all), or that (c) if the injunction were somehow wrongful, Plaintiff could not pay damages Belegu could actually prove were tied to the wrongful issuance of the injunction.

For this reason, this Court should exercise its discretion and issue an injunction without the requirement for posting any bond or, at best, require a token bond to respect this component of the Rule of Civil Procedure.

## IV.   CONCLUSION

For all of the additional reasons set forth above, the Motion should be granted in its entirety, and Plaintiff awarded the injunctive relief sought and set forth in its Proposed Order attached to its Amended Motion.

15

                                  Respectfully submitted,

                                  ROOTERMAN, LLC

                                  By its counsel

Dated: January 21, 2025                  /s/ Jeffrey Rosin
                                             Jeffrey M. Rosin, BBO# 629216
                                             Lisbeth Valdez, BBO# 715826
                                             O'Hagan Meyer, PLLC
                                             140 Kendrick Street, Bldg. C
                                             Needham, MA 02494
                                             Telephone: (617) 843-6800
                                             Fax: (617) 843-6810
                                             jrosin@ohaganmeyer.com
                                             lvaldez@ohaganmeyer.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January 2025, *Plaintiff's Reply Memorandum in Further Support of Its Motion for Preliminary Injunction* was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Jeffrey Rosin*
Jeffrey M. Rosin