# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rooterman, LLC,<br><br>　　　　　Plaintiff/Defendant-in-Counterclaim,<br><br>　　v.<br><br>Klodian Belegu, Quality Air Care Corporation, RM Water Damage Restoration LTD, and 911 Sewer & Drain Corporation.<br><br>　　　　　Defendants/Plaintiffs-in-Counterclaim. | Civil Action No. 1:24-cv-13015<br><br>**DEFENDANTS' ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendants, Klodian Belegu, Quality Air Care Corporation, Water Damage Restoration LTD f/k/a RM Water Damage Restoration LTD, and 911 Sewer & Drain Corporation ("Defendants") hereby file their Answer and Counterclaims against Plaintiff, Rooterman, LLC, in response to Plaintiff's First Amended Complaint ("Complaint", ECF No. 7), and state: [1]

## INTRODUCTION

1.　　　This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

## PARTIES

2.　　　This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

3.　　　Defendants lack sufficient information to admit or deny the allegations of this paragraph and leave Plaintiff to its proof.

---

[1] Section headers of the Complaint are repeated for ease of reference, but they should not be considered an admission thereof; to the extent a response is required, such is denied.

4.      Defendants admit the first sentence.  The second sentence contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

5.      Defendants admit the first sentence but further states that RM Water Damage Restoration Ltd. is now known as Water Damage Restoration Ltd.  The second sentence contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied. The third sentence contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

## JURISDICTION AND VENUE

6.      This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

## FACTS

7.      Denied.

8.      Defendants lack sufficient information to admit or deny the allegations of this paragraph and leave Plaintiff to its proof; to the extent a response is required, the allegations are denied.

9.      Defendants lack sufficient information to admit or deny the allegations of this paragraph and leave Plaintiff to its proof; to the extent a response is required, the allegations are denied.

10.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

11.     The first sentence and the second sentence through "Corporation" are Admitted, except to the extent the allegations suggest any form of alter ego status, which is denied.  The second sentence contains conclusions of law to which no response is required; to the extent a

response is required, the allegations are denied.

12.    The paragraph and subparagraphs are Admitted, except to the extent the allegations suggest any form of alter ego status, which is denied.

13.    The documents speak for themselves; to the extent a response is required, the allegations are denied.

14.    Denied.

15.    This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

16.    Admitted that such application was filed.  The remainder of the paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

17.    The documents speak for themselves; to the extent a response is required, the allegations are denied.

18.    Denied.

19.    This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

20.    The documents speak for themselves; to the extent a response is required, the allegations are denied.

21.    The documents speak for themselves; to the extent a response is required, the allegations are denied.

22.    Denied.  Upon information and belief, Rooterman is merely a brand holding company, a subsidiary of Premium Service Brands, which purports to own and franchise other brands.

23.     The documents speak for themselves; to the extent a response is required, the allegations are denied.

24.     The documents speak for themselves; to the extent a response is required, the allegations are denied.

25.     The documents speak for themselves; to the extent a response is required, the allegations are denied.

26.     The documents speak for themselves; to the extent a response is required, the allegations are denied.

27.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

28.     Denied.

29.     The documents speak for themselves; to the extent a response is required, the allegations are denied.

30.     Admitted that Water Damage Restoration, Ltd., previously was named RM Water Damage Restoration.  The remainder of this paragraph is denied.

31.     The documents speak for themselves; to the extent a response is required, the allegations are denied.

32.     The documents speak for themselves; to the extent a response is required, the allegations are denied.

**COUNT I:  15 U.S.C. § 1125**

33.     Defendants repeat and reassert their responses to all paragraphs as if fully set forth herein.

34.     This paragraph contains conclusions of law to which no response is required; to the

extent a response is required, the allegations are denied.

35.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

36.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

37.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

38.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

39.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

40.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

41.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

42.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

43.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

44.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

45.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

## COUNT II:  15 U.S.C. § 1114

46.     Defendants repeat and reassert their responses to all paragraphs as if fully set forth herein.

47.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

48.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

49.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

50.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

51.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

## COUNT III:  Contract

52.     Defendants repeat and reassert their responses to all paragraphs as if fully set forth herein.

53.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

54.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

55.     This paragraph contains conclusions of law to which no response is required; to the extent a response is required, the allegations are denied.

Defendants' Answer and Counterclaims
1:24-cv-13015

## PLAINTIFF'S PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any of the relief requested.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38, Defendants demand trial by jury on all claims, counterclaims, and defenses so triable.

## AFFIRMATIVE AND FURTHER DEFENSES

Defendants further state that the claims and relief sought by Plaintiff should be denied for the foregoing reasons:

1.      Plaintiff failed to state a claim upon which relief can be granted.

2.      Plaintiff is not a party to any agreement with 911 Sewer & Drain Corporation and/or Water Damage Restoration Ltd. f/k/a RM Water Damage Restoration Ltd., thereby precluding any claim for breach of contract.

3.      Plaintiff's claims arising under the Lanham Act and related contract claim are not required to be arbitrated and Defendants exercise their right not to do so, rendering them non-arbitrable.

4.      Plaintiff's claims for breach of contract are barred by its own prior material breaches.

5.      The non-compete provision of the agreement is unenforceable under Massachusetts law as merely restricting ordinary competition.

6.      Plaintiff's claims arising under the Lanham Act and related contract claim fail for lack of registration of a standard character mark in "Rooter man" or "RM" or any variation thereof.

7.      Whatever service mark rights Plaintiff may have had have been abandoned.

8.      Plaintiff's claims arising under the Lanham Act and related contract claim fail as

the purported marks are subject to cancellation for the granting of a naked license.

9. Plaintiff's claims arising under the Lanham Act and related contract claim fail as the purported marks are subject to cancellation for failure to police.

10. Plaintiff's claims under 15 U.S.C. § 1125(d) are barred due to the absence of bad faith registration.

11. Plaintiff's contract claim fails for the lack of any actual confidential or proprietary information/trade secrets.

12. Plaintiff's contract claim fails for failure to take reasonable measure to protect any purported confidential or proprietary information/trade secrets.

13. Plaintiff's claims are barred, in whole or in part, under the equitable doctrines of waiver, unclean hands, and laches.

14. Plaintiff's claims are barred, in whole or in part, under the applicable statute of limitations.

15. Defendants are not liable to Plaintiffs, in whole or in part, for any actions taken by third parties.

16. The alleged injury or damage suffered by Plaintiff, if any, would be adequately compensated by damages. According, Plaintiff has a complete and adequate remedy at law and is not entitled to seek equitable relief.

17. Defendants reserve the right to interpose further defenses and to assert any and all applicable counterclaims in this matter, should they be arbitrable.

WHEREFORE Defendants respectfully request that Plaintiff's claims be dismissed and fees be awarded to Defendants, whether under contract, and/or the Lanham Act.

## COUNTERCLAIMS

Defendants/Plaintiffs-in-Counterclaim Klodian Belegu, Quality Air Care Corporation, Water Damage Restoration LTD f/k/a RM Water Damage Restoration LTD, and 911 Sewer & Drain Corporation, pursuant to Fed. R. Civ. P. 13, hereby assert the following counterclaims against Plaintiff/Defendant-in-Counterclaim Rooterman, LLC, as follows:

## INTRODUCTION

1.      Klodian Belegu has been in the hygiene and water damage remediation business for over ten years.  Beginning in 2019, individually and through Quality Air Care Corporation, he added drain and sewer repair operations by purchasing numerous territories in New Jersey, Pennsylvania, and New York to operate the "Rooterman" franchise from A Corp.  At no time did Mr. Belegu or QAC believe that they would be surrendering the ability to operate a water damage restoration business upon termination of the franchise.

2.      A Corp. and its successor-in-interest Rooterman, LLC, never lived up to their promises.  They didn't clear the territories—other plumbing and sewer companies (including former franchisees) continued to use the Rooterman name and marks, and they knew or should have known at the time the agreements were made that these companies were doing so.  They purported to grant a license to certain service marks for which they have no federal registration, let alone applied for.  They failed to police their marks.  They granted a naked license in the marks they did own.  Mr. Belegu and QAC were duped and they should be free to move on with their businesses, unburdened by the agreements.

## PARTIES

3.      Plaintiff-in-Counterclaim Klodian Belegu is a natural person and citizen of the State of New Jersey.

4.      Plaintiff-in-Counterclaim Quality Air Care Corporation is a New Jersey corporation and a citizen of the State of New Jersey with a principal place of business in Toms River, New Jersey.

5.      Plaintiff-in-Counterclaim Water Damage Restoration, Ltd., f/k/a RM Water Damage Restoration, Ltd., is a New Jersey corporation and a citizen of the State of New Jersey with a principal place of business in Toms River, New Jersey.

6.      Plaintiff-in-Counterclaim 911 Sewer & Drain Corporation, is a New Jersey corporation and a citizen of the State of New Jersey with a principal place of business in Toms River, New Jersey.

7.      Defendant-in-Counterclaim Rooterman, LLC, is a Delaware limited liability company with a principal place of business in Charlottesville, Virginia.  Upon information and belief, Rooterman is wholly owned by Premium Service Brands, LLC, a Delaware limited liability company with a principal place of business in Charlottesville, Virginia.  Upon information and belief, Premium Service Brands is wholly owned by Paul Flick, a citizen of the Commonwealth of Virginia.  Thus, Rooterman is a citizen of Delaware and/or Virginia.

## JURISDICTION AND VENUE

8.      Subject matter jurisdiction over these counterclaims is proper in this Court under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 & 1338(a) as this matter arises under the federal Lanham Act. Subject matter jurisdiction is also proper per 28 U.S.C. § 1332 as this is a controversy between citizens of different states exceeding $75,000.  To the extent subject matter jurisdiction as to any counterclaim is otherwise not pursuant to the foregoing, this Court has such jurisdiction per 28 U.S.C. § 1367, as they are so related to the other claims and counterclaims that they form part of the same case or controversy.

9.    This Court has personal jurisdiction over Rooterman, LLC, as it consented to such as assignee of and successor to A Corp.'s contractual rights and/or obligations. *See, e.g.,* ECF No. 1-3 at § 19.6.  It is otherwise subject to personal jurisdiction pursuant to Mass. Gen. Laws, ch. 223A, § 3(a) & (b).  Rooterman, further, waived any objection to personal jurisdiction as to the counterclaims by bringing suit in this Court.  *Adams v. Saenger,* 303 U.S. 59 (1938).

10.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and/or (2).  Rooterman, further, waived any objection to venue as to the counterclaims by bringing suit in this Court. *Adams v. Saenger,* 303 U.S. 59 (1938).

## **FACTS**

11.    At all relevant times herein, Mr. Belegu owned Quality Air Care Corp.

12.    From 2019-2021, Mr. Belegu, individually and/or on behalf of Quality Air Care Corp., entered into 12 franchise agreements with A Corp. to operate "Rooterman" franchises in New York, New Jersey, and Pennsylvania ("the agreements").

13.    A thirteenth such agreement was entered into in 2020 by Mr. Belegu on behalf of non-party Water Damage Solution of Bergen, LLC.

14.    On or about January 20, 2022, Rooterman, LLC, became the successor in interest to A Corp.

15.    At the time the agreements were entered into, water damage restoration was not a service offered by A Corp. as part of the "Rooterman" franchise.

16.    Mr. Belegu was in the water damage restoration business prior entering into any franchise agreement with A Corp.

17.    Quality Air Care Corporation was formed in July of 2013 by Mr. Belegu and it has been in the mold remediation business since at least December 2013.

18.     Water Damage Solutions, Inc., was formed in November 2019 by Mr. Belegu, and thereupon operated in the water damage remediation business.

19.     Water Damage Restoration, Ltd., was formed in December 2022 by Mr. Belegu, and thereupon has operated in the water damage remediation business.

20.     At no relevant time did A Corp. or Rooterman, LLC, expand the agreement to specifically include water damage restoration services.

21.     At no relevant time did Mr. Belegu, or Quality Air Care Corporation ("QAC") knowingly agree that the franchised business included water damage restoration services.

22.     In fact, a franchisee is required to conduct "the franchised business within the Territory" (ECF No. 1-3 at § 3.1(B)), yet even today, water damage restoration is not a service Rooterman requires its franchisees to provide.

23.     The franchise agreements do not identify what the franchised business is.

24.     At most, the franchise agreements admit at § 9.1(G) that the only tools and supplies "needed in the operation of a Rooter-Man franchise…consist of drain cleaning machines, cables, cutters, various hand tools, drain cleaning products, logo patches, truck decals, and other such items," which does not include the additional tools and supplies needed to engage in water damage restoration.

25.     As set forth on Rooterman's website, https://www.rooterman.com/services/restoration/, "Some services are only offered at participating locations."

26.     At all relevant times herein, Rooterman's servicemarks were solely for Class 37, *i.e.* for "Drain and sewer cleaning and rootering services; Drain cleaning services; Plumbing contractor services; Plumbing services; Septic tank cleaning; Septic tank pumping and cleaning."

27.     Thus, water damage restoration is not within the scope of the non-competition provision of the franchise agreements (ECF No. 1-3 at § 18.1).

28.     Pursuant to § 1.8 of the Agreement, A Corp. and Rooterman were supposed to license the trademarks "Rooter-Man;" "Rooter-Man to the Rescue;" and "Rotor-Man."

29.     However, at no relevant time did A Corp. or Rooterman own a standard character mark for "Rooter-Man."

30.     Instead, Rooterman, LLC, owns a colored, illustrated drawing with the words "ROOTER-MAN" in stylized form, U.S. Registration No. 3859654, disclaiming the word "ROOTER."

31.     In fact, at no relevant time did A Corp. or Rooterman apply for a standard character mark for "Rooter-Man."

32.     In § 8.1, A Corp. and Rooterman purported to grant Mr. Belegu and QAC the rights to use the trademarks "Rooter-Man;" "Rooter-Man to the Rescue;" and "Rotor-Man."

33.     At no relevant time did A Corp. or Rooterman own or apply for a standard character mark for "Rooter-man."

34.     Similarly, at no relevant time did A Corp. or Rooterman apply for or own a standard character mark for "Rooter-Man to the Rescue," "Rotor-Man" or "RM."

35.     Additionally, Rooterman's stylized mark for "Rotor-Man", U.S. Reg. No. 1848341, was cancelled on February 14, 2025.

36.     Rooterman's sole purported marks for "RM" are a) U.S. Reg. No. 6027468, a stylized drawing of a superhero plumber, with the colors claimed as a feature of the mark; and b) U.S. Reg. No. 6013441, which is four concentric circles surrounding the letters RM, with colors claimed as a feature of the mark.

37.    None of the marks owned by A Corp. or Rooterman were for any version of "Rooter-Man to the Rescue;" the closest approximation is a stylized mark, with colors claimed as a feature of the mark, with "ROOTERMAN" on the top and "TO THE RESCUE" at the bottom. U.S. Reg. No. 6,013,446.

38.    Pursuant to § 1.10.1, A Corp. and Rooterman were supposed to provide locally optimized websites.

39.    A Corp. and Rooterman failed to provide sufficient locally optimized websites, necessitating that Mr. Belegu and QAC develop their own.

40.    Pursuant to § 7.1(B), A Corp. and Rooterman were required to design certain "FRANCHISEE Webpages."

41.    A Corp. and Rooterman failed to provide sufficient FRANCHISEE Webpages, necessitating that Mr. Belegu and QAC develop their own.

42.    Pursuant to § 3.1(E), A Corp. and Rooterman were supposed to not license any other person or entity to operate another Rooter-Man franchise in Mr. Belegu and QAC's territories.

43.    Nevertheless, A Corp. and Rooterman knowingly failed to police their name and marks, impliedly licensing others to compete with Mr. Belegu and QAC as "Rooter-Man" in the territories.

44.    Pursuant to § 8.5(A) & (B), A Corp. and Rooterman were repeatedly given information by Mr. Belegu and QAC that third parties were using the name and marks in their territories.

45.    Section 8.5 put the onus on Mr. Belegu and QAC to pursue third parties using the name and marks, if A Corp./Rooterman granted permission.

46.     At no time did Section 8.5 require A Corp. or Rooterman to enforce their own alleged marks.

47.     At all relevant times, A Corp. and Rooterman unreasonably withheld permission for Mr. Belegu and QAC to bring action against those third parties.

48.     Pursuant to § 9.1, A Corp. and Rooterman were required to provide a training program to Mr. Belegu and QAC.

49.     No such training program was provided.

50.     Pursuant to § 9.1(E), A Corp. and Rooterman were required to provide on-going operation assistance and supervision.

51.     No such operation assistance or supervision occurred.

52.     No representative from A Corp. or Rooterman ever accompanied Mr. Belegu or QAC's employees on a job.

53.     No representative from A Corp. or Rooterman ever inspected or reviewed the quality of the work performed by Mr. Belegu or QAC's franchises.

54.     No representative from A Corp. or Rooterman ever engaged in any form of quality control as to the work performed by Mr. Belegu or QAC's franchises.

55.     No representative from A Corp. or Rooterman ever engaged in any form of quality control as to the advertising and marketing performed by Mr. Belegu or QAC's franchises.

56.     Despite having the contractual authority, neither A Corp. nor Rooterman inspected Mr. Belegu & QAC's operations per § 12.8 of the agreement.

### Count I: Fraud in the Inducement
(Belegu & QAC vs Rooterman)

57.     Counterclaim Plaintiffs restate and reallege paragraphs 1-56 as if fully set forth herein.

58.    To set forth a claim for fraud in the inducement, the plaintiff must establish misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying. *Commerce Bank & Tr. Co. v. Hayeck*, 46 Mass. App. Ct. 687, 692, 709 N.E.2d 1122, 1126 (1999).

59.    To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented that it owned the marks "Rooter-Man," "Rooter-Man to the Rescue," and "Rotor-Man."

60.    To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented that no other person or entity would be suffered to ply their trade in plumbing and sewer work in the territories under the name "Rooter-Man" or any variant thereof.

61.    To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented by omission that Mr. Belegu would be otherwise able to separately and permanently operate his pre-existing trade of water damage restoration.

62.    To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented that locally optimized websites would be developed for the marketing of their services in the territories.

63.    Mr. Belegu and QAC reasonably relied upon these misrepresentations in entering into the agreements.

64.    As successor-in-interest, Rooterman is liable for the fraudulent inducements by A Corp.

65.    As a proximate result of the misrepresentations, Mr. Belegu and QAC were forced to make significant independent expenditures in locally optimized marketing and in addressing

competitors in the territories performing plumbing and sewer services under the name "Rooterman" or variants thereof.

66.     As a consequence of the fraudulent inducement, the agreements are void.  *Green v. Harvard Vanguard Med. Assocs., Inc*., 79 Mass. App. Ct. 1, 11, 944 N.E.2d 184 (2011).

67.     On account of the fraudulent inducements, Mr. Belegu and QAC are entitled to recover actual, nominal, and punitive damages, and a declaration that the agreements are void.

### Count II: Breach of Contract
(Belegu & QAC vs Rooterman)

68.     Counterclaim Plaintiffs restate and reallege paragraphs 1-56 as if fully set forth herein.

69.     "In order to state a viable breach of contract claim under Massachusetts law, plaintiffs must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach." *Brooks v. AIG Sunamerica Life Assurance Co*., 480 F.3d 579, 586 (1st Cir. 2007).

70.     The agreements were otherwise valid, binding contracts.

71.     As successor-in-interest, Rooterman is liable for any and all breaches of contract by A Corp.

72.     Section 1.8 of the agreements were breached as Mr. Belegu and QAC were never duly licensed the marks "Rooter-Man;" "Rooter-Man to the Rescue;" and "Rotor-Man," as such marks have never been owned by A Corp. or Rooterman.

73.     Section 8.1 of the agreements were breached as Mr. Belegu and QAC were never duly licensed the marks "Rooter-Man;" "Rooter-Man to the Rescue;" and "Rotor-Man," as such marks have never been owned by A Corp. or Rooterman.

74.    Section 1.10.1 of the agreements were breached as Mr. Belegu and QAC were never provided sufficient locally optimized websites.

75.    Section 7.1(B)  of the agreements were breached as Mr. Belegu and QAC were never provided sufficient FRANCHISEE Webpages.

76.    Section 3.1(E) of the agreements were breached as A Corp. and Rooterman knowingly failed to police their name and marks, impliedly licensing others to compete with Mr. Belegu and QAC as "Rooter-Man" in the territories.

77.    Sections 8.5(A) & (B) of the agreements were breached as A Corp. and Rooterman unreasonably withheld permission for Mr. Belegu and QAC to bring action against third parties who used the name and/or marks in their territories.

78.    Section 9.1 of the agreements were breached as A Corp. and Rooterman failed to provide the required training program.

79.    Section 9.1(E) of the agreements was breached as A Corp. and Rooterman failed to provide on-going assistance and supervision.

80.    As a proximate result of these breaches, Mr. Belegu and QAC were forced to make significant independent expenditures in locally optimized marketing and in addressing competitors in the territories performing plumbing and sewer services under the name "Rooterman" or variants thereof.

81.    On account of the breaches, Mr. Belegu and QAC are entitled to recover actual, nominal, and punitive damages.

### Count III: Declaration of Absence of Servicemarks
(All Counterclaim Plaintiffs vs Rooterman)

82.    Counterclaim Plaintiffs restate and reallege paragraphs 1-56 as if fully set forth herein.

83.    A plaintiff seeking a declaratory judgment of non-infringement may obtain such if there is a real and reasonable apprehension that he will be subject to liability if he continues with his course of conduct. *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 60 F.4th 481, 491 (9th Cir. 2023); *accord In re Columbia Univ. Patent Litig*., 343 F. Supp. 2d 35, 43 (D. Mass. 2004)(addressing equivalent elements in the patent context).

84.    Rooterman has filed suit against Counterclaim Plaintiffs and otherwise makes threats over their alleged use of the terms "Rooterman" and "RM."

85.    At no relevant time, however, has Rooterman, directly or as successor to A Corp., owned, let alone sought to register, standard character marks in "Rooterman" or "RM."

86.    Counterclaim Plaintiffs, therefore, are entitled to a declaration that Rooterman has no rights under the Lanham Act in "Rooterman" or "RM."

### Count IV: Cancellation of Rooterman's Marks—Abandonment by Failure to Police
(All Counterclaim Plaintiffs vs Rooterman)

87.    Counterclaim Plaintiffs restate and reallege paragraphs 1-56 as if fully set forth herein.

88.    On information and belief, numerous plumbing and sewer service companies have used the phrase "Rooterman" and/or "RM" as part or all of their names, including some utilizing one or more of the marks identified at ECF No. 7-2 (collectively "the marks").

89.    These included the companies identified by Mr. Belegu and QAC, about which no action was taken by A Corp. and/or Rooterman.

90.    On information and belief, many of these companies are or were licensed by A Corp. and/or Rooterman.

91.    On information and belief, A Corp. and/or Rooterman knew or should reasonably have known of these companies used the marks but took no action to cease usage of the marks.

92.     A Corp. and Rooterman's failure to prevent unlicensed usage of the aforesaid marks means that the marks no longer identify Rooterman as the single source of services offered under the mark and that the marks no longer function as a service mark.

93.     As a result of A Corp. and Rooterman's failure to prevent unlicensed usage of the marks, all such registrations should be cancelled pursuant to 15 U.S.C. §§ 1064 & 1119.

### Count V: Cancellation of Rooterman's Marks—Naked License
(All Counterclaim Plaintiffs vs Rooterman)

94.     Counterclaim Plaintiffs restate and reallege paragraphs 1-56 as if fully set forth herein.

95.     As set forth above, A Corp. entered into the agreements to use the name "Rooter-Man," "Rooter-Man to the Rescue," and "Rotor-Man," along with the marks identified at ECF No. 7-2 (collectively "the marks").

96.     The agreements did not provide any measures by which A Corp. and/or Rooterman could exert any control over Mr. Belegu & QAC's usage of the name Rooterman, RM, or the marks, and did not provide any measures by which A Corp. and/or Rooterman could otherwise affect the way that Mr. Belegu and QAC operated their businesses under the name "Rooterman" or variants thereof.

97.     A Corp. and Rooterman did not take any steps to actually exert control over Mr. Belegu and/or QAC's use of the Rooterman name and/or the marks throughout the terms of the agreements.

98.     A Corp. and Rooterman's failure to control the quality of the licensed services means that the Rooterman name and the marks no longer identify Counterclaim Defendant as the single source of services offered under the marks and that the marks no longer function as a service mark.

99.    As a result of A Corp. and Rooterman's naked license of the marks to Mr. Belegu and QAC, the registration of the marks should be cancelled pursuant to 15 U.S.C. §§ 1064 & 1119.

### Count VI: Unfair and Deceptive Trade Practices (G.L. c. 93A, § 11)
(Belegu & QAC vs Rooterman)

100.    Counterclaim Plaintiffs restate and reallege paragraphs 1-56 as if fully set forth herein.

101.    A claim under Mass. Gen. Laws, ch. 93A, § 11, "has three elements: (1) the defendant engaged in an unfair method of competition or committed an unfair deceptive act or practice; (2) a loss of money or property was suffered; and (3) the defendant's unfair or deceptive method, act or practice caused the loss suffered." *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st Cir. 2021).

102.    To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented that it owned the marks "Rooter-Man," "Rooter-Man to the Rescue," and "Rotor-Man."

103.    To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented that no other person or entity would be suffered to ply their trade in plumbing and sewer work in the territories under the name "Rooter-Man" or any variant thereof.

104.    To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented by omission that Mr. Belegu would be otherwise able to separately and permanently operate his pre-existing trade of water damage restoration.

105.    To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented that locally optimized websites would be developed for the marketing of their services in the territories.

106.    Mr. Belegu and QAC reasonably relied upon these misrepresentations in entering into the agreements.

107.    Such material misrepresentations constitute unfair or deceptive trade practices under Chapter 93A.

108.    As successor-in-interest, Rooterman is liable for the material misrepresentations by A Corp.

109.    As a proximate result of the misrepresentations and the failure of A Corp. and/or Rooterman to fulfill the promises, Mr. Belegu and QAC were forced to make significant independent expenditures in locally optimized marketing and in addressing competitors in the territories performing plumbing and sewer services under the name "Rooterman" or variants thereof.

110.    On account of the unfair and deceptive trade practices, Mr. Belegu and QAC are entitled to recover actual, nominal, and punitive damages, double or treble damages, and attorneys' fees and costs.

### **PRAYER FOR RELIEF**

WHEREFORE Counterclaim Plaintiffs pray for judgment as follows:

A.    That Rooterman takes nothing by way of its Complaint;

B.    That judgment be entered in favor of Defendants on all of Rooterman's purported claims;

C.    A declaration that Rooterman's lacks rights in "Rooterman" or "RM;"

D.    Cancelation of all marks identified at ECF No. 7-2 pursuant to 15 U.S.C. §§ 1064 & 1119;

E.    A declaration that the agreements are invalid;

Defendants' Answer and Counterclaims
1:24-cv-13015

F.    Award Mr. Belegu and QAC all monies paid to A Corp. and Rooterman under the agreements;

G.    Award Mr. Belegu and QAC actual and/or nominal damages;

H.    Award Mr. Belegu and QAC double or treble damages;

I.    Award Mr. Belegu and QAC punitive damages;

J.    Award Counterclaim Plaintiffs their costs in this matter;

K.    Award Mr. Belegu and QAC their reasonable attorneys' fees and expenses;

L.    Award Counterclaim Plaintiffs pre- and post-judgment interest as applicable; and

M.    Award any other relief the Court deems just and proper.

Dated: February 18, 2025                    Respectfully Submitted,

                                            /s/ Marc J. Randazza
                                            Marc J. Randazza, BBO# 651477
                                            mjr@randazza.com, ecf@randazza.com
                                            Jay M. Wolman, BBO# 666053
                                            jmw@randazza.com
                                            RANDAZZA LEGAL GROUP, PLLC
                                            30 Western Avenue
                                            Gloucester, MA 01930
                                            Tel: (978) 801-1776

                                            *Attorneys for Defendants.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 18, 2025, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

<u>/s/ Marc J. Randazza</u>
Marc J. Randazza

- 24 -
Defendants' Answer and Counterclaims
1:24-cv-13015