IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Rooterman, LLC<br><br>   *Plaintiff,*<br><br>v.<br><br>Klodian Belegu, Quality Air Care Corporation, RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation.<br>   *Defendants*. | Civil Action No. 1:24-cv-13015 |

**PLAINTIFF'S MOTION FOR SANCTIONS
FOR SUBMITTING FALSE TESTIMONY AND FAILURE TO
COMPLY WITH COURT ORDER**

Plaintiff, Rooterman, LLC ("Plaintiff"), hereby moves for sanctions against Defendants Klodian Belegu, Quality Air Care Corporation, RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation (collectively, "Defendants") for submitting false testimony and a blatant failure to comply with this Court's Order of January 29, 2025.

Notably, Plaintiff's undersigned counsel conferred with Defendants' undersigned counsel in advance of making this motion this morning, March 5, 2025, just after 9:00 a.m. Following that, Mr. Belegu submitted a "Supplemental Declaration" where he attempts to excuse his wrongdoing. There is no excuse, and he should be sanctioned.

**INTRODUCTION**

After a hearing on January 29, 2025, and consistent with relief permitted under 15 U.S.C. §1116(a), this Court granted partial relief and required Mr. Belegu to report within 30 days on his compliance with his contractual and statutory obligation to return proprietary and trade secret materials to Plaintiff and to cease using Plaintiff's trademarks, as well as any other efforts taken to

#5891296v1

comply with his legal obligations. In response to this Court's Order, Defendant, Klodian Belegu took that full 30 days to prepare and submit a perfunctory and conclusory declaration on February 28, 2025.

That declaration contains blatantly false statements, proven herewith. Moreover, given the declaration Mr. Belegu had already submitted on January 13, 2025 (ECF 18-1), and the questions left open in it, a much more detailed declaration in response to this Court's Order was warranted. Mr. Belegu's February 28, 2025 declaration is both false and insufficient and (a) he should be sanctioned, and (b) this Court should recognize this development is further grounds to grant the injunction requested by the Plaintiff. The supposed supplemental and curative Declaration filed this morning (ECF 28-1) was only filed after counsel conferred about this Motion. There is no excuse for that. Moreover, there are more matters Mr. Belegu continues to fail to address and defy this Court's Order of January 29, 2025, identified below.

## **FACTS**

On January 29, 2025, and as 15 U.S.C. §1116(a) permits, this Court ordered Defendants to file a declaration no later than February 28, 2025. (See ECF No. 23) This declaration was meant to show the steps that Defendants had taken to (a) stop misusing Plaintiff's trademarks, and (b) fully disengage with Plaintiff as required by the Franchise Agreements and trademark law. The Court's order further required Defendants to return "all materials referenced in the franchise agreements."

Defendants filed the Declaration of Klodian Belegu on February 28, 2025. (See ECF No. 26) Mr. Belegu failed to state with particularity all the steps taken to comply with the Court's Order. Instead, he makes conclusory and false statements throughout, and most notably in Paragraphs 3, 8 and 9. The Further Declaration of Nathan King filed herewith details as such, and

2

it attaches as Exhibit A the website, www.rootermannewark.com that, as of 9:00 a.m. this morning, was still operative and uses a phone number that answers, "911 Sewer and Drain."

As Mr. King details, in Paragraph 3 of his February 28, 2025 Declaration, Mr. Belegu falsely states: "I have taken all necessary steps to ensure that my co-Defendants and I are no longer using alleged Plaintiff's marks and the information that Plaintiff claims is confidential, proprietary, and/or a trade secret."

Attached to Mr. King's Further Declaration as Exhibit A, is yet another website, www.rootermannnewark.com, printed on March 4, 2025. This is Mr. Belegu's website. Moreover, Newark, NJ is Essex County, New Jersey, which is one of the many counties in New Jersey where Mr. Belegu operated as a franchisee. (See Reply Declaration of Nathan King, ECF 20-2, Exhibit B thereto at p.2) Notably, the website attached to Mr. King's Further Declaration as Exhibit A is copyrighted in 2023, and there are blog posts from 2024, after Mr. Belegu's termination as a franchisee.

There are many notable things about the rootermannewark.com website: among them,

  a. the Plaintiff's trademark/logo that is being use (Reg. 6,013,446) is the same as used in Exhibit A to the Amended Complaint, for rootermanplumberservices.com. That trademark is reflected as clearly owned by Plaintiff in Exhibit B to the Amended Complaint,

  b. there is a phone number on that website, 866-244-4569, and when Mr. King called it on March 4, 2025, the call was picked up picked up by a female answering "911 Sewer and Drain" which is a reason why relief against defendant 911 Sewer and Drain is warranted here as well. Mr. Belegu has yet to return that telephone number

as well as others he continues to use and was using, even after his franchise was terminated, under the Rooterman marks.[1]

c. the website acknowledges doing water restoration service under the Rooterman name, which is another supporting fact that belies Mr. Belegu's defense that Rooterman's trademarks are not associated with water restoration, and it is a reason why relief against defendant RM Water Damage Restoration is warranted here as well.

For these reasons, Mr. Belegu also falsely states in Paragraph 8 of his February 28, 2025 declaration: "My co-Defendants and I are not using Plaintiff's alleged ROOTERMAN marks in connection with internet advertisements, listings, and all domains. We do not hold ourselves out as a franchisee of Plaintiff, and we have stopped all use of the alleged ROOTERMAN marks, color combinations, designs, symbols, and slogans." And, he falsely states in Paragraph 9: "My co-Defendants and I have ceased all use of Plaintiff's alleged marks and have taken all necessary steps to comply with the Court's Order. If this Court requests any additional information from me to demonstrate that Defendants have completely ceased all use of Plaintiff's alleged marks and claimed confidential, proprietary, and trade secret information, I am happy to provide it."

There are also other areas in which Mr. Belegu's February 28, 2025 declaration is lacking. For example, in Mr. Belegu's January 13, 2025 declaration (ECF 18-1), he noted in Paragraphs 37

---

[1] Worth noting, in the parties' Joint Status Report (ECF 24), and in his February 28, 2025 declaration (Paragraph 7) Mr. Belegu's counsel notes that Mr. Belegu sees no obligation to return phone numbers to Plaintiff. That argument is meritless. The obligation to return numbers is not only contractual (Sections 12.11 and 16.D.4 of Exhibit C to the Amended Complaint) is founded upon Mr. Belegu's complete misuse of a "Rooterman" website phone number to direct traffic to 911 Sewer & Drain. Indeed, that is a reason alone that number, and opthers used by Mr. Belegu as franchisee for Rooterman, must be returned to Plaintiff. On January 31, 2025, Plaintiff's attorneys provided the Defendants' attorneys with a list of phone numbers they identified as former Franchisee phone numbers and requested Defendants take steps to transfer these numbers to Plaintiff. The number identified above is yet another number that was not even on that list. Mr. Belegu's actions and continued misconduct in this regard demonstrate he is not being forthcoming with Plaintiff and, now, the Court.

and 38 that he was in the process of shutting down the www.rootermanplumberservices.com website, and that he would lose a lot of money if he was under any Court Order that interfered with him from transferring some "personally owned website links" to some "new domain." There is nothing mentioned in Mr. Belegu's February 28, 2025 declaration about this at all. Yet, there reasonably should be. Thus, Plaintiff reasonably believes that Mr. Belegu's alleged "personally owned" materials are actually Plaintiff-owned materials to which he claims improper ownership and title.

As another example, Mr. Belegu's February 28, 2025 declaration makes no reference to the status of any efforts for third party websites, such as X (formerly known as Twitter), LinkedIn, Yelp, Homeadvisor, Google, Facebook, or other third parties to address matters identified in the Complaint. Someone truly taking steps to comply with this Court's Order of January 29, 2025 would have attached letters and requests and/or demands to those third parties to take action to make proper changes. Mr. Belegu February 28, 2025 declaration shows no such efforts.

Moreover, as evidenced by the Google Business Page attached to Mr. King's Further Declaration as Exhibit B, Defendants continue to use the Rooterman Marks and name through sites and photos. Indeed, the photo on Page 1 of Exhibit B to the Mr. King's Further is the current photo for 911 Sewer & Drain. On the signage on that photo is not only the Rooterman and Sewer Man trademarks (see Verified Complaint, Ex. B to that filing, ECF-7-2 pp. 4 and 6 therein), but also a phone number (866-634-4424) that was demanded to be returned on January 31, 2025.

Indeed, rather than demonstrate thorough diligence and respect this Court's Order of January 29, 2025 with such an appropriate submission, Mr. Belegu's February 28, 2025 declaration effectively defies this Court's Order. Mr. Belegu should be recognized to have both submitted a declaration filled with false statements, and to have defied this Court's Order. His "mea culpa" in

his Supplemental Declaration, filed this morning, does not forestall this. All that document represents is the following sequence: (a) Mr. Belegu making a false statement, (b) being caught red-handed, and (c) making one new change given he was caught red-handed. But, as noted above, there remain numerous other things for Defendants to do, and the above are only some of them. Only through being caught red-handed, or perhaps, a further court Order, will Mr. Belegu take his legal obligations seriously.

**ARGUMENT**

Sanctions are appropriate here given the above, and the most recognized and appropriate sanction here is an award of attorneys' fees.

As the U.S. Supreme Court has stated: "our cases have consistently -- indeed without exception -- allowed sanctions for false statements or perjury[.]" United States v. Mandujano, 425 U.S. 564, 577 (1976); see also Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). As the First Circuit duly noted in Aoude: "Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms." Id. There, the court recognized facts giving rise to a pattern of deception, and stated: "The only conceivable reason for Aoude's elaborate duplicity was to gain unfair advantage, first in the dispute, thereafter in the litigation. The tactic plainly hindered defendant's ability to prepare and present its case, while simultaneously throwing a large monkey wrench into the judicial machinery." Id.; see also Mercury Serv. v. Allied Bank, 117 F.R.D. 147, 156 (C.D. Cal. 1987) (finding a district court can impose sanctions for "the filing of a paper that lacks factual foundation and is intended to mislead the Court and opposing parties . . . because of the disrespect shown to judicial process").

Defendants should be sanctioned here because a pattern exists giving rise to substantial concerns: *first,* as set forth in the Verified Complaint, Mr. Belegu, individually and through his

web of corporations directly used Plaintiff's trademarks and improperly competed with Plaintiff, including while he was a franchise (through "RM Water Damage Restoration"), *second,* despite being terminated as a franchisee in the early fall of 2024, and being sent letters and demands to return Plaintiff's property, and cease and desist using Plaintiff's trademarks, he did not;[2] *third,* only after a failed mediation in early December did Belegu "start" supposedly disassociating from Plaintiff, but his method of disassociating was simply to change everything over to 911 Sewer & Drain, a directly competing company he planned to franchise (indeed, Mr. Belegu effectively expressly confirms as such in Paragraphs 37 and 38 of his Declaration from January 13, 2025, ECF 18-1); *fourth,* Mr. Belegu submitted this supposed detailed declaration on January 13, 2025 that was intended to persuade this court he was taking all steps necessary to disassociate and stop using Plaintiff's trademarks, prompting this Court to lean toward accepting his representations and giving him a full 30 days to fully disassociate and/or detail the substantial efforts he was making; *fifth,* after reviewing that Court Order, and taking that full 30 days -- during which time Mr. Belegu has notably refused to return telephone numbers from his franchise businesses to Plaintiff -- he submitted a mere 9 paragraph declaration, with only conclusory statements therein; and *sixth* and worst of all, the three primary substantive statements and representations he makes in Paragraphs 3, 8 and 9, are plainly false, given the rootermannewark.com website attached as Exhibit A to Mr. King's Further Declaration herewith, and given when the phone number on that website is called, the receptionist picks up and says, "911 Sewer & Drain."

In sum, Defendants have ignored, delayed, misled, and intentionally made false statements, committing not just perjury, but fraud on the Court. Mr. Belegu's February 28, 2025 Declaration

---

[2] Why? Plaintiff submits that it was because he thumbed his nose at his contractual and statutory obligations, perceiving himself as either above the law, or daring Plaintiff to sue him. With no Court Order directing him to do anything, Mr. Belegu intentionally chose to play brinksmanship in this regard.

makes a mockery of this Court's Order of January 29, 2025 that he submit a declaration detailing his efforts to disassociate. The Court's Order is not detailed, but Mr. Belegu takes full advantage of that. His February 28, 2025 Declaration suggests an "above the law" attitude, along with a recklessness of what Mr. Belegu is willing to say under oath when he thinks this Court is inclined to accept his representations. Coming to the Court with a Supplemental Declaration this morning may be understandable, but Mr. Belegu has really had since September 2024, and certainly multiple times thereafter, to fix this matter. He didn't until he was caught red-handed. It is further notable in the Supplemental Declaration filed this morning, Mr. Belegu states that he directed Andrew Madore to disable the Newark Website on December 17, 2024, just one day after the Plaintiff had filed the Amended Complaint with this Court. However, Mr. Belegu has provided no proof of this direction, neither in Exhibit A to his Supplemental Declaration, nor in the Declarations filed with the Court on January 13, and February 28, 2025.[3] Moreover, as referenced in Exhibit B to the Supplemental Declaration, Mr. Belegu only just directed his alleged Mr. Madore that "anything with the Rooter Man has to be removed today in next couple hours." This only further proves that Defendants have not taken all necessary steps to comply, and Defendants continued pattern of misleading the Court and Plaintiff.

This Court should see right through all of this. As detailed in the Verified Complaint, Mr. Belegu was a franchisee with 13 markets. He diverted money to "RM Water Damage Restoration" all along, under the supposed theory that this was not work for his "Rooterman" franchises, but something separate.[4] While still a franchisee, he set up a competing corporation that is actually

---

[3] Exhibit A of the Supplemental Declaration does not "point[] to the Newark Website" as stated by Mr. Belegu in his Supplemental Declaration. Moreover, it is telling that Defendants made no effort to provide any evidence of supposedly directing the alleged IT person, Andrew Madore, to remove sites in the earlier Declarations filed.

[4] As noted above, such a defense is now further belied by Mr. Belegu's own website, rootermannewark.com, which boasts water restoration services under the Rooterman trademark.

8

franchising, 911 Sewer & Drain. And, as Plaintiff is addressing in its arbitration with Mr. Belegu, which is just getting underway,[5] he stopped paying royalties at approximately the same time his competing businesses were operative and he owes Plaintiff back royalties.

Courts have broad discretion in their decision of whether to impose sanctions. Martinez v. Hubbard, 172 F. Supp. 3d 378, 384 (D. Mass. 2016) (citing Cooter & Gell v. Hartmarx Corp, 496 U.S. 384, 407 (1990). Courts additionally have broad discretion in determining the type of sanction to impose for a violation, as long as the sanction is not "more severe than reasonably necessary to deter repetition of the conduct by the offending person." Arkansas Teacher Retirement Sys. V State St. Bank & Trust Co., No. 11-cv-10230-MLW, 2018 U.S. Dist. LEXIS 111409, at *302 (D. Mass. May 14, 2018) (citing Fed. R. Civ. P. 11(c)(4)). A key factor in a Court's exercise of discretion is to address "conduct which abuses the judicial process," such as a fraud perpetuated on the court. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (finding no abuse of discretion where court sanctioned party for fraud perpetuated on the court and bad faith throughout course of litigation); see also Omran v. Bleezarde, No. 1:15-cv-00190-DBH. 2016 U.S. Dist. LEXIS 132729, at *26 (D.N.H. Aug. 26, 2016) (upholding sanctions were party filed a fraudulent declaration neither authorized or authored by the named declarant and which contained false material factual assertions). Mr. Belegu's Declaration of February 28, 2025, when considered in light of the rootermannewark.com website, and likely other matters remaining to be discovered, is intended to influence and mislead this Court as this Court considers the relief requested by Plaintiff in its Motion for a Preliminary Injunction. See Legault v. Zambrano, 105 F.3d 24, 28 (1st Cir. 1997) (finding improper letter from party influenced court substantially as opposing party received only partial injunctive relief).

---

[5] The parties have just agreed upon an Arbitrator, and the initial call with the Arbitrator will be scheduled for, most likely, March 26, 2025.

9

Here, similar to Legault, Mr. Belegu has submitted a Declaration containing perfunctory and conclusory statements and setting forth substantively false statements in a plain attempt to convince this Court he is complying as directed, and this Court should trust and rely on these statements and all others because he is doing what he is supposed to be doing; in so doing, Mr. Belegu no doubt hopes to prevent the injunctive relief requested by Plaintiff. See Legault, 105 F.3d at 28.

Mr. Belegu is not above the law, and this Court should come down firmly upon him, as that is the only thing that will have meaning to him. Such sanction should be the reimbursement of Plaintiff's actual attorneys' fees and litigation costs to date[6] for even needing to sue him to get relief, which fees should be Ordered to be paid within 30 days of proof of Plaintiff's payment of same. Such a sanction is appropriate, and not overly harsh given Mr. Belegu's plain perjury,[7] because attorneys' fees are both contractually available to Plaintiff for enforcement of its contractual rights (see Amended Complaint, Exhibit C thereto, Section 19.7), and statutorily available under various sections in Title 15 of the U.S. Code, including, without limitation § 1117(a).

---

[6] These fees are estimated at $60,000 together with recent unbilled time, and costs, inclusive of the parties' mediation and arbitration expenses are approximately $8,000. However, if the relief herein is granted, Plaintiff will duly submit a Petition for Attorneys' Fees.

[7] Indeed, as this Court is well-aware, appropriate sanctions can also include dismissal of claims and adverse inferences on substantive claims.

## CONCLUSION

For the reasons above, Defendants should be sanctioned with an Order that Defendants pay Plaintiff's actual attorneys' fees and costs to date, to be paid within 30 days of proof of payment of same.

Respectfully submitted,

ROOTERMAN, LLC

By its Counsel

Dated: March 5, 2025

*/s/ Jeffrey Rosin*
Jeffrey M. Rosin, BBO# 629216
Lisbeth Valdez, BBO# 715826
O'HAGAN MEYER, PLLC
140 Kendrick Street, Bldg. C
Needham, MA 02494
Telephone: (617) 843-6800
Fax: (617) 843-6810
jrosin@ohaganmeyer.com
lvaldez@ohaganmeyer.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5TH day of March 2025, *Plaintiff's Motion for Sanctions* was electronically filed.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Jeffrey Rosin*
Jeffrey M. Rosin

## CERTIFICATE OF CONSULTATION

I, Jeffrey M. Rosin, certify that on this 5th day of March 2025, I conferred by telephone with counsel for Defendants, providing the information above, and offering Defendants an opportunity to refute the information.  Plaintiff files this Motion at this time even though Mr. Belegu submitted a Supplemental Declaration to attempt to resolve this matter, as in Plaintiff's view, it does not resolve the pattern of wrongdoing at-issue or the relief requested.

*/s/ Jeffrey Rosin*
Jeffrey M. Rosin