IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rooterman, LLC )<br><br>*Plaintiff,* )<br><br>v. )<br><br>Klodian Belegu, Quality Air Care )<br>Corporation, RM Water Damage )<br>Restoration LTD and 911 Sewer & Drain )<br>Corporation. )<br>*Defendants.* ) | Civil Action No. 1:24-cv-13015 |

### PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff/Defendant-in-Counterclaim, Rooterman, LLC ("Rooterman"), hereby moves to dismiss Defendants' counterclaims and hereby submits this Memorandum of Law in support of its motion. All of the counterclaims of Defendants/Counterclaimants, Klodian Belegu ("Belegu"), Quality Air Care Corporation ("QAC"), RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation (collectively, "Counterclaimants") must be adjudicated in arbitration, or alternatively, they are time-barred.

### I. INTRODUCTION

In a six-count pleading, Counterclaimants challenge the validity of the thirteen franchise agreements entered into between 2019 and 2021 ("Franchise Agreements"), as well as the validity and enforceability of the Rooterman trademarks. However, the claims should not be adjudicated here as they are subject to binding arbitration, or, alternatively, fail to state a claim under Rule 12(b)(6) because they are time-barred.

The motion to compel arbitration is straightforward, as all counterclaims fall within the agreement to arbitrate, and are not within the same exception (*i.e.,* injunctive relief) utilized by

Rooterman to bring this action. As for the alternative relief of Plaintiff's request for dismissal of all counterclaims as time-barred, Belegu and QAC argue that the franchise agreements should be voided and that all monies paid under the franchise agreements should be returned by Rooterman based on the supposed "fraud" of A Corp. (Count I), breach of contract by A Corp. and/or Rooterman (Count II), and a violation of Chapter 93A by A Corp. and Rooterman (Count VI). The fundamental flaw for all of these counts is that even if the allegations were true (which they are not), Counterclaimants have failed to bring their claims within the 1 or 2 year contractually agreed upon limitations period set forth in Section 19.7(G) of each of their franchise agreements. Indeed, Counterclaimants' own allegations demonstrate that they knew or should have known of any facts giving rise to any such liability shortly after the first franchise agreements were entered into in 2019. Now, nearly six years later for some agreements, and over 4 years later for others, Counterclaimants are far too late to allege that they were fraudulently induced to enter into said agreements, or and that A. Corp. initially, and Rooterman starting in 2022, failed to honor obligations under the agreements. Even Defendants' counterclaims sounding in trademark (Counts III-V) are time-barred, as all three of them amount to, in essence, requests for declaratory relief that operate as "defenses" to Plaintiff's trademark enforcement claims, when the facts giving rise to these defenses were admittedly also known from the start of Mr. Belegu's franchise operations. Thus, if arbitration of all counterclaims is not Ordered, this Court should grant dismissal of all counterclaims as time-barred.

## II.    SUMMARY OF THE COMPLAINT AND COUNTERCLAIMS

"Rooterman" is a national franchise brand that provides plumbing, sewer, drain cleaning, damage restoration and related services in hundreds of locations throughout the United States. See Amended Complaint, ¶ 8, 22. Plaintiff/Defendant-in-Counterclaim, Rooterman, LLC ("Rooterman") is the successor in interest to A Corp.'s ownership of the "Rooterman" intellectual

property rights. See id., ¶ 2. Plaintiff acquired the Rooterman assets of A Corp. by way of an asset purchase agreement dated January 20, 2022. See id., ¶ 3; Counterclaims, ¶ 4. Rooterman owns several valid and enforceable trademarks in "Rooterman," "Rooterman to the Rescue," and "RM," as set forth in Exhibit B to the Amended Complaint, with the earliest trademark being registered and used continuously in United States commerce since August 2, 1991. See Complaint, ¶¶ 1, 7; Exhibit B. Mr. Belegu is a former multi-unit Franchisee of Rooterman and the sole owner of the Counterclaimant entities, Quality Air Care Corporation, RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation. See id., ¶¶ 4-5; Counterclaims, ¶¶ 3-6. Between September 2019 to January 2021, Mr. Belegu individually and on behalf of his entities, QAC and non-party Water Damage Solution of Bergen, LLC,[1] purchased multiple Franchise units and executed thirteen franchise agreements with A Corp. to operate a "Rooterman" franchise throughout certain territories in New Jersey, New York, and Pennsylvania. See Complaint, ¶¶ 11-12; Counterclaims, ¶¶ 1, 12-13.

Plaintiff alleges various breaches of contract (all to be addressed in a parallel arbitration as Plaintiff previously informed the Court, see ECF-22, n.4), but filed this Court case under the exception to arbitration for requests for injunctive relief, including injunctive relief for the protection of its trademarks. Defendants counterclaim, but all of Defendants' counterclaims are subject to the arbitration clause in the parties' franchise agreement (which was the same in all 13 franchise agreements), providing as follows:

> Except as otherwise set forth in this Agreement, any controversy or claim arising out of or relating to this Agreement, or any breach, including without limitation, any claims that this Agreement or any part, is invalid, illegal or otherwise voidable or void, shall be submitted to arbitration before and in accordance with the arbitration rules of the American Arbitration Association in accordance with its commercial arbitration rules, or any other mutually agreeable arbitration

---

[1] Plaintiff will utilize the Court Ordered expedited discovery period to determine Mr. Belegu's ongoing use of this entity, if any.

> association. A CORP. and FRANCHISEE agree that arbitration shall be conducted on an individual and not a class-wide basis.

See Amended Complaint, Exhibit C, at § 19.7(C).

Counterclaimants' causes of action for fraud, breach of contract, and Chapter 93A are all readily within this clause. Counterclaimants' trademark "claims" should be as well, as they are actually defenses to Plaintiff's efforts to enforce its trademarks and represent, perhaps, Counterclaimants' effort to have their defenses to Plaintiff's trademark claims adjudicated without arbitrating them. Here, rather than adjudicate the merits of Plaintiff's trademark claims, and Defendants' defenses, this Court need only rule as to the elements of the injunction requested, *i.e.*, is there a reasonable likelihood of success on the merits; this Court need not rule on whether Plaintiff does succeed on the merits.

However, to the extent this Court rules that any of Plaintiff's counterclaims are properly in this Court, alternatively, as set forth in Part III.B below, they are time-barred under the parties' contractually shortened limitations period and Counterclaimants' admissions of fact pertaining to those counterclaims.

### III.    ARGUMENT

#### A. Counterclaimants Must Arbitrate Their Claims And Their Counterclaims Should Be Dismissed

Both federal and Massachusetts public policy favor agreements to arbitrate disputes. See Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq.; Massachusetts Arbitration Act ("MAA"), M. G. L. c. 251 §§ 1 et seq; see also AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983)) (the FAA reflects a "liberal federal policy favoring arbitration"); Miller v. Cotter, 448 Mass. 671, 677 (2007) (finding language of the FAA "remarkably similar" to the language of the MAA). M. G. L. c. 251 § 1 states, in part:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

See also Raytheon Co. v. Automated Business Sys., Inc., 882 F.2d 6, 9 (1st Cir. 1989) (holding agreement for arbitration of "all disputes" arising from contract included award of punitive damages"); Chen He v. Edna St., LLC, 102 Mass. App. Ct. 1102 (2022) (holding arbitrable claims arising from facts which fall under the arbitration clause, as doubts resolved in favor of arbitration).

In light of this liberal policy, courts will grant a motion to compel arbitration where, as here, the parties have agreed to arbitrate and/or when doing so does not substantially prejudice the opposing party and will serve the interests of justice and efficiency. See Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001); McInnes v. LPL Fin., LLC, 466 Mass. 256, 267 (2013) (holding moving party entitled to compel arbitration where there is no dispute of material fact as to whether parties executed a valid arbitration agreement that covered claims in complaint). Moreover, there is a presumption of arbitrability in contracts which contain an arbitration clause, as "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." See Chelsea v. New England Police Benevolent Ass'n Inc., Local 192, 491 Mass. 426, 430 (2023) (quoting Local No. 1710, Int'l Ass'n of Fire Fighters v. Chicopee, 430 Mass. 417, 421 (1999)); Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 9 (1st Cir. 2014).

Counterclaimants agreed to and should be compelled to arbitrate all of their counterclaims. See Amended Complaint, Exhibit C, § 19.7. Section 19.7(C) of the Franchise Agreements governs the claims that are required to be submitted to arbitration. It states as follows:

> Except as otherwise set forth in this Agreement, any controversy or claim arising out of or relating to this Agreement, or any breach, including without limitation,

> any claims that this Agreement or any part, is invalid, illegal or otherwise voidable or void, shall be submitted to arbitration before and in accordance with the arbitration rules of the American Arbitration Association in accordance with its commercial arbitration rules, or any other mutually agreeable arbitration association. A CORP. and FRANCHISEE agree that arbitration shall be conducted on an individual and not a class-wide basis.

See id. at § 19.7(C).

All of Counterclaimants' causes of action readily fall within this clause. Even the trademark "counterclaims" are not actually claims; they are defenses to Plaintiff's effort to enforce its claims, and whether Plaintiff ultimately succeeds on those claims, or whether any of Defendants' defenses thereto forestall that success, is something the arbitration between the parties will resolve.[2]

### B. Alternatively, All Of Plaintiffs' Counterclaims Should Be Dismissed As Time-Barred

A motion to dismiss should be granted when the allegations in a pleading show that the "events giving rise to the claim and the commencement of the action exceeds the applicable limitations period," and if the properly considered documents "'fails to sketch a factual predicate that would' provide a basis for tolling the statute of limitations." Abdallah v. Bain Capital LLC, 752 F.3d 114, 119 (1st Cir. 2014) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008); see also LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) ("Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred"). Notably, tolling of the statute of limitations does not occur where a party has "actual knowledge of the facts giving rise to his cause of action." Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics,

---

[2] Defendants may argue that RM Water Damage and 911 Sewer & Drain are not parties to the franchise agreements, and thereby the agreements to arbitrate. However, that argument would fail since Belegu is the sole owner of those entities and it is those entities that are likewise alleged to have engaged in the identical violations of Belegu himself. See Restoration Pres. Masonry Inc. v. Grove Eur. Ltd., 325 F.3d 54, 62 n.2 (2003); Machado v. System4 LLC, 471 Mass. 204, 211 (2015).

Inc., 412 F.3d 215, 239 (1st Cir. 2005) (quoting Stark v. Advanced Magnetics, Inc., 50 Mass. App. Ct. 226, 233-34 (2000).

In Creative Playthings, the Massachusetts Supreme Judicial Court ("SJC") made clear that contractual provisions which shorten the limitation period for asserting claims can be upheld. Creative Playthings Franchising, Corp. v. Reiser, 463 Mass. 758, 766 (2012). Moreover, a shortened limitations period in a franchise agreement is not contrary to public policy in Massachusetts. Id. at 765-66; see also Machado v. System4 LLC, 471 Mass. 204, 219 (2015) (internal quotations and citations omitted) (upholding contractually shortened limitations period in franchise agreement and noting "Massachusetts law permits contractually shortened limitations periods so long as they are reasonable and not contrary to other statutory provisions or to public policy"); Alcorn v. Raytheon Co., 175 F. Supp. 2d 117, 121 (D. Mass. 2001) (internal quotations and citations omitted) (Massachusetts courts have adopted the "dominant view in contract law, that it is permissible to have a contractual limitation period shorter than the statute of limitation… because it is consistent with the principle of party autonomy that underlies the law of contracts…")

Section 19.7(G) of the Franchise Agreement is the parties' contractual limitations period. It states as follows:

> A CORP. and FRANCHISEE agree that no action (whether for arbitration, damages, injunctive, equitable or other relief, including but not limited to rescission) will be maintained by any party to enforce any liability or obligation of the other party, whether arising from this agreement or otherwise, unless brought before the expiration of the earlier of 1 year after the date of discovery of the facts resulting in such alleged liability or obligation or 2 years after the date of the first act or omission giving rise to such alleged liability or obligation, except that where state or federal law mandates or makes possible by notice or otherwise a short period, such shorter period shall apply.

See Complaint, Exhibit C, § 19.7(G). Here, like in Creative Playthings, the 1-year contractually shortened limitations period included in the Franchise Agreements is inherently valid and enforceable. See 463 Mass. at 763-766 (upholding valid contractually shortened limitations period

which limits the limitations period to 1 year after date of discovery of facts or eighteen months after the date of the first act or omission). Notably, Mr. Belegu (individually or through an entity) entered into thirteen franchise agreements with A Corp, a fact which necessarily evidences his explicit acceptance of the same contractual limitations period, 13 times over. See id. at 766.

Yet, all of Counterclaimants claims are time-barred, as they were not raised within 1-year of the date of their admitted discovery of the facts resulting in alleged liability.

### 1. Counterclaimants' claims of fraud in the inducement (Count I), breach of contract (Count II) and violations of 93A (Count VI) are time-barred

Plaintiff addresses Counts I and VI together, as they are identical, because for fraud in the inducement and 93A (Count I and VI), Counterclaimants allege the same factual basis for such claims. (Compare Counterclaims ¶¶ 59-65 with Counterclaims ¶¶ 102-109). Moreover, many of the same allegations of "fraud" track and reclassify those same allegations as alleged "breaches of contract." Thus, the arguments herein address all three of these causes of actions together, because all supposed material misrepresentations and/or breaches were either known or should have been known from 2019-2021, when Counterclaimants were entering into the 13 contracts with A Corp.

First, Counterclaimants allege that A Corp. materially misrepresented that it owns the marks "Rooter-Man," "Rooter-Man to the Rescue," and "Rotor-Man." See Counterclaims, ¶ 102. Accepted at face value, Mr. Belegu and/or QAC knew of the existence of these trademarks in 2019 at the time of their first purchase, as they are referenced in the franchise agreements (see Verified Complaint, Exhibit C, Section 1.8) or, alternatively, through basic due diligence and a simple public records search discovered and initiated a trademark claim asserting these issues within the 1-year period. See Rife v. One W. Bank, F.S.B., 873 F.3d 17, 20 (1st Cir. 2017) (holding tolling inappropriate where party possessed terms of agreement and "with the exercise of reasonable

diligence" could have discovered and initiated claim within limitations period). They did not, and this claim is clearly time-barred.

Similarly, Mr. Belegu alleges that A Corp. materially misrepresented that Mr. Belegu would otherwise be able to operate his pre-existing trade of water damage restoration outside of his franchise. See Counterclaims, ¶¶ 15, 20. However, the following sequence is notable: (i) Rooterman's website says, as acknowledged by Counterclaimants, that "Some services are only offered at participating locations" (See Counterclaims, ¶ 25), (ii) Mr. Belegu's franchised locations were admittedly one of them, and (iii) on his own websites at-issue in this case, such as www.rootermanplumberservices.com and www.rootermannewark.com, Mr. Belegu advertised that his companies offered water damage services under the Rooterman name in New Jersey. See Verified Complaint, Exhibit A at pp. 6, 19; ECF 30-1, Further Decl. of Nathan King ("Further Decl. of King"), Exhibit A at pp. 3, 6, 11, 28, 31, 33, 48, 52. Moreover, even according to a review of Mr. Belegu's services left by Shenelle LaPierre on the former Rooterman of NJ (and current 911 Sewer & Drain google page), Mr. Belegu also operated his water damage restoration services under the Rooterman name in April 2024, before his franchise agreements were terminated. See ECF 20-2, Reply Decl. of Nathan King ("Reply Decl. of King"), Exhibit C. Further still, one of Mr. Belegu's agents stated on his LinkedIn Page that he was a "Master Plumber/Manager at RM Water Damage Restoration ltd. *d/b/a Rooter-Man*." See Amended Complaint, Exhibit J. Of course, Rooterman's own website advertises water damage restoration services. See ECF 20-2, Reply Decl. of Nathan King, ¶ 4[3].

---

[3] Extrinsic documents may be considered on a motion to dismiss including "documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint." See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013). Thus, Mr. King's sworn statements filed in this case may be relied upon for purposes of this Motion without converting it into a motion for summary judgment.

Thus, Mr. Belegu's counterclaim in this regard is not only meritless, it is clearly time-barred because Mr. Belegu effectively admits to "knowing" that, if he wanted to assert he was entitled to engage in water damage services outside of his franchise, he needed to assert that within 1 year of knowing that (such as with a request for declaratory relief). At this point, the time to make that argument has long since passed.[4] Moreover, although also a substantive argument, as a further alternative to why this allegation must be dismissed, if water damage restoration services were not part of what A Corp. offered franchisees at the time the agreements were entered into (which it is not), then there could not have been a false statement made at that time with the intent to induce Mr. Belegu and QAC to enter into the Franchise Agreements. That is, there could not have been "fraud in the inducement" as alleged in Counterclaimants' Count I.

As another example, nearly six years after entering into his first franchise agreement and four years after entering a thirteenth franchise agreement, Counterclaimants allege that A Corp. and Rooterman "never lived up to their promises" and made several material misrepresentations to induce Mr. Belegu to enter into the agreements. However, as detailed more fully below, all such claims are time-barred.

Mr. Belegu alleges that A Corp. materially misrepresented that no other person/entity in the territories would use the "Rooter-Man" name in plumbing and sewer work. See Counterclaims, ¶ 2, 42, 47, 60, 103. However, Mr. Belegu states that he knew of facts that could result in the alleged liability on November 12, 2019, whereby he sent an email to Crystal McCormick at A Corp. detailing Google listings advertising "Rooterman" in the franchised areas that were not his

---

[4] Notably, if water damage restoration services were not part of what A Corp. offered franchisees at the time the agreements were entered into (which it is not), then there could not have been a false statement made at that time with the intent to induce Mr. Belegu and QAC to enter into the Franchise Agreements. That is, there could not have been "fraud in the inducement" as alleged in Counterclaimants' Count I.

own. See ECF 18-1, Decl. of Belegu, ¶¶ 14-15.[5] He even states that he knew of further facts in January 2023, where the Google business result for "Rooter-Man" in a franchised territory had a phone number that belonged to a competitor. See id., ¶ 12. Relatedly, Mr. Belegu further claims that A Corp. and Rooterman have "unreasonably withheld permission for Mr. Belegu and QAC to bring action against those third parties" who were supposedly misusing trademarks. See Counterclaims, ¶ 47. Though not true based on, in part, public information,[6] these claims are clearly time-barred as well because they accrued upon Mr. Belegu buying his territories, but at the latest, these earlier dates referenced above.

Finally, Mr. Belegu alleges that A Corp. materially misrepresented that locally optimized websites would be developed for the marketing of their services in the territories. See Counterclaims, ¶ 38-39, 105. He claims that A Corp. and Rooterman were required to design Franchisee pages pursuant to § 7.1(B), and that they failed to provide sufficient sites, necessitating that Mr. Belegu to develop his own. See Counterclaims, ¶ 40-41. However, in his own testimony submitted to this Court, Mr. Belegu states that "A Corp. worked with me on at least 22 micro-sites," which would have been prior to the transfer of A Corp.'s rights to Rooterman in 2022. See ECF 18-1, Decl. of Belegu, ¶ 22. Thus, Mr. Belegu has admitted to addressing issues pertaining to locally optimized websites for marketing services in his territories, evidencing that no material

---

[5]    Mr. Belegu's own sworn statements filed in this case may be relied upon for purposes of this Motion without converting it into a motion for summary judgment. See Freeman, 714 F.3d at 36.

[6]    Contrary to these allegations, Rooterman has taken numerous efforts to enforce its trademarks and has filed lawsuits against former franchisees who continued to hold themselves out as a Rooterman franchisee post-termination, see Reply Decl. of King, ¶ 2). Rooterman has additionally made efforts to enforce its trademarks within Mr. Belegu's former franchised territories, including by sending cease and desist letters to persons and/or former franchisees believed to be infringing on the Rooterman Marks and name. See id. ("In the last year alone, I too have sent at least six cease and desist letters to person and/or former franchisees in New Jersey, California, and Ohio who are believed to be infringing on Rooterman's marks . . ."). Rooterman's outside counsel detailed additional steps they had taken between June 2020 and July 2022 to enforce its trademarks in a letter to Mr. Belegu dated March 20, 2023, including by sending cease and desist letters and demands to stop the infringement to persons/and or former franchisees believed to be infringing on the Rooterman marks and name. See id., Exhibit A.

misrepresentation was made to "induce" Mr. Belegu and QAC to enter into the franchise agreements. Even if this were untrue, however, Mr. Belegu further states that on November 15, 2023, Rooterman eliminated the micro-sites and that half of the sites were re-launched on May 19, 2024. See id., ¶¶ 24, 26. As such, Mr. Belegu would have known of an alleged cause of action for these Counts over fifteen months ago, which is again outside of the contractual limitations period. Thus, Counterclaimants claims for fraudulent inducement (Count I) and violations of 93A (Count VI) should be dismissed.

Notably, even if there were no contractually shortened limitations period, Mr. Belegu and QAC's fraud claims and Chapter 93A claims are time-barred, as needing to be commenced within 3 years and 4 years respectively. M.G.L. c. 260, §§ 2A, 5A; see also Petricca v. Simpson, 862 F. Supp. 13, 16 (D. Mass. 1994) (citing M.G.L. c. 260, § 2A); Arcieri v. New York Life Ins. Co., 63 F. Supp. 3d 159, 164 (D. Mass. 2014) (citing M.G.L. c. 260, § 5A (Chapter 93A consumer fraud claims must be brought within 4 years). The statute of limitations begins to run "when [a party] knows or reasonably should know of harm attributable to [opposing party]'s conduct." Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 994 (1st Cir. 1988) (citing Levin v. Berley, 728 F.2d 551,556 (1st Cir. 1984). Since Mr. Belegu knew, or reasonably should have known, of all the facts underlying his fraud claims since at least 2019, when these allegedly false statements were first made, Counterclaimants claims for fraudulent inducement (Count I) and violations of 93A (Count VI) should be dismissed as time-barred.

Mr. Belegu's one allegation that appears related to Count II alone is that A Corp. and/or Rooterman breached the franchise agreements by failing to provide a training program (Section 9.1) and failing to provide on-going assistance and support (Section 9.1E). While Section 9.1 requires A Corp to furnish, and Franchisee to complete, a training program on the operation of the

Rooterman franchise, there is a provision (Section 9.1(C)) where the training requirement is waived if a Franchisee has sufficient prior business experience. See Amended Complaint, Exhibit C. Mr. Belegu stated that he has been in the "hygiene and water damage restoration business for over ten years." See Counterclaims, ¶ 1. With over ten years of experience, he cannot claim he has standing to even assert he needed training, but if he did, that too accrued well over 1 year ago. His allegation regarding ongoing assistance and support is similar. It too was known well over a year prior, as it was part of the basis Mr. Belegu stopped paying his royalties which was also over 1 year ago. See Decl. of Belegu, ¶ 50 ("It was I and QAC who built up the business without the necessary assistance of PSB/Plaintiff"); see also Amended Complaint, ¶ 16 (911 Sewer & Drain trademark registered April 8, 2022, shortly after Plaintiff's acquisition of A Corp.'s interest in Rooterman and first used in commerce on or about February 26, 2024, just before Belegu began a continued failure to pay royalties and fees under the franchise agreements).

On a substantive level, this contractual commitment, found in Section 9.3 of the franchise agreements, is not even a contractual commitment, but a reference to a discretionary opportunity. Section 9.3 states that "A CORP. shall furnish to FRANCHISEE from time to time such operating assistance and training, as is, in A CORP's sole discretion, reasonably necessary." See Amended Complaint, Exhibit C, § 9.3(E) (emphasis added). Thus, as a second alternative, if for any reason, this sole allegation is not time-barred and some supposed ongoing continued violation, it should be dismissed under Rule 12(b)(6) for failure to state a claim.

For all of these reasons, Counts I, II, and VI of the Counterclaims should be dismissed.

### 2. Counts III-V, The Trademark Defenses/Requests for Declaratory Relief Are Also Time-Barred

Plaintiff addresses Counts III-V together, as they all assert the same or similar factual basis for their claims for relief. Indeed, all of Counterclaimants' trademark claims are premised upon

trademarks somehow being deficient or improperly represented from the start of the franchise purchases. However, these franchise purchases undisputedly occurred from 2019-2021. As such, facts pertaining to all three of these counts were necessarily known from the start and are now long since barred by the 1-year limitations period.

Counterclaimants allege that A Corp. and Rooterman never owned or applied for a standard character mark in "Rooter-Man," (See Counterclaims, ¶¶ 29, 31, 33) or for "Rooter-Man to the Rescue," "Rotor-Man," or "RM" (See id. ¶ 34). See id. ¶ 85. Contrary to these allegations, A Corp. owned and Rooterman currently owns valid and protectable Marks in "Rooter-Man to the Rescue," "Rotor-Man," and "RM." See Amended Complaint, Exhibit B. Counterclaimants attempts to overlook these protectable marks and mischaracterize the law as requiring A Corp. and Rooterman to obtain standard character marks to receive protection under the Lanham Act. Compare Counterclaims, ¶¶ 29, 31, 33, 34, 85 with SoClean, Inc. v. Sunset Healthcare Solutions, Inc., 554 F. Supp. 3d 284, 294 (D. Mass. 2021) (quoting Qualitex Co. v. Jacobsen Prod. Co., 514 U.S. 159, 166 (1995) (As long as any element of a mark alone "can act as a symbol that distinguishes a firm's goods and identifies their source, without serving any other significant function, the mark is potentially eligible for protection under the Lanham Act") (internal quotations omitted). Thus, Counterclaimants allegations for their absence of servicemarks (Count III) claim are both meritless and, as set forth above, time-barred as Mr. Belegu and/or QAC knew of the existence of these trademarks in 2019 or, alternatively, through basic due diligence and a simple public records search could have discovered and initiated a trademark claim asserting these issues within the 1-year period. See Rife, 873 F.3d at 20.

Counterclaimants also allege that A Corp. and Rooterman abandoned their Marks (Count IV) as they knowingly failed to police them, (See Counterclaims, ¶¶ 43, 89, 91), but undisputedly,

A Corp. and Rooterman have taken various actions to enforce their name and Marks. See supra Section III.B.1; id. fn. 3. This aside, once again, Counterclaimants knew of facts giving rise to this claim in 2019, and further facts in 2023. See Decl. of Belegu, ¶¶ 12, 14-15. Thus, Counterclaimants allegations are not only without merit, but also clearly time-barred.

A similar fate befalls Count V – Counterclaimants' assertions that A Corp. and Rooterman granted a naked license to Mr. Belegu. See Counterclaims, ¶ 98-99. Counterclaimants allege that A Corp. and Rooterman granted a naked license as A Corp./Rooterman (i) never sent a representative to accompany a Franchise employee on the job, (ii) never inspected or reviewed the quality of work performed, and (iii) never engaged in quality control as to the work performed or advertising and marketing performed. See id. ¶¶ 52-56. However, it is undisputed that A Corp. granted Mr. Belegu and his entities a license to use the Rooterman Marks in 2019, when Mr. Belegu first bought a franchise territory. See Complaint, ¶ 11; Exhibit C, §§ 1.8, 8.1. Thus, Counterclaimants allegations are long since time-barred.

For all of these reasons, Counts III, IV, and V of the Counterclaims should be dismissed.

## IV.     CONCLUSION

For all of the foregoing reasons, the Motion should be granted in its entirety, and Defendants' Counterclaims should be dismissed.

                                            Respectfully submitted,

                                            ROOTERMAN, LLC

                                            By its Counsel

Dated: March 11, 2025                                  */s/ Jeffrey M. Rosin*
                                                          Jeffrey M. Rosin, BBO# 629216
                                                          Lisbeth Valdez, BBO# 715826
                                                          O'HAGAN MEYER, PLLC
                                                          140 Kendrick Street, Bldg. C
                                                          Needham, MA 02494
                                                          Telephone: (617) 843-6800
                                                          Fax: (617) 843-6810
                                                          jrosin@ohaganmeyer.com
                                                          lvaldez@ohaganmeyer.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March 2025, *Plaintiff's Motion with Incorporated Memorandum of Law in Support of its Motion to Dismiss* was electronically filed.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

                                                          */s/ Jeffrey Rosin*
                                                          Jeffrey M. Rosin

## **CERTIFICATE OF CONSULTATION**

I, Jeffrey M. Rosin, certify that on this 11th day of March 2025, I conferred with counsel for Defendants in advance of this filing and we did not narrow the areas of dispute.

                                             */s/ Jeffrey Rosin*
                                             Jeffrey M. Rosin