**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                    )
ROOTERMAN, LLC,                     )
                                    )
                  Plaintiff,        )
                                    )
v.                                  )
                                    )        Civil Action
KLODIAN BELEGU, QUALITY AIR CARE    )        No. 24-cv-13015-PBS
CORPORATION, RM WATER DAMAGE        )
RESTORATION LTD, and 911 SEWER &    )
DRAIN CORPORATION,                  )
                                    )
                  Defendants.       )
_____)
```

**MEMORANDUM AND ORDER**

April 11, 2025

Saris, D.J.

**INTRODUCTION**

Plaintiff Rooterman, LLC ("Rooterman") brings this lawsuit against two former Rooterman franchisees, Defendants Klodian Belegu and Quality Air Care Corporation ("QAC"), and two other companies that Belegu operates, Defendants Water Damage Restoration Ltd ("Water Damage Restoration") and 911 Sewer & Drain Corporation ("911 Sewer"). Rooterman alleges that after its September 2024 termination of the thirteen franchise agreements signed by Belegu, Defendants have infringed Rooterman's trademarks and have violated noncompetition, nonsolicitation, and nondisclosure provisions in the franchise agreements. Rooterman now moves for a preliminary injunction to bar Defendants from

1

continuing to use its marks and to enforce the restrictive covenants in the franchise agreements.

After hearing, the Court **ALLOWS IN PART** and **DENIES IN PART** Rooterman's motion for preliminary injunction (Dkt. 9).

### BACKGROUND

Rooterman offers various plumbing, sewer, and drain cleaning services, including water damage restoration and the installation and repair of water heaters, garbage disposals, toilets, sump pumps, pipes, and sewer lines. The company operates via a franchise model and owns registered trademarks relating to the term "Rooterman" that it licenses to franchisees.

Between September 2019 and January 2021, Belegu entered into thirteen materially identical agreements with A Corp., the former owner of the Rooterman brand, to establish Rooterman franchises. The agreements authorized each franchise to operate in specific zip codes in New Jersey, New York, or Pennsylvania. Belegu signed these agreements on behalf of himself or one of two companies he owned, QAC and Water Damage Solution of Bergen LLC. The agreements mandate that, within thirty days of termination or expiration, the franchisee 1) "[c]ease to hold himself or herself out as [a Rooterman] System franchise"; 2) "cease the use of the [Rooterman] Trademarks, logos, [and] designs"; 3) "contact the internet service provider or website, which provide[s] internet advertisement services, and request the change or deletion of the

[Rooterman] Trademarks, logos, and designs from the internet advertisement, listings, or domains and . . . work to ensure that the change or deletion is completed"; and 4) "[r]eturn to [Rooterman] all manuals and printed materials belonging to [Rooterman] or bearing the [Rooterman] Trademarks." Dkt. 7-3 § 16(B)-(C).

The franchise agreements also contain the following restrictive covenants:

- **Noncompetition Provision.** "FRANCHISEE agrees that from the date hereof until 3 years following the termination of the Franchise for whatever reason and expiration, neither FRANCHISEE nor any of . . . its officers, directors, other key personnel, employees, or stockholders, if applicable, shall directly or indirectly engage in, hold any interest in, or be involved in any way with any of the services comprising the [Rooterman] System. Such obligation shall apply within the Territory [of the franchise], within 100 miles of the Territory or within 100 miles of any territory covered by another FRANCHISEE of [Rooterman] or operated by [Rooterman's] affiliates."

- **Employee Nonsolicitation Provision.** "FRANCHISEE further agrees that from the date hereof until 3 years following the termination of the Franchise for whatever reason and expiration, FRANCHISEE and the persons covered by [the noncompetition provision] shall not attempt to solicit for employment any person who is, at the time of such solicitation, employed by [Rooterman] or any other franchise of [Rooterman], nor induce any such person to leave his or her employment."

- **Nondisclosure Provision.** "FRANCHISEE agrees that at no time during or after the term of this Agreement or early termination for whatever reason will he or she disclose . . . or duplicate or in any way make available the contents of the [Rooterman] Operations Manual, this Agreement, any other documents, videotapes, materials, or any trade secrets, formulas or other aspects of the

[Rooterman] System to any person, corporation or other entity other than FRANCHISEE attorneys, accountants or similar parties. . . . All of the foregoing shall be returned to [Rooterman] immediately upon termination or expiration of this Agreement. The prohibition of this section applies equally to all stockholders, directors, officers, and employees of FRANCHISEE."

Id. § 18.

On September 16, 2024, Rooterman notified Belegu that it was immediately terminating his thirteen franchise agreements for failure to pay royalties and other fees. Belegu now operates two businesses, Water Damage Restoration and 911 Sewer. 911 Sewer's website advertises "water damage restoration and emergency response services in New Jersey and New York," Dkt. 7-6 at 3 (emphasis omitted), as well as "24/7 Emergency Plumbing Services," "Drain Cleaning," "Water Heater Repair/Installation," "Sewer Line Repair/Replacement," "Pipe Leaks," "Toilet Repair/Installation," "Garbage Disposal Repair/Installation," "Sump Pump Repair/Installation," and "Water Leak Detection," Dkt. 7-7 at 8. The parties do not expressly explain what services Water Damage Restoration provides but, given its name, the Court assumes the company offers water damage restoration services.

Belegu did not immediately disaffiliate his businesses from the Rooterman brand when Rooterman terminated the franchise agreements. For example, he maintained the website "www.rootermanplumberservices.com," which displayed a Rooterman logo and listed services offered by "Rooter Man of NJ." Dkt. 7-1.

4

Pages and listings in the names of Belegu's Rooterman franchises also remained on certain third-party websites, including X and Yelp.

In December 2024, Rooterman sued Defendants for trademark infringement under 15 U.S.C. §§ 1114 and 1125 and breach of the franchise agreements. Rooterman promptly moved for a preliminary injunction barring Defendants from unauthorized use of the Rooterman marks and from violating the restrictive covenants in the franchise agreements.[1]

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." Me. Forest Prods. Council v. Cormier, 51 F.4th 1, 5 (1st Cir. 2022) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)). A party seeking a preliminary injunction "must show that the balance of four factors tips in [its] favor: a 'likelihood of success on the merits; whether and to what extent the movant will suffer irreparable harm in the absence of preliminary injunctive relief; the balance of relative hardships . . . ; and the effect, if any, that either a

---

[1] The franchise agreements contain an arbitration clause, but that clause exempts "claims related to [Rooterman's] trademarks [and] service marks" and any "request for . . . preliminary injunctions . . . when deemed necessary . . . to preserve the status quo or prevent irreparable injury pending resolution by arbitration of the actual dispute between the parties." Dkt. 7-3 § 19.7(H).

preliminary injunction or the absence of one will have on the public interest." Id. (second alteration in original) (quoting Ryan v. U.S. Immigr. & Customs Enf't, 974 F.3d 9, 18 (1st Cir. 2020)). "The first two factors" -- likelihood of success on the merits and irreparable harm -- "are the most important" in the preliminary injunction calculus. Together Emps. v. Mass Gen. Brigham Inc., 32 F.4th 82, 85 (1st Cir. 2022).

**DISCUSSION**

**I.    Trademark Infringement**

Rooterman seeks a preliminary injunction barring Defendants from unauthorized use of its trademarks. The parties hotly dispute whether Rooterman is likely to succeed on either its trademark infringement claims or its claims for breach of the terms of the franchise agreements relating to use of Rooterman's marks. The Court need not wade into this dispute because Rooterman has failed to demonstrate irreparable harm. See Together Emps. v. Mass Gen. Brigham Inc., 19 F.4th 1, 7 (1st Cir. 2021) (explaining that courts "require a showing of irreparable harm before granting a preliminary injunction").

In a trademark case, injuries that may be irreparable include harm to reputation and goodwill and loss of control over the mark. See 7-Eleven, Inc. v. Grewal, 60 F. Supp. 3d 272, 280 (D. Mass. 2014); Dunkin' Donuts Franchised Rests. LLC v. Wometco Donas Inc., 53 F. Supp. 3d 221, 230-31 (D. Mass. 2014). But an injunction is

"rarely warranted where no threat of future harm exists." Capability Grp., Inc. v. Am. Express Travel Related Servs. Co., 658 F.3d 75, 82 (1st Cir. 2011). As a corollary, courts routinely deny preliminary injunctions in trademark and false advertising cases when the defendant has ceased use of the disputed mark or representation. See, e.g., Overjet, Inc. v. VideaHealth, Inc., No. 24-cv-10446, 2024 WL 3480212, at *14 (D. Mass. July 19, 2024); Riverdale Mills Corp. v. Cavatorta N. Am., Inc., 146 F. Supp. 3d 356, 363 (D. Mass. 2015); RE/MAX of New Eng., Inc. v. Prestige Real Est., Inc., No. 14-cv-12121, 2014 WL 3058295, at *2 (D. Mass. July 7, 2014).

Both at the preliminary injunction hearing and in a subsequent declaration, Defendants stated that they would discontinue use of Rooterman's marks. See Dkt. 26-1 ¶¶ 3, 9; Dkt. 31 at 8-9. Belegu dropped "RM" from the name of one of his companies. See Dkt. 18-4 at 2. Defendants made efforts to change their internet advertising and listings to eliminate Rooterman's marks, including by writing letters to third-party websites asking them to take down references to Rooterman. See Dkt. 26-1 ¶ 8; Dkt. 37-2 at 4-15. Defendants stopped using the "www.rootermanplumberservices.com" website and Rooterman's marketing materials. See Dkt. 26-1 ¶¶ 4-6. And when Rooterman informed Belegu that another of his websites with its marks was still operational, he disabled the site. See Dkt. 28 at 1; Dkt. 28-1 ¶¶ 4-9.

Given Defendants' intention and efforts to disaffiliate from the Rooterman brand, the Court denies Rooterman's request for a preliminary injunction barring Defendants from using its marks. While Defendants could have been more diligent in stopping use of Rooterman's marks, Rooterman has not shown that judicial intervention is necessary to prevent future harm. See Capability Grp., Inc., 658 F.3d at 82.

## II.    **Return of Rooterman Materials and Telephone Numbers**

Rooterman next complains that Belegu and QAC failed to return operating manuals and other franchise materials following termination of the franchise agreements. The agreements do require Belegu and QAC to return certain franchise materials to Rooterman "immediately upon termination." Dkt. 7-3 § 18.2. After the preliminary injunction hearing, however, Belegu delivered various materials to Rooterman. See Dkt. 24 ¶ 2; Dkt. 26-1 ¶ 7. The only specific items that Rooterman asserts Belegu and QAC have still failed to return are telephone numbers they used to operate the franchises. See id. Rooterman has not provided adequate information about these telephone numbers for the Court to determine whether Belegu and QAC have a contractual duty to transfer them to Rooterman and whether Rooterman would suffer irreparable harm if they do not do so. The Court thus denies Rooterman's request for a preliminary injunction ordering Belegu and QAC to return franchise materials.

8

## III.  <u>Restrictive Covenants</u>

Finally, Rooterman seeks a preliminary injunction to enforce both the employee nonsolicitation and the noncompetition provisions in the franchise agreements.

### A.    **Employee Nonsolicitation Provision**

The Court denies Rooterman's request for a preliminary injunction enforcing the employee nonsolicitation provision because Rooterman has not shown a likelihood of success in arguing that Defendants are breaching this provision. See <u>Bulwer v. Mount Auburn Hosp.</u>, 46 N.E.3d 24, 39 (Mass. 2016) (explaining that a breach of contract claim requires the plaintiff to prove, among other things, that "the defendant committed a breach of the contract").[2] The employee nonsolicitation provision bars the franchisee and related persons from "attempt[ing] to solicit for employment any person who is, at the time of such solicitation, employed by [Rooterman] or any other franchise of [Rooterman]" or "induc[ing] any such person to leave his or her employment." Dkt. 7-3 § 18.1. Rooterman has offered no evidence whatsoever that Belegu or the corporate Defendants have engaged in, or intend to engage in, any such conduct.

---

[2] The franchise agreements contain a Massachusetts choice-of-law provision. See Dkt. 7-3 § 19.6. Neither party disputes that Massachusetts law governs the breach of contract claim and the enforceability of the restrictive covenants.

**B.    Noncompetition Provision**

    1.    *Likelihood of Success on the Merits*

Rooterman has demonstrated a likelihood of success in arguing that Defendants are violating the franchise agreements' noncompetition provision. That provision prohibits the franchisee and related persons from "directly or indirectly engag[ing] in" or "be[ing] involved in any way with any of the services comprising the [Rooterman] System." Id. Both companies Belegu is now operating -- Water Damage Restoration and 911 Sewer -- offer services that overlap with those provided by Rooterman franchises. For example, from its name, Water Damage Restoration appears to provide water damage restoration services and, according to its website, 911 Sewer does so too. See Dkt. 7-6 at 3. Water damage restoration is among the offerings provided by at least some Rooterman plumbers. See Dkt. 7 ¶ 22; Dkt. 22-1 ¶ 4. And both Rooterman and 911 Sewer offer the same basic plumbing services, including the installation and repair of water heaters, garbage disposals, toilets, sump pumps, and sewer lines. See Dkt. 7 ¶ 22; Dkt. 7-7 at 8.

    Defendants' primary rejoinder is that this noncompetition provision is unenforceable. Under Massachusetts law, "covenants restraining competition are only enforceable to the extent that they are reasonable." Automile Holdings, LLC v. McGovern, 136 N.E.3d 1207, 1218 (Mass. 2020). "[A] restrictive covenant is only reasonable, and thus enforceable, if it is (1) necessary to protect

a legitimate business interest, (2) reasonably limited in time and space, and (3) consonant with the public interest." Id. The inquiry into a covenant's reasonableness turns on "the facts in each case." Id. (quoting Boulanger v. Dunkin' Donuts Inc., 815 N.E.2d 572, 577 (Mass. 2004)). If a court concludes that a restrictive covenant is "too broad 'in time, in space or in any other respect,' the court will only enforce the agreement 'to the extent that is reasonable and to the extent that it is severable for the purposes of enforcement.'" Id. (quoting All Stainless, Inc. v. Colby, 308 N.E.2d 481, 485 (Mass. 1974)).

Rooterman has adequately shown that the noncompetition provision in the franchise agreements is necessary to protect legitimate business interests. Although "[a] covenant not to compete designed to protect a party from ordinary competition does not protect a legitimate business interest," noncompetition agreements are reasonable when they serve to protect a company's confidential information, trade secrets, or goodwill. Boulanger, 815 N.E.2d at 578. Rooterman provided Belegu and QAC with confidential materials to assist in the operation of the franchises, including an operations manual, marketing playbook, vendor contact list, and phone scripts. See Dkt. 22-1 ¶ 9; cf. RE/MAX of New Eng., Inc., 2014 WL 3058295, at *3 (denying preliminary injunction to enforce a covenant not to compete in a franchise agreement where the franchisee did not possess

confidential information of the franchisor). Belegu and QAC acknowledged in the franchise agreements that the materials provided by Rooterman were confidential. See Dkt. 7-3 § 18.2. Even following the return of these materials, Rooterman has a legitimate interest in enforcing the noncompetition provision to protect the confidential information Belegu and QAC might have retained from use of the documents. See SpeeDee Worldwide, LLC v. Toppa, 729 F. Supp. 3d 125, 130 (D. Mass. 2024); Get In Shape Franchise, Inc. v. TFL Fishers, LLC, 167 F. Supp. 3d 173, 199 (D. Mass. 2016). The noncompetition provision also serves to protect Rooterman's goodwill in the customer base Belegu and QAC developed using the Rooterman brand. See SpeeDee Worldwide, LLC, 729 F. Supp. 3d at 130.

As for the reasonableness of the covenant's scope, the noncompetition provision as written applies for three years and within both the franchise territories and 100 miles of any Rooterman franchise territory. See Dkt. 7-3 § 18.1. This geographic scope is very broad, but Rooterman seeks to enforce the provision only within the zip codes in New Jersey, New York, and Pennsylvania constituting the franchise territories under the thirteen agreements signed by Belegu. See Dkt. 22 at 5. This narrowed geographic scope is reasonable. Cf. Boulanger, 815 N.E.2d at 580-81 (finding covenant not to compete that applied within five miles of any franchise location to be reasonable). That said,

12

the Court deems three years to be an unreasonably long duration for a noncompetition obligation in this context. Courts applying Massachusetts law have enforced noncompetition provisions in franchise agreements with a duration of two years. See id. at 579; SpeeDee Worldwide, LLC, 729 F. Supp. 3d at 130; Get In Shape Franchise, Inc., 167 F. Supp. 3d at 200. The Court will therefore reform the noncompetition provision in this case to apply for a two-year period from termination of the franchise agreements. See Automile Holdings, LLC, 136 N.E.3d at 1218.[3]

Enforcement of the noncompetition provision to its reasonable extent is also consonant with the public interest. The public has an interest in the enforcement of reasonable contracts, including restrictive covenants. See Thermal Eng'g Int'l (USA) Inc. v. Lanaville, 646 F. Supp. 3d 202, 207 (D. Mass. 2022); Get In Shape Franchise, Inc., 167 F. Supp. 3d at 200, 203. "While the enforcement of any covenant not to compete temporarily restricts the freedom of [the party bound by the covenant], 'that alone is insufficient to abrogate a contract or render such covenants

---

[3] The Massachusetts Noncompetition Agreement Act ("MNAA") generally limits covenants not to compete in employment agreements to "12 months from the date of cessation of employment." Mass. Gen. Laws ch. 149, § 24L(b)(iv). Neither party argues that the MNAA limits the temporal scope of the noncompetition obligation here, and it appears that the statute does not apply in this case. See id. § 24L(a) (excluding "noncompetition agreements outside of an employment relationship"); Automile Holdings, LLC, 136 N.E.3d at 1217 n.15 (explaining that the MNAA "applies only to [certain] employee noncompetition agreements").

unenforceable.'" <u>Get In Shape Franchise, Inc.</u>, 167 F. Supp. 3d at 200 (quoting <u>Bio-Imaging Techs., Inc. v. Marchant</u>, 584 F. Supp. 2d 322, 330 (D. Mass. 2008)). Belegu "knowingly agreed to reasonable restrictions on [his] post-franchise employment options in exchange for the benefits of participating in a franchise system." <u>Id.</u> Enforcing that bargain is in the public interest.

Defendants' remaining argument on the merits is that Rooterman itself materially breached the franchise agreements, thereby excusing Belegu and QAC from performance under the contracts. <u>See</u> <u>Teragram Corp. v. Marketwatch.com, Inc.</u>, 444 F.3d 1, 11 (1st Cir. 2006) ("[A] material breach by one party excuses the other party from further performance under the contract . . . ." (first alteration in original) (quoting <u>Lease-It, Inc. v. Mass. Port Auth.</u>, 600 N.E.2d 599, 602 (Mass. App. Ct. 1992))). On this record, the Court is unpersuaded that Rooterman committed a material breach. For example, Defendants contend that Rooterman did not provide certain training and operating assistance, but the agreements give Rooterman broad discretion to determine whether and to what extent to provide such training and assistance. <u>See, e.g.</u>, Dkt. 7-3 §§ 9.1(C) (allowing Rooterman "in its sole discretion" to waive a franchisee's participation in its initial training program), 9.3(D) (allowing Rooterman to require a franchisee to attend training seminars that it "may . . . , at its sole discretion, conduct"). Defendants' vague assertion that

Rooterman failed to protect its marks does not show that Rooterman violated the franchise agreements by effectively granting others licenses to operate in Belegu's and QAC's exclusive franchise territories. See Dkt. 7-3 § 3.1(E); Dkt. 18-1 ¶¶ 51-52. Lastly, Rooterman's restriction on the number of local marketing websites Belegu and QAC operated appears consistent with its control over such websites under the franchise agreements, see Dkt. 7-3 § 7.1(B), and insofar as Rooterman inadvertently eliminated all local websites for a few months, the Court is not convinced that any breach of the franchise agreement was material, see Dkt. 18-8 at 2; Dkt. 18-9 at 2; see also G4S Tech. LLC v. Mass. Tech. Park Corp., 99 N.E.3d 728, 739 (Mass. 2018) ("[A] material breach of a contract occurs when the breach concerns an 'essential and inducing feature of the contract.'" (quoting EventMonitor, Inc. v. Leness, 44 N.E.3d 848, 853 (Mass. 2016))). Defendants' allegations of material breach do not undermine Rooterman's likelihood of success on the merits of its claim that Defendants are breaching the noncompetition provision.

> 2. *Equitable Factors and Scope of Injunction*

The equitable factors further support issuance of a preliminary injunction enforcing the noncompetition provision in the franchise agreements. Defendants' ongoing operations in the same territories where Belegu and QAC ran Rooterman franchises poses a risk to Rooterman's goodwill, see SpeeDee Worldwide, LLC,

729 F. Supp. 3d at 131; Get In Shape Franchise, Inc., 167 F. Supp. 3d at 203, which is an injury courts often treat as irreparable. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 13-14 (1st Cir. 2000). Moreover, in the franchise agreements, Belegu expressly assented to Rooterman seeking injunctive relief to enforce the noncompetition provision. See Dkt. 7-3 § 18.1. Courts give some weight to such terms when assessing irreparable harm. See Wash. Tr. Advisors, Inc. v. Arnold, 646 F. Supp. 3d 210, 220-21 (D. Mass. 2022). Rooterman has demonstrated that it is likely to suffer irreparable harm absent a preliminary injunction.

The balance of hardships and the public interest tip in Rooterman's favor as well. As discussed above, there is a public interest in enforcing reasonable restrictive covenants. It is true, of course, that Belegu and the entities he operates may suffer hardship from enforcement of the noncompetition provision. But "'this harm is a predicable consequence' of [Belegu's] breach." Get In Shape Franchise, Inc., 167 F. Supp. 3d at 203 (quoting Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc., 834 F. Supp. 683, 693 (D.N.J. 1993)). Additionally, while Massachusetts courts may decline to enforce a reasonable restrictive covenant against an employee who is inequitably discharged, see Econ. Grocery Stores Corp. v. McMenamy, 195 N.E. 747, 748-49 (Mass. 1935); Kroeger v. Stop & Shop Cos., 432 N.E.2d 566, 572 (Mass. App. Ct. 1982), Defendants have not shown that Rooterman was not justified in

16

terminating the franchise agreements for failure to pay royalties and other fees. Nor is the Court persuaded by Defendants' argument that enforcing the noncompetition provision is against the public interest due to a shortage of plumbers. Defendants have not offered evidence that allowing Belegu to operate his plumbing and water damage restoration businesses would have a material effect on the availability of plumbing services.

Defendants contend that if the Court does issue a preliminary injunction enforcing the noncompetition provision, the injunction cannot apply to Water Damage Restoration and 911 Sewer because they are not parties to any franchise agreement. Under Massachusetts law, "a stranger to a noncompetition agreement who is aware of the agreement may be enjoined from violating the agreement" when doing so is "reasonable." Alexander & Alexander, Inc. v. Danahy, 488 N.E.2d 22, 30 (Mass. App. Ct. 1986). For instance, courts extend injunctions to "business entities created for the purpose of competing" in violation of a restrictive covenant. Id. Belegu serves as president of Water Damage Restoration and also operates 911 Sewer. See Dkt. 18 at 14; Dkt. 18-4 at 2. He organized both entities while he was operating his Rooterman franchises. See Dkt. 18-1 ¶ 48; Dkt. 18-4 at 2. Enjoining Water Damage Restoration and 911 Sewer from violating the noncompetition provision is reasonable under these circumstances. The "injunction does no more than to prevent [Water Damage

Restoration and 911 Sewer]" -- and, by extension, Belegu -- "from obtaining benefits from [Belegu's] violation of the noncompetition covenant[]." Alexander & Alexander, Inc., 488 N.E.2d at 31.

## IV.  Security

Finally, Federal Rule of Civil Procedure 65(c) directs that a district "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." This bond both ensures that the enjoined party will be adequately compensated if the injunction is later determined to be improper and notifies the moving party of the maximum extent of its liability to the enjoined party for a wrongful injunction. See Axia NetMedia Corp. v. Mass. Tech. Park Corp., 889 F.3d 1, 11 (1st Cir. 2018).

Defendants seek a bond equal to at least one year of their income, which they estimate at $3,000,000. See Dkt. 18-1 ¶ 55. Defendants have failed to support this request with any documentation. That amount is excessive for a bond in this case, particularly since the Court has narrowed the temporal and geographic scope of the noncompetition restriction. The Court deems a bond of $300,000 to be proper to cover costs. The Court has no basis for determining damages in the event Defendants are wrongfully enjoined.

**ORDER**

For the foregoing reasons, the Court **DENIES IN PART** and **ALLOWS IN PART** Rooterman's motion for preliminary injunction (Dkt. 9). The motion is denied as to the requests for a preliminary injunction barring Defendants from using Rooterman's marks, requiring Defendants to return franchise materials and telephone numbers, and enforcing the employee nonsolicitation provision in the franchise agreements. The motion is allowed as to the request for a preliminary injunction enforcing the noncompetition provision in the franchise agreements.

The Court orders that Defendants shall not directly or indirectly engage in, hold any interest in, or be involved in any way with any of the services comprising the Rooterman system for two years following termination of the franchise agreements (i.e., through September 16, 2026) within the zip codes constituting the franchise territories under the thirteen agreements signed by Belegu on behalf of himself, QAC, or Water Damage Solution of Bergen LLC.

Rooterman shall post a security bond in the amount of $300,000 as soon as reasonably practicable and no later than fourteen days from entry of this order.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge