UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rooterman, LLC,<br><br>             Plaintiff,<br><br>   v.<br><br>Klodian Belegu, Quality Air Care Corporation, Water Damage Restoration, Ltd f/k/a RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation.<br><br>             Defendants. | Civil Action No. 1:24-cv-13015<br><br>**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR PARTIAL STAY PENDING APPEAL** |

Defendants Klodian Belegu and Water Damage Restoration, Ltd. f/k/a RM Water Damage Restoration Ltd. ("Defendants"), require emergency relief, partially staying this Court's Memorandum and Order of April 11, 2025, pending appeal. (ECF No. 50). Specifically, these Defendants should not be immediately enjoined from performing water damage restoration/remediation services. Water damage restoration/remediation services are not part of the Rooterman System and should not be subject to the non-compete provision. The harm to these Defendants of shutting down immediately is much greater than any harm Plaintiff might suffer.

**1.0    Legal Standard**

To receive a stay of injunctive relief pending appeal, "the moving party need not persuade the court that it is likely to be reversed on appeal." *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998). The factors at issue are: (1) likelihood of success on appeal; (2) irreparable harm absent relief; (3) a lack of substantial injury to others having an interest in the decision under appeal; and (4) service of the public interest. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also State of New Jersey v. Trump*, 131 F.4th 27 (1st Cir. Mar. 11, 2025); *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements Inc.*, 794 F.3d 168, 171 (1st Cir. 2015). The "first

two factors are the most critical[.]" *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st 2010). These factors weigh in favor of a stay.

**2.0    Analysis**

Defendants are likely to succeed in an appeal of the injunction as to the water damage restoration/remediation services.[1] As noted in the Order (ECF No. 50 at 10), the operative non-compete provision "prohibits the franchisee and related persons from 'directly or indirectly engag[ing] in' or 'be[ing] involved in any way with the services comprising the [Rooterman] System." ECF No. 50 at 10 (modifications in original); *see also* ECF No. 7-3 at § 18.1. Section 2.1 of the agreement (ECF No. 7-1) granted Mr. Belegu a "license to conduct the business listed in Section 1.8" which itself was only identified as "Rooter-Man" "Rooter-Man to the Rescue" and "Rotor-Man[.]" Water damage restoration/remediation was not part of the franchise agreement. As noted in the Opposition to the renewed motion for preliminary injunction, the marks at issue were in Class 37 (Drain cleaning services; Plumbing; Plumbing services; Drain and sewer cleaning and rootering services. (ECF No. 18 at 4). Yet, the Court determined that "[w]ater damage restoration is among the offerings provided by at least some Rooterman plumbers." *Id.* In support, the Court cited to two things:

1) ECF No. 7 at ¶ 22 (Amended Complaint), which says:

> Rooterman provides a variety of plumbing, sewer, and drain cleaning services, including emergency plumbing services, drain cleaning, sewer line repair and replacement, water heater repair and installation, toilet repair and installation, garbage disposal repair and installation, sump pump repair and installation, leak detection, waterproofing, water softener repair and installation, and pipe repair and replacement, among other services. See Services, Rooterman, https://www.rooterman.com/services/ (last visited Dec. 16, 2024).

Water damage restoration was not among the services listed.

---

[1] While Defendants contest the enforceability of the provision as a whole and will challenge such on appeal, the focus of this motion is limited to water damage remediation/restoration services.

2) ECF No. 22-1 at ¶ 4 (Declaration of Nathan King), which says, in relevant part:

> Rooterman's marks are not only for plumbing and drains, but a corollary to that business to that is for franchisees to offer and provide restoration services. See www.rooterman.com/services/restoration Franchisees are encouraged to build their businesses by doing that. As such, as the Rooterman website duly shows, restoration services are part of the Rooterman brand offerings as well.

However, Mr. King's declaration is belied by the service mark registrations themselves and does not demonstrate that water damage restoration/remediation is part of the Rooterman System; by his own words, it is a mere "corollary." Moreover, Mr. King was never subject to cross-examination on this declaration submitted as part of the reply, and the Court deemed it credible without neither confrontation nor an evidentiary hearing. "When the parties' competing versions of the pertinent factual events are in sharp dispute, such that the propriety of injunctive relief hinges on determinations of credibility, the inappropriateness of proceeding on affidavits alone attains its maximum." *Campbell Soup Co. v. Giles*, 47 F.3d 467, 470 (1st Cir. 1995)(cleaned up). Had there been a hearing, Mr. King would have been confronted, for example, with the following: Rooterman advertises they have "over 750 franchise locations[.]" *See* **Exhibit 1**, Declaration of Jay M. Wolman ("Wolman Decl.") at ¶¶ 3-4; **Exhibit 2**.[2] Yet, it appears only 13 such locations advertise such services. *See* Wolman Decl. at ¶¶ 5-6; **Exhibit 3**.[3] Nor is there any evidence that such was encompassed in the franchise agreements at the time Mr. Belegu executed them.

It is a "a fundamental principle of contract interpretation: an ambiguous contract ought be construed against the drafting party[.]" *Saturn Mgmt. LLC v. Gem-Atreus Advisors, LLC*, 754 F.

---

[2] Available at https://plumbing-franchise.rooterman.com/
[3] **Exhibit 3** is a Google search for the phrase "water damage restoration" only on the "rooterman.com" website using the "site:" operator. The results show only the following: Eastern Connecticut; Ashburnham, MA; Lawrence, MA; Lynchburg, VA; Central VA and VA Beach; Baton Rouge, LA; Orlando, FL; Chattanooga, TN; The Detroit Lakes, MN; Tampa & Hillsborough County; Nashville, TN; Coastal OR; and Sacramento & Elk Grove, CA.

Supp. 2d 272, 282 (D. Mass. 2010) citing *LFC Lessors, Inc. v. Pacific Sewer Maint. Corp.*, 739 F.2d 4, 7-8 (1st Cir. 1984). Moreover, an ambiguity with "polar differences" in the parties' understanding—here, the parties have polar differences in whether the "services" franchised include water damage remediation/restoration—serves to invalidate the contract. *ITT Corp. v. LTX Corp.* 926 F.2d 1258, 1265 n. 7 (1st Cir. 1991). The earliest iteration of the webpage Mr. King cites to is from September 23, 2020,[4] and there is no evidence that Mr. Belegu understood the "services" he was agreeing to refrain from in the non-compete provision, when he signed it, included water damage restoration/remediation.

One need only consider the case of *Boulanger v. Dunkin' Donuts, Inc.,* 815 N.E.2d 572 (Mass. 2004) cited by the Court. (ECF No. 50 at 11). In *Boulanger*, the issue was enforceability of a non-compete provision precluding operation of a business like Dunkin' Donuts. If some Dunkin' Donuts franchises, hypothetically, offered internet café services for a fee (including terminal usage, ethernet connectivity, and/or printing services) would this mean a franchisee would be barred from running a hotel that has a business center or managing a Staples store? Of course not; that's not what it means to be a Dunkin' Donuts. And water damage restoration/remediation is not what it means to be a Rooterman franchise. Rooterman itself doesn't even bother to list water damage remediation services on its homepage—it only lists "plumbing, sewer, and drain cleaning services." *See* Wolman Decl. at ¶¶ 7-8; **Exhibit 4**.[5] The First Circuit is likely to either reverse this Court's determination of whether the non-compete provision includes water damage restoration/remediation or reverse and remand for an evidentiary hearing for the credibility of the

---

[4] Available at
https://web.archive.org/web/20200923202752/https://www.rooterman.com/services/restoration/
[5] Available at https://www.rooterman.com

- 4 -

Memorandum of Law in Support of Emergency Motion for Partial Stay Pending Appeal
1:24-cv-13015

parties to be assessed. Thus, Defendants are substantially likely to prevail on appeal on this issue and the preliminary injunction should be stayed.

As to the second factor, the Court credited "a risk to Rooterman's goodwill" and Mr. Belegu's assent to seeking injunctive relief as sufficient for irreparable harm. (ECF No. 50 at 15-16). However, that determination was a generalized determination as to enforcing the non-compete as a whole; there was no particularized assessment as to the water damage remediation/restoration business. Here, if Mr. Belegu and Water Damage Restoration, Ltd., are able to continue in the water damage remediation/restoration business, there is no evidence that Rooterman's goodwill is threatened. As discussed above, Rooterman's business is plumbing and sewer/drain; the water damage remediation/restoration business is a mere "corollary" at best and one that there is no evidence that customers actually associate with Rooterman. As Rooterman proffered no evidence of such association, it cannot be said there would be a loss of goodwill. Similarly, as there is a factual dispute over the meaning of the agreement when Mr. Belegu signed it, it cannot be said that he expressly assented to injunctive relief as to the water damage remediation/restoration business. Thus, the second factor favors a stay pending appeal.

In contrast, Mr. Belegu and Water Damage Restoration, Ltd. ("WDR"), will suffer substantial injury if enjoined from engaging in the water damage remediation/restoration business. Mr. Belegu's primary business is operating WDR. *See* **Exhibit 5**, Declaration of Klodian Belegu, at ¶ 3. WDR, prior to the issuance of the Court's injunction, operated two businesses: a) a plumbing and sewer/drain business under the name "911 Sewer & Drain"; and b) a water damage restoration and remediation business. *See id.* at ¶ 4. In the course and scope of business operations, there are two business loans in the amount of around $120,000. *See id.* at ¶ 5. If the water damage restoration/remediation business is enjoined, there will be no income to repay these loans. *See id.*

at ¶ 5. In the course and scope of business operations, there is credit card debt in the amount of around $70,000. *See id.* at ¶ 6. If the water damage restoration/remediation business is enjoined, there will be no income to repay the credit card debt. *See id.* at ¶ 6. Office rent is over $9,000 a month, which is over $171,000 until the expiration of the injunction. *See id.* at ¶ 7. If the water damage restoration/remediation business is enjoined, there will be no income and Defendants will be in breach and evicted. *See id.* at ¶ 7. Warehouse rent is around $5,500 a month, which is $104,500 until the expiration of the injunction. *See id.* at ¶ 8. If the water damage restoration/remediation business is enjoined, there will be no income and Defendants will be in breach and evicted. *See id.* at ¶ 8. In the course and scope of my business operations, there are two work vehicles with auto loans of around $70,000. *See id.* at ¶ 9. If the water damage restoration/remediation business is enjoined, there will be no income to repay these loans and the vehicles will be repossessed. *See id.* at ¶ 9. Although the Court ordered a $300,000 bond to secure the preliminary injunction, it does not appear to have been paid and, more importantly, it is far less than the minimum $535,000 of *expenses* that Defendants must nevertheless pay over the next 19 months of the injunction, and a bond for this amount would not even begin to cover all the lost income and the irreparable harm that will come to WDR as evictions and repossessions devastate its ability to ever recover. WDR will be bankrupt and Mr. Belegu may become destitute. Thus, the significant harm to Defendants demonstrates that the third factor favors a partial stay. And it is only a partial stay that is sought here. Mr. Belegu is not being greedy and asking for a complete stay – only a stay as to the part that seems beyond the penumbra of the franchise agreement. He may still be unable to make ends meet operating in this very narrow slice of his business, but at least he would have a fighting chance if he could continue that one service, and an increased bond

that more accurately reflects what he would lose could at least be there to compensate him if the entire matter resolves in his favor.

The public interest also favors a stay. Defendants' landlords, lenders, employees, and contractors will all be harmed if WDR is shuttered. And although it is not readily susceptible to measurement, the customers who need an experienced remediator will be harmed as well. Water damage and mold renders premises uninhabitable in New Jersey. *See, e.g., Poland v. Sandville*, 2012 N.J. Super. Unpub. LEXIS 1800, *4 (Super. Ct. App. Div. July 26, 2012)(residential); *Dumont Bd. of Educ. v. Borough of Dumont*, 2017 N.J. Super. Unpub. LEXIS 2544, *2 (Super. Ct. App. Div. Oct. 11, 2017)(public facilities). Thus, the fourth factor favors a stay as well.

### 3.0 Conclusion

Whether or not the non-compete provision as a whole is enforceable, Defendants are likely to prevail on appeal of the narrow question of whether the provision precludes provision of water damage restoration/remediation services. The harm occasioned by the preliminary injunction outweighs any harm to Rooterman in its absence, since such services were not even contemplated in the agreement and are rarely offered. A partial stay pending appeal is warranted.

Dated: April 15, 2025.

Respectfully Submitted,

/s/ Jay M. Wolman
Jay M. Wolman, BBO# 666053
jmw@randazza.com
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

*Attorneys for Defendants.*

Memorandum of Law in Support of Emergency Motion for Partial Stay Pending Appeal
1:24-cv-13015

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 25, 2025, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Jay M. Wolman
Jay M. Wolman