IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rooterman, LLC<br><br>     *Plaintiff,*<br><br>  v.<br><br>Klodian Belegu, Quality Air Care<br>Corporation, RM Water Damage<br>Restoration LTD and 911 Sewer & Drain<br>Corporation.<br>     *Defendants.* | Civil Action No. 1:24-cv-13015 |

## **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A PARTIAL STAY OF THE PRELIMINARY INJUNCTION**

Plaintiff Rooterman, LLC ("Rooterman" or "Plaintiff") hereby opposes Defendants Klodian Belegu ("Mr. Belegu"), Quality Air Care Corporation, RM Water Damage Restoration LTD and 911 Sewer & Drain's (collectively, "Defendants") emergency motion for partial stay pending appeal ("Motion"). For the reasons below, the Motion should be denied.

## **INTRODUCTION**

Defendants argue in their Motion that Rooterman has not provided sufficient evidence to provide the Court with a basis to enjoin the Defendants from conducting their alleged "separate" water damage restoration services business. There is nothing separate about that business, and there never has been, as discovery so far has made clear.  As set forth below, not only did this Court properly find that restoration services are part of the services that comprise the Rooterman Franchise System, but also, Defendants themselves provided restoration services throughout their entire time of being a Rooterman franchisee.

1

Indeed, the discovery that this Court has permitted has made crystal clear that defendant Water Damage Restoration was the entity through which Defendants ran their Rooterman franchise business, and defendant Water Damage Restoration conducted restoration services under the "Rooterman" brand.  Now, moreover, defendant Water Damage Restoration is one and the same as 911 Sewer & Drain, and Defendants have fully mixed and mingled them together, by among other things, making "911 Sewer & Drain" the "d/b/a" of Water Damage Restoration, and vice versa.

Thus, all Defendants have been properly enjoined -- and should remain properly enjoined -- from continuing to compete as Ordered by this Court.

## <u>SUMMARY OF THE EVIDENCE</u>

Below, Plaintiff details the evidence it was aware of before discovery began and also the evidence that has been uncovered through discovery thus far (which is still ongoing). All of it demonstrates this Court's ruling is supported by substantial evidence and a proper ruling.

At the start of this case, Rooterman detailed some of its documentary evidence to show that water, fire, and mold damage restoration services are just some of the over thirty plumbing related services that comprise the Rooterman Franchise System. (See <u>Exhibit 1</u> (copy of the "Services" page on the Rooterman website); <u>see also</u> <u>id.</u> p. 5 ("Rooterman local plumbers provide fast and safe restoration service for water, fire, or mold damage"); <u>see also</u> ECF 7, Amended Complaint, ¶ 22 (citing *Services*, <u>https://www.rooterman.com/services/</u>)[1]

---

[1] Defendants argue in their Motion that Mr. King's declaration that water damage restoration services are part of the Rooterman brand is insufficient evidence because his affidavit is not subject to cross-examination. <u>See</u> ECF 54, p. 3. As an initial matter, the documentary evidence cited above is irrefutable. In any event, the expedited discovery ordered by this Court on January 29, 2025 was not one-sided. If Defendants felt a deposition of Mr. King could have been helpful to this factual case, they certainly have had the chance to take it.

In fact, to further address Defendants' continuous effort to take the position that water damage restoration services is somehow, not part of the Rooterman brand offerings, Rooterman has gone back to its website pages dating back to 2016 -- well before the first of the Defendants' thirteen Franchise Agreements was entered into in late 2019 -- to show further clear evidence that damage restoration services are part of the Rooterman Franchise System. (See Exhibit 2.A hereto, https://web.archive.org/web/20160621230706/http://rooterman.com:80/services (dated June 21, 2016) (listing "restoration" as one of the many services offered by the brand). When the "restoration" word is clicked on that link, the following is detailed.

> Rooter-Man provides fast and safe restoration services for water, fire, or mold damage. Water, fire, smoke, and mold damage can be devastating to your home or business. During such a dire time, the best action one can take is to prevent further damage and remedy any dangerous health issues.

> Flood water damage restoration requires urgency and skill, hiring a professional such as Rooter-Man is the best bet you can have. Fire can leave terrible effects in its wake. If the damage from a fire is not dealt with, it can cause permanent damage to your home or business. Where there is excessive water and moisture, you might find molds will need to go because they pose health hazards.

> For Restoration Services Call 866-577-1221

> **Water Damage Restoration Services**

> Our water damage restoration process is not only for the property but the people as well. Water damage can occur in walls, ceilings, basements, and other areas. Rooter-Man understands that restoration requires:
> - Accurate assessment: the extent of the moisture damage is determined.
> - Treatment and recovery: state-of-the-art equipment is utilized for the purpose of drying, dehumidifying, deodorizing and disinfecting.

See Exhibit 2.B hereto, https://web.archive.org/web/20200923202752/https://rooterman.com/services/restoration/ (dated September 23, 2020 (which was just when Mr. Belegu's franchise agreements were being entered into)).

Plaintiff also showed at the start of this case that Mr. Belegu clearly was one of the franchisees who performed restoration services for his customers. (See Exhibit 3, previously filed at ECF 7-1, at p. 18 (Rooter Man of NJ website); Exhibit 4, previously filed at ECF 30-1, at p. 15 (Rooterman Newark website) Both of the Defendants' websites in those Exhibits, www.rootermanplumberservices.com and www.rootermannewark.com, advertised "water damage restoration" services among the other plumbing related services offered. (See Exhibit 3, p. 18; Exhibit 4, p. 15)[2] In other words, if "some" franchisees did not choose to use the Rooterman brand to provide restoration services, Mr. Belegu was not one of those franchisees. He clearly did, and the discovery that has taken place in the last few months has confirmed this.

Even Mr. Belegu's corporation, former franchisee defendant Quality Air Care Corporation (*i.e.,* the entity he used to enter into most of his thirteen Franchise Agreements) was previously a restoration company:

> Q.: And you think this corporation might have been formed as far back or operating as far back as 2012 doing - -
> A.: 2014, I believe it started; it started as Quality Air Care.
> Q.: For HVAC air duct cleaning?
> A.: No, it was restoration.
> Q.: So that's always been a restoration company?
> A.: Yes.

(See Exhibit 6, Excerpts of Deposition of Klodian Belegu ("Belegu Dep."), pp. 34-35)

In fact, Mr. Belegu saw the water restoration business he had previously as synergistic with the Rooterman territories he was buying and he merged them together as a franchisee. They were operated together, and they have been synergistic for him from the beginning of his

---

[2]     Defendants argue that there is "no evidence" that consumers associate restoration services with Rooterman. See ECF 54, p. 5. However, all one has to do is look to the Google Reviews for the Defendants former' franchised business to see customers and the industry clearly associated Rooterman with restoration services. See Exhibit 5, previously filed at ECF 22-1 ("April 2024 my hot water heater failed and Cinch (Home warranty) dispatched Rooter man Plumbing and Restoration to service my home").

franchises <u>under the Rooterman</u> name.[3] Indeed, Mr. Belegu intentionally exploited the very

franchise business he had to build <u>both</u> his plumbing and restoration business simultaneously. By

Mr. Belegu's own admissions, even when he created RM Water Damage Restoration as one of

his many corporations,[4] it has been the very business under which Mr. Belegu ran his Rooterman

franchises.

> Q.: Okay. So when you say RM Water Damage Restoration LTD is the main
> company, what are you referring to?
> A.: Everything got transferred in 2023, multiple companies came together, created
> RM Water Damage Restoration LTD.
> Q.: And are you saying that the Rooterman d/b/a's were the d/b/a's under that
> company?
> A.: The d/b/a was attached to that company.

(<u>See</u> <u>Exhibit 6</u>, Belegu Dep., pp. 185-186; <u>see also</u> <u>Exhibit 7</u>, RM Water Damage Restoration

LTD Cert. of Alternate Name, dated Jan. 18, 2023 (d/b/a "Rooter Man")

The signage shown to Mr. Belegu at his deposition confirms this. That signage, attached

hereto as <u>Exhibit 8</u> (which was Deposition Exhibit 5 at Mr. Belegu's deposition) shows two of

Rooterman's trademarks under the name RM Water Damage Restorations. When asked at his

deposition why this was so, Mr. Belegu testified that this sign was put up in 2023 (and, of course

Mr. Belegu was still a franchise in 2023, and through the termination of his franchise on

September 16, 2024). (<u>See</u> <u>Exhibit 6</u>, Belegu Dep., pp. 104-105)  And, further, all franchise

---

[3]     As to why Mr. Belegu chose to run his plumbing and restoration businesses collaboratively, Mr.
Belegu testified that he was aware of how to perform certain plumbing tasks and technological issues as a
result of his prior years of experience in the restoration services field. <u>See</u> <u>Exhibit 6</u>, Belegu Dep. pp, 27-
28.
[4]     Mr. Belegu, and/or individuals closely related to him, incorporated and/or formed the following list
entities in New Jersey that Plaintiff is aware of thus far (however, a subpoena has gone out to Mr. Belegu's
corporate counsel to obtain a full set of records): Quality Air Care Corporation, QAC Restoration LLC,
Water Damage Solutions of Bergen LLC, Water Damage Solutions Inc., Rooter Man of NJ LLC, Rooter-
Man of Central Jersey LLC, Rooter-Man of North Jersey LLC, Sewer Man of NJ LLC, Water Damage
Solutions of NJ LLC, RM Water Damage Restoration LTD, RM Roofing & Construction Corp., and 911
Sewer & Drain. Of these twelve entities, ten were created after the Defendants' entered their first Franchise
Agreement in September 2019.  Plaintiff intends to explore the relationship, if any, of these entities to Mr.
Belegu's (or his past or present business associates') entities that are defendants in this matter.

advertising fees were being paid through that company. (Id. at 102-103) Simply put, Mr. Belegu testified clearly at his deposition (as highlighted above), and the signage at his very office building confirms, that defendant RM Water Damage Restoration is the overarching company under which Defendants operated their Rooterman franchises. (See Exhibit 6, Belegu Dep. Excerpt, pp. 185-86)[5]

As Mr. Belegu has known for years, his plumbing and restoration businesses are related, synergistic, and build off of one another to generate customers and revenue under the "Rooterman" brand, which was part of the reason he became a franchisee. (See Exhibit 6, Belegu Dep., p. 50) Even Mr. Belegu's wife (who did bookkeeping and bank account management for his businesses) testified that while Mr. Belegu and his entities were franchisees, Rooterman customers would receive invoices for both services and both services would be itemized on their invoices to those customers and deposited into one Rooterman bank account at TD Bank.[6]

---

[5]     Mr. Belegu went on to testify:

A.: Yes. We poured all our money into Rooterman, you know, plumbing, you know, *to get all the restoration jobs*, or, you know, and that wasn't working.
[…]
Q.: And when you say 'poured all of our money into Rooterman,' are you referring to RM Water Damage Restoration money?
A.: RM Water Damage, yes, Restoration money into advertisement for plumbing.

(See Exhibit 6, Belegu Dep., p. 50 (emphasis added)

[6]     Megan Belegu (defendant's wife) testified that for years as franchisees, they had one bank account for all customer payments under Rooterman, regardless of whether it was water restoration or plumbing work.

Q.: It was a Rooterman account at TD Bank?
A.: Correct.
Q.: And was there only one account?
A.: Yes.
[ … ]
Q.: And what was that account used for?
A.: Everything. All incoming money and all outgoing.

For these reasons, this Court has properly found restoration services part of Rooterman's services, and part of the services Defendants performed under the Rooterman name, and properly enjoined Defendants from competing in this area of work.  There should be no doubt that the defendant, Water Damage Restoration, and all restoration services are properly within the scope of the Court's Order.[7]

This Court should not be swayed by Mr. Belegu's current efforts to claim that his water damage restoration business is separate from the supposed "plumbing business," 911 Sewer & Drain. This is a classic shell game.

As evidence of this, on October 7, 2024 Defendants filed with the New Jersey Secretary of State a "d/b/a" for defendant Water Damage Restoration (which was only a few weeks after termination of the Franchise Agreements) to conduct business as "911 Sewer and Drain." (See Exhibit 10, RM Water Damage Restoration LTD Cert. of Alternate Name, dated Oct. 7, 2024) At his recent deposition this month, Travis Hershner, the manager of plumbers for Water Damage Restoration confirmed as much:

> Q.: So you think there's a filing with the State that looks to change the name of RM Water Damage Restoration to 911 Sewer & Drain?
> A.: Yes. But not the wording you used.

---

(See Exhibit 9, Deposition of Megan Belegu, p. 27. In late 2022/early 2023, this changed to multiple accounts, but this change is not material in light of the above.

[7]     Defendants suggest a hearing is necessary before this Court enjoin such a service, but the evidence from discovery detailed herein makes that unnecessary.  Moreover, Defendants have had ample opportunity to present evidence to the court to refute that the Rooterman brand offers restoration services, but they continue to fail to do so, making instead conclusory and unsupportable claims. (See Campbell Soup Co. v. Giles, 47 F.3d 467, 471 (1st Cir. 1995) (quoting SEC v. G. Weeks Securities, Inc., 678 F.2d 649, 451 (6th Cir.) (finding numerous submissions provided court with "adequate documentary evidence upon which to base an informed, albeit preliminary conclusion") Defendants mistake the Court's ruling in Campbell to argue that they were entitled to an evidentiary hearing prior to deciding the preliminary injunction. (See ECF 54, at p.3, citing Campbell Soup Co., 47 F.3d at 470; but see Campbell Soup Co., 47 F.3d at 470 ("an evidentiary hearing is not an indispensable requirement when a court allows or refuses a preliminary injunction") Notably, the Defendants do not dispute that they offered restoration services as part of their Rooterman franchised business, nor that restoration services are offered by other Rooterman plumbers. As such, there is ample evidence to consider restoration is a service comprising the Rooterman system, particularly the Rooterman system that Mr. Belegu ran as a franchisee.

Q.: Okay. What wording would you use?
A.: It's Water Damage Restoration 911 - - or d/b/a 911 Sewer & Drain.
Q.: So you think there's a d/b/a filing with the State of New Jersey?
A.: Yes.

(See Exhibit 11, ECF 45-2, Excerpts of Deposition of Travis Hershner, pp. 30)

In like manner, Defendants filed a d/b/a for 911 Sewer & Drain on September 9, 2024, to conduct business under "911 Water Damage." (See Exhibit 12, 911 Sewer & Drain Cert. of Alternate Name, dated Sept. 9, 2024) Critically, Mr. Belegu admitted at his deposition that Defendants 911 Sewer & Drain and Water Damage Restoration are being operated together as one company.

Q.: Is RM Water Damage Restoration still doing business?
A.: Water Damage Restoration LTD is doing business, yes.
Q.: And is 911 Sewer & Drain doing business?
A.: 911 Sewer & Drain, plumbing, Travis, are working under Water Damage Restoration LTD right now.
Q.: And what do you mean 'working under'.
A.: The same office, the same company.

(See Exhibit 6, Belegu Dep., p. 147)

Clearly, Defendants are mixing and matching the names of their corporations for, at best, marketing cross-over because the businesses are fully synergistic, but at worst, to develop a scenario under which they can disguise competition that this Court's Order says is restricted. This Court's Order is clear, and it should remain very clear, so that no such possibility exists. Given Mr. Belegu has so many corporations (see Note 4 *supra*), and given he is now on his 5th Declaration filed with this Court which makes conclusory or vague claims that generally ignore and contradict other evidence,[8] this Court should not reconsider its injunction (and, in addition,

---

[8]    See ECF 45, 46 (Plaintiff's Reply Memorandum with Exhibits in Further Support of Plaintiff's Motion for Sanctions).

this Court should reject based on the evidence any claim by Mr. Belegu that he has "separate" lines of business).

Even Defendants' claims that the injunction will pose a hardship financially should not change this Court's mind. As courts recognize, the economic harm Defendants claim they will suffer is "the consequence of enforcing any covenant not to compete and that fact alone does not make such covenants unenforceable." (See Bio-Imaging Techs., Inc. v. Marchant, 584 F. Supp. 2d 322, 330 (D. Mass. 2008) (quoting Marine Contractors, Co. v. Hurley, 365 Mass. 280, 289 (1974) (internal citations omitted)

A relevant sequence to recall is this: the Defendants, through Mr. Belegu, joined Rooterman, operated as Rooterman for years, grew their markets, did all work (including restoration work) under the Rooterman brand and received substantial benefits from it. A benefit Plaintiff received from that bargain would be that Defendants would not compete not just during the term of their franchises but for 3 years thereafter, and not just in the zip codes they operated but 100 miles beyond it. Plaintiff asked for a more precise injunction – just where Defendants operated – and this Court not only gave Defendants the benefit of that, but this Court limited the injunction to 2 years.

Thus, since terminating September 16, 2024, Defendants have enjoyed – up to April 11, 2024 – free reign to compete and solicit. That is nearly 7 months of competing that was not supposed to happen. Now, and properly so, that time is "up" by way of this Court's Order, and it should remain "up" for the remaining 17 months this Court Ordered, which is substantially less than this Court could have Ordered under the contracts.

## CONCLUSION

For all of the reasons set forth above, the Defendants' Motion should be denied in its entirety.

Respectfully submitted,

ROOTERMAN, LLC

By its Counsel

Dated: April 21, 2025

/s/ Jeffrey Rosin
Jeffrey M. Rosin, BBO# 629216
Lisbeth Valdez, BBO# 715826
O'HAGAN MEYER, PLLC
140 Kendrick Street, Bldg. C West
Needham, MA 02494
Telephone: (617) 843-6800
Fax: (617) 843-6810
jrosin@ohaganmeyer.com
lvaldez@ohaganmeyer.com

#6300446v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of April 2025, *Plaintiff's Opposition to the Motion for a Partial Stay of the Preliminary Injunction* was electronically filed.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Jeffrey Rosin*
Jeffrey M. Rosin
