IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Rooterman, LLC | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:24-cv-13015 |
| | ) | |
| Klodian Belegu, Quality Air Care | ) | |
| Corporation, RM Water Damage | ) | |
| Restoration LTD, 911 Sewer & Drain | ) | |
| Corporation, | ) | |
| | ) | |
| *Defendants,* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Sandro Paterno, Paterno | ) | |
| & Associates and 911 Plumbing & | ) | |
| Restoration Inc. | ) | |
| | ) | |
| *Reach and Apply Defendants.* | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff Rooterman, LLC, by its attorneys, O'Hagan Meyer, PLLC, for its Complaint

against Defendants, Klodian Belegu, Quality Air Care Corporation, RM Water Damage

Restoration LTD, and 911 Sewer & Drain Corporation ("Defendants") and reach and apply

defendants, Sandro Paterno, Paterno & Associates, and 911 Plumbing & Restoration Inc. ("Reach

and Apply Defendants") hereby alleges as follows:

## INTRODUCTION

1.      This is a case for trademark infringement, theft of confidential information and

trade secrets, failure to pay royalties, violation of post-franchise restrictive covenants, and

fraudulent transfer.

2.      Defendants have set up competing corporations, failed to pay substantial royalties, and owe past and future royalties through the end of the terms of their 13 franchise agreements with plaintiff Rooterman, LLC.

3.      Defendants have used, without permission or approval, the "Rooterman" trademarks by, *inter alia,* their use of the websites www.rootermanplumberservices.com and www.rootermannewark.com for months post-termination. Plaintiff, the owner of the Rooterman brand since 2022, is the lawful holder of such trademarks as demonstrated herewith. See Exhibit A hereto. Plaintiff's actual Rooterman website is www.rooterman.com.

4.      Defendant Belegu was warned on September 16, 2024 and on November 13, 2024, to cease and desist, but did not do so. In fact, defendant Belegu has been, individually, and through the corporate defendants, brazenly and unfairly competing not just through his use and misuse of Plaintiff's trademarks, but through the violation of his restrictive covenants, which all survived the termination of his franchise agreements. Plaintiff sought and obtained injunctive relief recently as a result.

5.      However, following this Court's Order providing preliminary injunctive relief, Defendants fraudulently transferred all of their assets in their businesses to Reach and Apply Defendants Paterno and Paterno & Associates, through the entity 911 Plumbing and Restoration Inc.

6.      Plaintiff seeks monetary relief as a result of Defendants' failure to pay royalties, trademark infringement, violation of post-franchise restrictive covenants, violation of this Court's Order and fraudulent transfer, along with their civil conspiracy to do the same, as well as Reach and Apply relief.

**PARTIES**

7.      Plaintiff is the successor in interest to A. Corp.'s (a Massachusetts Corporation in Billerica) ownership of the "Rooterman" intellectual property rights, and plaintiff, Rooterman, LLC ("Rooterman") now owns all of those rights.

8.      Plaintiff acquired the Rooterman assets of A. Corp. from Donald MacDonald by way of an asset purchase agreement dated January 20, 2022 ("APA").

9.      Defendant Klodian Belegu ("Belegu") is a former Rooterman franchise owner, and upon information and belief, he resides in Toms River, New Jersey. He is the sole owner of defendant, Quality Air Care Corporation, a New Jersey Corporation, through which he also purchased franchises, but which purchases were guaranteed by him individually.

10.     Belegu is the majority owner of the defendant corporation, RM Water Damage Restoration LTD which was established and registered with the New Jersey Secretary of State in December 2022, and which has directly competed, and continues to compete with Rooterman. On January 18, 2023, RM Water Damage Restoration filed a certificate to conduct business as "Rooter Man." On October 7, 2024, shortly after termination, RM Water Damage Restoration filed a certificate to conduct business as "911 Sewer and Drain."

11.     Belegu is also the sole owner of the entity, 911 Sewer & Drain Corporation, incorporated in New Jersey on February 8, 2024, which has directly competed, and continues to compete with Rooterman. As set forth below, Belegu is using these entities in violation of his contractual and legal obligations and, therefore, 911 Sewer & Drain, and RM Water Damage Restoration are liable as well.

12.    Defendant RM Water Damage Restoration LTD is a New Jersey entity with a principal place of business of 1049 Church Road, Toms River, NJ 08755.

13.    Reach and apply defendant Sandro Paterno ("Paterno"), through his entity Paterno & Associates, a law firm with a principal place of business in New York City, has provided legal services to Belegu for decades, and upon information and belief, he resides in Lakewood, New Jersey. Paterno is the attorney that formed numerous corporations for Belegu, including defendant RM Water Damage Restoration LTD.

14.    Paterno now also claims to be the sole owner of the defendant corporation, 911 Plumbing & Restoration Inc., which was established and registered with the New Jersey Secretary of State on April 15, 2025, merely 4 days after this Court granted a preliminary injunction on April 11, 2025 and Ordered Belegu and his entities to stop competing. 911 Plumbing & Restoration Inc. now even operates under a "d/b/a" of the same name as the defendant entity, "911 Sewer & Drain". That entity was established to effectuate the transfer substantially all of the assets out of the then existing defendant corporations, and with full knowledge of the injunction granted April 11, 2025, and the formation of that entity, and that transfer, by Paterno and Paterno & Associates was intended to circumvent the Court's injunction and serve as a means for Belegu to satisfy debts to his counsel as well as to continue the business of Belegu's company under a related umbrella. Paterno has admitted as such in a declaration filed in this court, and in letters to Plaintiff's counsel.

## JURISDICTION AND VENUE

15.    This Court has federal question jurisdiction arising from the claims asserted herein, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court can exercise supplemental jurisdiction over the state law claims that arise out of the same transactions and occurrences under 28 U.S.C. § 1367.  Moreover, the franchise contracts between the parties call

for the application of Massachusetts law, where A. Corp. was based and multiple franchisor services were performed for Belegu/his entities; such franchise contracts also required court actions (if any) to be brought in a proper Massachusetts court. As such, personal jurisdiction and venue is proper in this district.

16.     This Court can exercise personal jurisdiction over the Reach and Apply Defendants as they had actual knowledge of this Court's April 11, 2025 Order and actively aided and abetted Defendants' in assisting Defendants' attempt to circumvent the Order, which was the fraudulent transfer of the Defendants' assets to them, thereby placing themselves within the personal jurisdiction of this Court's injunction and this Court.

17.     In this regard, Reach and Apply Defendants are acting in concert with Defendants Belegu and the defendant entities RM Water Damage and 911 Sewer & Drain in a civil conspiracy to circumvent the injunction. As such, jurisdiction is proper over them as well pursuant to Rule 65 and cases interpreting such rule.

## FACTS

### Relevant Background of Rooterman LLC:

18.     Rooterman has used its trademarks continuously in United States commerce since August 2, 1991.

19.     Rooterman has hundreds of locations, and its services have attained a substantial amount of sales throughout the United States.

20.     The Rooterman trademarks are distinctive and famous within the meaning of 15 U.S.C. § 1225(c).

21.     Rooterman has substantially invested in its business over the last thirty (30) plus years to expand its services nationwide, solidify relationships with key personnel, build a substantial reputation of goodwill, and to protect access to its confidential information to

franchisees and employees who "need to know." For such franchisees and employees, among other protections, Rooterman requires these individuals to enter into agreements containing restrictive covenants.

22.     The Rooterman Franchise has consistently advertised for plumbing, sewer, drain cleaning and related services in major yellow page directories such as NYNEX, currently known as Verizon yellow pages, which covered areas in New England, including Massachusetts, and beyond.  In terms of related services, water damage restoration services, sewer line repair and replacement, water heater repair and installation, leak detection, waterproofing, water softener repair and installation, and pipe repair and replacement, are among other services that are an integral part of the brand's offerings, and they were promoted as brand offerings in the years before Mr. Belegu purchased his first franchise.

23.     As the result of Rooterman's extensive and exclusive use of the Rooterman trademarks and wide-ranging national marketing efforts, the Rooterman trademarks are widely recognized by the general consuming public of the United States. The consuming public in the United States uses the Rooterman trademarks to identify Rooterman's services and associates the mark exclusively with Rooterman.

24.     The goodwill associated with the brand helps distinguish it from competitors, helps drive business to the brand instead of to competitors, and gives franchisees resources, national recognition, and a competitive edge in their local marketplaces.

### *Facts Relevant to the Franchise Agreements:*

25.     Belegu became a multi-unit franchisee of A. Corp. buying a total of thirteen (13) franchise territories from September 2019 to January 2021:  9 territories in New Jersey, 3 territories in New York and 1 in Pennsylvania.  Certain of these were purchased through his corporation,

which he solely owned, defendant Quality Air Care Corporation, but when Belegu purchased

franchises through such corporation, he personally guaranteed the obligations of the franchise.

26.     Belegu's 13 franchise agreements with Rooterman are summarized as follows:

(i)      A franchise agreement for the "Ocean County" territory in New Jersey, signed by Belegu and his corporation, Quality Air Care Corporation, September 5, 2019 ("NJ-1").

(ii)     A franchise agreement for various zip codes in the counties of Essex, Monmouth, and various other counties in New Jersey, signed by Belegu in June 2020 ("NJ-2").

(iii)    A franchise agreement for the "Morris County" and "Passaic County" territories in New Jersey, signed by Belegu in August 2020 ("NJ-3").

(iv)    A franchise agreement for additional zip codes in Monmouth County and Ocean County New Jersey signed by Belegu and his corporation, Quality Air Care Corporation, in January 2021 ("NJ-4").

(v)     A franchise agreement for various zip codes in the "Hudson County" and "Essex County" territories in New Jersey, signed by Belegu and his corporation, Quality Air Care Corporation, November 2019 ("NJ-5").

(vi)    A franchise agreement for "Somerset County" and for various zip codes in "Middlesex County" in New Jersey, signed by Belegu and his corporation, Quality Air Care Corporation, November 2019 ("NJ-6").

(vii)   A franchise agreement for various zip codes in the "Hudson County" and "Essex County" territories in New Jersey, signed by Belegu and his corporation, Quality Air Care Corporation, December 30, 2020 ("NJ-7").

(viii)  A franchise agreement for additional zip codes in the "Middlesex County" territory in New Jersey, signed by Belegu on December 30, 2020 ("NJ-8")

(ix)    A franchise agreement for the "Bergen County" territory in New Jersey, signed by Belegu and his corporation, Water Damage Solution of Bergen LLC in February 2020 ("NJ-9")

(x)     A franchise agreement for various zip codes in the "Rockland County" territory in New York, signed by Belegu in December 2020 ("NY-1")

(xi)    A franchise agreement for the "West Chester County" territory in New York, signed by Belegu and his corporation, Quality Air Care Corporation, September 2019 ("NY-2").

(xii)   A franchise agreement for various zip codes in the "Richmond County" territory in New York, signed by Belegu in June 2020 ("NY-3")

(xiii)  A franchise agreement for various zip codes in the "Bucks County" and "Montgomery County" territories in Pennsylvania, signed by Belegu in June 2020 ("PA-1")

All of Belegu's (or his solely owned entity, Quality Air Care Corporation's) franchise agreements

contained identical relevant terms addressed herein, and one sample copy is attached hereto as

<u>Exhibit B</u>.

27.     As part of these Franchise Agreements, Belegu as an individual signed a "Guaranty of Performance" and agreed to personally guarantee the performance of the Franchise Agreement.

28.     As a Rooterman Franchisee, Belegu (and/or his applicable entity) was aware of certain trade secrets and confidential information necessary to conduct the Franchises in a uniform matter and had an obligation to protect this information from disclosure and misuse.

29.     Pursuant to the execution of the thirteen (13) Franchise Agreements, Belegu obtained the right and undertook the obligation to operate a Rooterman franchise for an initial term of five (5) years.

30.     Pursuant to Sections 1.9 and 5.2 of the Franchise Agreements, Franchisee must pay Franchisor a monthly royalty fee.

31.     Pursuant to Sections 1.10 and 5.2 of the Franchise Agreements, Franchisee must pay Franchisor a monthly marketing fund contribution.

32.     Pursuant to other Sections of the Franchise Agreements, Franchisee must pay Franchisor other fees as well.

33.     Belegu was notified of Defendants failure to promptly submit thousands of dollars in royalties and fees by notice of default/demand for cure ("default notice"), dated August 12, 2024. Defendants were given thirty (30) calendar days to cure their default.

34.     No such payments were subsequently received from Defendants towards the amount owed.

35.     Belegu (and/or his applicable entity) failed to cure their default within the time allotted. By notice dated September 16, 2024, all 13 franchise agreements were terminated as a result of the default, and Plaintiff calculated approximately $60,000 in unpaid royalties by that time.

***Defendants Failed to Comply with Their Pre- and Post-Termination Obligations in the Franchise Agreements and Misused Plaintiff's Name and Trademarks:***

36.     The Rooterman Operations Manual contains valuable trade secrets that allow for uniform standards of service across the nationwide franchises including, without limitation, how to manage customer relationships, how to source and do the work, and methods of expanding work using Rooterman protocols and procedures. <u>See</u> <u>Exhibit B</u>, Section 12.1. Pursuant to Section 12.1 of the Franchise Agreements:

> Franchisee acknowledges that nationwide uniform standards of service are vital to the protection of the A Corp. System and the Trademarks, and are necessary to ensure that the public received the quality of service associated with the A Corp. System and the Trademarks.

37.     The Franchise Agreements expressly acknowledges the confidentiality of the Operations Manual, as well as other trade secrets. The Operations Manual is thereby restricted to use by Franchisees, in connection with their operation of the Franchise.

38.     Pursuant to Section 12.1B of the Franchise Agreements, the Operations Manual is confidential and "Franchisees [?] shall at all times treat as confidential and shall not at any time disclose, copy, duplicate, record or otherwise reproduce in whole or in part, otherwise make available to an unauthorized person or persons, the contents of the Operations Manual."

39.     Pursuant to Section 18.2 of the Franchise Agreements:

> "Franchisee agrees that  at no time during or after the term of this Agreement or early termination for whatever reason will he or she disclose, either orally or in writing or by any other medium, or duplicate or in any way make available the contents of the Operations Manual, this Agreement, any other documents, videotapes, materials, or any trade secrets, formulas or other aspects of the System to any person, corporation or other entity other than Franchisee attorneys, accountants or similar parties. Such persons may have access to such materials only to the extent necessary for the transaction of business by Franchisee."

40.    Upon termination of the Franchise Agreements, franchisors are obligated to promptly return all Rooterman materials, including the Operations Manual. See Exhibit B, Section 12.1B.

41.    Belegu (and/or his applicable entity) failed to return any such materials to Plaintiff upon the termination of the franchisees. Upon information and belief, he used such materials to set up and compete with Plaintiff with his competing Defendant entities, RM Water Damage Restoration and 911 Sewer & Drain, and by way of transfer, to 911 Plumbing & Restoration.

42.    Belegu improperly used and misused the Rooterman trademarks for months post-termination and, through his corporation, and now 911 Plumbing & Restoration, he and the Reach and Apply defendants continue to compete in the same area as his franchised territory, in violation of the exclusivity, non-competition, non-solicitation, and/or confidentiality protections in Belegu's franchise agreements.

43.    Belegu competed with Rooterman prior to and post termination through the following entities, among others: RM Water Damage Restoration LTD, 911 Sewer & Drain, and 911 Plumbing & Restoration.  Exhibit C hereto details flagrant violations and misuse of numerous trademarks identified as owned by Plaintiff in Exhibit A using the websites, www.rootermanplumberservices.com and www.rootermannewark.com. The Defendants' websites included active phone numbers associated with their former Rooterman franchise.

44.    Defendant Belegu, individually and through his companies, continues to use Rooterman trademarks and other intellectual property and while Exhibit C is one substantial such misuse, other misuses include, without limitation:

    a.    https://x.com/rootermannj

    b.    https://maps.app.goo.gl/d8x4Y4eMCPXoSZ46A

     c.   https://www.yelp.com/biz/Rooterman-of-nj-toms-river

     d.   https://www.homeadvisor.com/rated.RooterMan.130537299.html

45.     Following a failed mediation on December 4, 2024, Defendants disabled the www.rootermanplumberservices.com website. This website was used from the date of termination through at least December 4, 2024. However, the website and domain were then used to direct users to another of Defendants' websites, 911sewerdrain.com. See Exhibit D hereto.

46.     Pursuant to Section 7.1B of the Franchise Agreements, "Franchisee is not allowed to independently design, develop, and maintain any other locally optimized website or register any domain name using A Corp's trademarks including without limitation the Rooter Man trademark."

47.     In his Declaration dated January 13, 2025 after this suit was first filed, Belegu stated that Defendants had begun doing everything they needed to do to disassociate from Plaintiff's trademarks and averred: "Nor are Defendants using the www.rootermanplumberservices.com domain for marketing or advertising purposes, and once Google has completed the task of updating my personally-owned website links to the new domain, I will gladly transfer it to Plaintiff." See ECF 18-1, ¶ 37. Defendants did not transfer the domain to Plaintiff.

48.     Belegu testified that the "new domain" that the materials were transferred to is Defendants' website, www.911sewerdrain.com. See ECF 45-1, Deposition of Klodian Belegu, pp. 136-137. In other words, Belegu took the website links and intellectual property from the rootermanplumberservices.com website and transferred it all to the 911 Sewer & Drain website. This was not his property to transfer to some new entity with which he was involved. It was

Plainitff's property having been developed and used on a Rooterman website while Mr. Belegu was a franchisee.

49.    Upon information and belief, Belegu claims that the website and domain www.911sewerdrain.com, despite being used to advertise the Defendants' business, is owned by Belegu's IT vendor, Andrew Madore.  However, Mr. Madore has been working with Belegu for years and was the one transferring the website links from rootermanplumberservices.com to 911sewerdrain.com so that website is, for all intents and purposes, actually and constructively owned and possessed by Mr. Belegu.

50.    On January 29, 2025, this Court directed Mr. Belegu to disassociate from Rooterman and detail the ways he had done so in a Declaration to be filed with the Court within 30 days.  Mr. Belegu failed to comply with the Court's direction and failed to disassociate from Rooterman in all ways. He continued to use Rooterman phone numbers, email addresses, and telephone support for months thereafter.  He also filed a declaration with the Court that was false in multiple ways.

51.    One way is that Defendants used the www.rootermannewark.com website, and did not make efforts to ensure it was disabled, until March 5, 2025, about six months after termination. See ECF 28-1, ¶ 9. For example, a phone number on that website led, among other things, to ongoing business for Belegu post-termination from Plaintiff as a franchisee. Further, other phone numbers still connected Defendants' to "Rooterman of New Jersey" and calling such phone numbers would result in associations with "Rooterman of New Jersey," such as text messages asking customers to fill out a survey or rate Rooterman of New Jersey on Google.

52.    Belegu notably applied to register a trademark for 911 Sewer & Drain on or about April 8, 2022, within a few months of Plaintiff's acquisition of A. Corp's interest in Rooterman.

The 911 Sewer & Drain mark was first used in commerce on or about February 26, 2024, just before Belegu (and/or his applicable entity) began a continued failure to pay applicable royalties and fees under such franchise agreements. Belegu improperly misappropriated and misused Claimant's trademark, confidential information and trade secrets, including but not limited, all of its methods of operations, pricing strategies, marketing strategies and customer lists, to divert business to his independently owed and competing entities.

53.     The www.911sewerdrain.com website contains phone numbers associated with Defendants' former franchise. Moreover, the website for 911 Sewer & Drain, www.911sewerdrain.com, also contains blog posts dating back to August 10, 2023. See Exhibit D, hereto.

54.     As such, it is reasonable to conclude that Belegu (and/or his applicable entity) began diverting customers, misusing and misappropriating confidential information and trade secrets, and competing directly with Rooterman well before the Franchise Agreements were terminated.

55.     Upon the notice of termination dated September 16, 2024, Belegu (and/or his applicable entity) as franchisee was obligated to completely disassociate from the franchise and not use any trademarks of the franchise whatsoever, but he blatantly failed and refused to do that. See Exhibit B Section 16(A)-(B). Belegu (and/or his applicable entity) was also obligated to return all proprietary manuals and materials that belonged to the franchisor as well, but he blatantly failed and refused to do that either. Id. at Section 16(C); see also id. at Section 12.1.B.

56.     Each of Belegu's (or Quality Air Care Corporation's) franchise agreements carried a 3-year non-competition/non-solicitation restriction, and the area applicable was within 100 miles of the territory of the franchise and 100 miles of the territory of any other franchisee. See Exhibit

<u>B</u>, Section 18.1. Each franchise agreement provided protections for the confidential information/trade secrets of the franchise system, as well as the mandate that these materials be returned upon termination. <u>See</u> <u>Exhibit B</u> Section 18.2, 16.C

57.     Pursuant to Section 18.1 of the Franchise Agreements:

"Franchisee agrees that from the date hereof until 3 years following the termination of the Franchise for whatever reason and expiration, neither Franchisee nor any of his family members or its officers, directors, other key personnel, employees or stockholders, if applicable, shall directly or indirectly engage in, hold any interest in, or be involved in any way with any of the services comprising the A Corp. System." Belegu (and/or his applicable entity) agreed that these covenants were reasonable to protect Rooterman's legitimate business interests. The Franchise Agreements state, in relevant part: "Franchisee acknowledges that such prohibits are necessary to protect A Corp.'s trade secrets and to otherwise insure the integrity of the A Corp. System and the rights of A Corp.'s other franchisees."

<u>See</u> <u>Exhibit B</u> Section 18.1.

58.     Belegu (and/or his applicable entity) further acknowledged that non-disclosure of the Rooterman trade secrets were reasonable to protect Rooterman's legitimate business interests. The Franchise Agreements state, in relevant part: "Franchisee acknowledges that disclosure of any aspect of the System or duplication or disclosure of this Agreement, or the Operations Manual could substantially harm A Corp., Franchisee, and other franchisees of A Corp." <u>See</u> <u>Exhibit B</u>, Section 18.2.

59.     Belegu (and/or his applicable entity) have been, at least since termination and likely prior to termination, flagrantly engaged in the identical business they were engaged in as franchisees of Rooterman, with no changes, and pervasive throughout the restricted territory. This is not just a trademark violation; it is a violation of the non-compete/non-solicit/misuse of confidential information and trade secrets inherent in the franchise. These trade secrets include, without limitation, the franchisor's methods of operation, pricing, customers, prospects, marketing

and advertising plans and methods, and other sensitive and proprietary matters that Belegu would only know due to his former franchisee status.

60.    Pursuant to Section 19.7 of the Franchise Agreements, Franchisee is required to reimburse Franchisor for all of its reasonable attorney's fees, court costs, and expenses incurred in connection with Franchisor's action to enforce its rights under the Franchise Agreements.

61.    Rooterman provides a variety of plumbing, sewer, and drain cleaning services, including emergency plumbing services, drain cleaning, sewer line repair and replacement, water heater repair and installation, toilet repair and installation, garbage disposal repair and installation, sump pump repair and installation, leak detection, waterproofing, water softener repair and installation, pipe repair and replacement, and water damage restoration, among other services. See Services, Rooterman, https://www.rooterman.com/services/ (last visited Dec. 16, 2024). Although Belegu has tried to protest that water damage restoration is not part of the Rooterman offerings, Rooterman has advertised water damage restoration services on their website as far back as June 2016, which is well before the Franchise Agreements with Belegu even existed. See ECF 56-2.

62.    Belegu (and/or his applicable entity) have and continue to be directly engaged in plumbing, drain services, and water damage restoration services since the franchise terminations on September 16, 2024, all comprising the Rooterman System. According to its own website, 911 Sewer & Drain provides services such as water damage restoration, emergency plumbing services, drain cleaning, sewer line repair and replacement, water heater repair and installation, toilet repair and installation, garbage disposal repair and installation, sump pump repair and installation, leak detection, and pipe repair and replacement, among other services. See Exhibit D hereto.

63.    According to its own website, 911 Sewer & Drain conducts business throughout the state of New Jersey and in New York. See Exhibit D. This is a clear violation of the non-

compete/non-solicitation restrictive covenants in the Franchise Agreements because these services are rendered within the restricted area.

64.     As a result of Belegu's ongoing breaches and improper misuse of confidential and trade secret information of Claimant, and Claimant's intellectual property, Rooterman is damaged. This includes statutory damages, lost profits, and damages in the amount of the outstanding and expected future royalties and fees for the thirteen (13) Franchise Territories pursuant to Sections 1.9, 1.10, 1.10.1, and 5.2 of the Franchise Agreements.

65.     Belegu (and/or his applicable entities) have been, since termination, flagrantly engaged in the identical business they were engaged in as franchisees of Rooterman, with no changes, and pervasive throughout the restricted territory. This is not just a trademark violation; it is a violation of the non-compete/non-solicit/misuse of confidential information and trade secrets inherent in the franchise. These trade secrets include, without limitation, the franchisor's methods of operation, pricing, customers, prospects, marketing and advertising plans and methods, and other sensitive and proprietary matters that Belegu would only know due to his former franchisee status.

66.     Belegu uses the Rooterman marks and names unlawfully to also direct consumers to his competing businesses. The Facebook and Google pages for 911 Sewer & Drain were created on former Rooterman pages, and still contain numerous references to the Rooterman marks and names. It is reasonable to conclude that a consumer would believe that there is a connection between 911 Sewer & Drain and Rooterman.

***Defendants Failed to Pay Substantial Royalties:***

67.     Pursuant to Section 15.2 of the Franchise Agreements, Franchisor has the right to terminate the Franchise Agreements if Franchisee defaults in any provision and fails to cure such default within thirty (30) calendar days.

16

68.    Pursuant to Section 16.A of the Franchise Agreements, upon termination the Franchisee is required to pay all outstanding royalty fees, advertising contributions, and all other charges or debts owed to Franchisor.

69.    to Section 1.14 of the Franchise Agreements, Franchisee must pay Franchisor $25 per thousand population to terminate the Franchise Agreements (the "Opt Out Fee"), which to date, Plaintiff has not paid.

70.    As noted above, Belegu (and/or his applicable entity) failed to pay the full amount due for royalties and fees while he was still a franchisee, and carried an outstanding balance of approximately $60,000 at termination.

71.    Rooterman is also damaged in the amount of the Opt-Out Fee for the remaining terms of each of the thirteen (13) Franchise Territories pursuant to Section 1.14, which is nearly $200,000.

72.    On January 29, 2025, this Court directed Mr. Belegu to disassociate from Rooterman and detail the ways he had done so in a Declaration to be filed with the Court within 30 days.  Mr. Belegu failed to comply with the Court's direction and failed to disassociate from Rooterman in all ways. He continued to use Rooterman phone numbers, email addresses, and telephone support for months thereafter.  Additionally, per the below, he engaged in fraudulent transfer of his franchise assets, and a civil conspiracy therefore, with his longtime lawyer, Sandro Paterno of Paterno & Associates.

### *Defendants Fraudulently Transferred the Assets of their Business:*

73.    April 11, 2025, this Court granted Plaintiff's request for injunctive relief, Ordering that Defendants Belegu, Quality Air Care Corporation, RM Water Damage Restoration LTD and 911 Sewer & Drain cease and desist competing in the same area as their former Franchised

Business, in violation of the restrictive covenants in the Franchise Agreements for a period of two years, commencing September 16, 2024.

74.     Despite this Court's Order, however, Defendants continued to perform  residential and commercial jobs in their former Franchised territory through other relationships. They claimed to do so with other customers that fed them business for insurance claims; however, it was still plumbing and water restoration work for residential and commercial customers, and therefore, still competition. Upon information and belief, this work continues from these insurance referral sources.

75.     On April 15, 2025 – *i.e.,* 4 days after this Court's Order, Sandro Paterno, of Paterno & Associates, and Mr. Belegu's long-time lawyer, incorporated the entity "911 Plumbing and Restoration Inc," with a principal place of business of 1049 Church Road, Toms River, New Jersey, 08755.

76.     In other words, the name of the new company is a combination of the companies that were restrained by this Court's Order. .Shortly after its incorporation, 911 Plumbing and Restoration filed a certificate of alternate name to conduct business as "911 Sewer and Drain."

77.     Paterno has also stated under oath in a filing with this Court as follows: "[S]ince the entry of the injunction, upon information and belief, Water Damage Restoration, Ltd., has ceased operations. For New Jersey customers, services are now provided by my company, 911 [Plumbing and Restoration Inc.] d/b/a 911 Sewer & Drain". See ECF 59-1, ¶ 2.  Thus, Paterno – Mr. Belegu's lawyer -- has now taken over the very company that was restrained.

78.     Paterno was warned to cease and desist his actions to aid and abet the Court Order by letter dated May 15, 2025. See Exhibit E, attached hereto.

79.    Paterno responded and stated that he was fully aware of the Court Order restricting

the Defendants from improperly competing with Rooterman:

> "First, we acknowledge that our firm has represented Mr. Belegu in various legal
> matters over the past 20 years. We are fully aware of the court order restricting Mr.
> Belegu and other defendants from competing with Rooterman as outlined in the
> referenced case."

See Exhibit F, attached hereto.

80.    Paterno acknowledged that he created 911 Plumbing & Restoration to "safeguard"

his interests and the interests of Belegu's employees:

> "To safeguard my interests, as well as those of other creditors, I have established
> 911 Plumbing & Restoration, Inc. Together with other creditors, we have acquired
> the assets of Mr. Belegu's previous corporation, including its accounts receivable.
> This legal and strategic step enables us to recover the funds owed to us."

See Exhibit F. However, this entity now operates the same business that Defendants were enjoined

from operating. The accounts receivable are assets that, due to improper competition, in violation

of the franchise agreements, belong to Plaintiff.

81.    Paterno further stated that Belegu "currently lacks the financial resources to settle

these [legal] debts, although his former business holds a significant amount of accounts

receivable." See Exhibit F.  And, 911 Plumbing and Restoration now holds all the assets for

Belegu's businesses, which are restrained by the injunction, and which include the "accounts

receivable". See Exhibit F.

82.    Belegu previously stated under oath that his business is worth about $3,000,000 a

year. See ECF 18-1, ¶ 55. It was that representation, along with vague others about certain debts,

that led this Court to require a $535,000 bond from Plaintiff for the April 11, 2025 injunction

Ordered. Now, Paterno clearly states that he owns this $3,000,000 business.

83.    However, not only was this 4 days after the injunction issued, but also, Belegu and his entities did not receive a reasonably equivalent value from Paterno (and/or his applicable entity) in exchange for the transfer of his $3,000,000 business.

84.    Additionally, upon information and belief, to operate a plumbing business in New Jersey, an entity must have a "Master Plumber" who must also have ownership in the business. Upon information and belief, Travis Hershner, Belegu's current and former business partner, and Belegu's master plumber for his franchise businesses, is now Paterno's master plumber.  Thus, upon information and belief, Hershner is now also a part owner of Paterno's company, 911 Plumbing and Restoration, with such company now operating under his license.

85.    Notably, 911 Plumbing and Restoration has the same principal place of business as defendant RM Water Damage Restoration LTD, conducts the same business in the same location as the restricted businesses, with the same telephone number(s) and for the same customers, and employs substantially all of the same employees Belegu used to employ.

86.    In short, Belegu fraudulently transferred, and engaged in a civil conspiracy with Paterno, to fraudulently transfer, his applicable entities and transferred the assets of Defendants' businesses to continue competing with Rooterman in violation of this Court's Order, and to prevent or frustrate Plaintiff from recovering damages. Paterno (Belegu's lawyer) has unabashedly admitted he has aided and abetted the violation of this Court's injunction and thereby subjected himself, his law firm, and 911 Plumbing and Restoration, to suit for such aiding and abetting the torts alleged, as well as to this Court's injunctive relief.

## Count I: Violation of 15 U.S.C. § 1125

87.    Plaintiff repeats the allegations set forth above and below as if fully contained herein.

88.    Belegu's and/or his entities' service marks and infringing domain names are identical or extremely similar to the famous Rooterman trademarks.

89.    Belegu and/or his entities knowingly and willfully had and has a bad faith intent to profit from the use of infringing domain names and the goodwill associated with the Rooterman trademarks.

90.    Belegu and/or his entities knowingly and willfully registered, renewed, and/or used infringing domain names, with content on the domains which are identical to, and/or confusingly similar to, the Rooterman trademarks in Exhibit A, which were distinctive and famous at the time of registration  and renewal of the infringing domain names.

91.    Belegu and/or his entities had a bad faith intent in using the infringing domain names as evidenced by at least the following:

        a.    Belegu, as a former franchisee, knew of the A-Corp's trademark rights in the Rooterman trademarks;

        b.    The infringing domain and use of trademarks on it are identical or nearly identical to the Rooterman trademarks; and

        c.    Belegu and/or his entities intended to divert consumers seeking Rooterman's online location at rooterman.com to the infringing domain names by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the sites at the infringing domain names.

92.    Belegu's and/or his entities' use in commerce of the Rooterman trademarks and similar marks is likely to cause confusion, mistake, or deceive the public into believing that the infringing domain names, websites, and advertisements are authorized, sponsored or approved by Plaintiff.

93.    Belegu's and/or his entities' activities in registering, renewing, and/or using the infringing domain names are in violation of 15 U.S.C. § 1125(d).

94.    Belegu's and/or his entities' registration and use of the infringing domain names, and use of the infringing service marks, is greatly and irreparably damaging Rooterman and will continue to damage Rooterman, which has no adequate remedy at law, and which will continue until preliminarily and permanently enjoined by this Court.

95.    Belegu's and/or his entities' actions constitute unfair competition in violation of 15 U.S.C. § 1125(a).

96.    As a direct and proximate result of Belegu's acts of unfair competition, Belegu and/or his entities' have unfairly acquired and will continue to unfairly acquire income, profits and goodwill.

97.    Belegu's and/or his entities' unauthorized use of the Rooterman trademarks in the sale, advertising, and promotion of its goods and services causes dilution by blurring the distinctiveness, strength, and value of the famous Rooterman trademarks.

98.    Belegu's and/or his entities' unauthorized use of the Rooterman trademarks, as alleged herein, with knowledge of Rooterman's famous mark, constitutes a willful intent to trade on the reputation and recognition of the famous Rooterman trademarks in violation of 15 U.S.C. § 1125(c).

99.    Belegu's and/or his entities' actions in violation of 15 U.S.C. § 1125 are willful and in wanton disregard of the Plaintiff's rights in the Rooterman trademarks.

100.    Plaintiff is entitled to statutory damages, lost profits, and attorneys' fees by statute and under Section 19.7 of the franchise agreements.

## Count II: Violation of 15 U.S.C. § 1114

101.    Plaintiff repeats the allegations set forth above and below as if fully contained herein.

102.    Plaintiff's federally registered Rooterman trademarks are distinctive marks that are associated with Rooterman and exclusively identify Rooterman's services to consumers. Plaintiff's federally registered Rooterman trademarks are distinctive and signified Rooterman as a source of services before Defendant used a reproduction, copy, or colorable imitation of the Rooterman trademarks.

103.    Belegu and/or his entities' have used and continues to use the Rooterman trademarks or confusingly similar marks in its domain name, websites, and advertising for goods or services in commerce. This use is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of such goods or services. Belegu's and/or his entities' actions constitute service mark infringement under 15 U.S.C. § 1114.

104.    Belegu's and/or his entities' uses of the Rooterman trademarks are likely to cause initial interest confusion among users and potential users of Rooterman's services.

105.    Belegu's and/or his entities' uses of the infringing service marks are greatly and irreparably damaging Rooterman and will continue to damage Rooterman, which has no adequate remedy at law, and which will continue until preliminarily and permanently enjoined by this Court.

106.    Belegu's and/or his entities' actions in violation of 15 U.S.C. § 1114 are willful and in wanton disregard of the Plaintiff's rights in the Rooterman trademarks.

107.    Plaintiff is entitled to statutory damages, lost profits, and attorneys' fees by statute and under Section 19.7 of the franchise agreements.

### Count III: Breach of Contract

108.    Plaintiff repeats the allegations set forth above and below as if fully contained herein.

109.    Plaintiff has 13 valid contracts with Belegu or his solely owned entity, Quality Air Care Corporation, acquired by and assigned to Plaintiff, reflected by the Franchise Agreements, each in the form of Exhibit B.

110.    Belegu breached or violated his contract(s) by, either directly or through the Defendant entities, using Plaintiff's confidential and trade secret information post-termination, by failing to return proprietary and confidential materials to Plaintiff, by competing with Plaintiff post-termination (and, perhaps, pre-termination, as discovery may reveal), by soliciting Plaintiff's customers for Defendants' own separate business, and by failing to disassociate from Plaintiff's trademarks (and in contrast, continuing to associate with them and misuse them).

111.    Belegu also breached or violated his contract(s) by transferring his entities to Paterno to circumvent the preliminary injunction and continue competing with Plaintiff post-termination. Paterno and Paterno & Associates, as attorneys of the Belegu and/or his entities, was aware of the order and injunction and aided and abetted Belegu's improper competition in violation of the injunction and continued competition with Plaintiff post-termination.

112.    As a result of these breaches of contract, Plaintiff suffered, and continues to suffer, ongoing damages in an amount to be proved at trial. Plaintiff is entitled to damages, lost profits, and attorneys' fees under Section 19.7 of the franchise agreements, and the Reach and Apply Defendants are also liable for such damages, as set forth more fully in the counts below.

### Count IV: Breach of Contract – Unpaid Royalties and Fees

113.    Plaintiff repeats the allegations set forth above and below as if fully contained herein.

114.    Belegu and/or his entities failed to pay the monthly royalty and other fees.

115.    As a direct and proximate result of Belegu's and/or his entities' material breaches of Sections 1.9, 1.10, 1.10.1, 1.14, 5.2, and 16.A of the Franchise Agreements, Rooterman has been damaged in the amount of the outstanding unpaid balance of the royalties and fees, which is approximately $60,000 plus interest.

116.    As a direct and proximate result of Belegu's and/or his entities' material breaches of Section 15.2 of the Franchise Agreements, Rooterman has been damaged in the amount of the expected future royalties and fees through the end of the Franchise Agreement terms, which is approximately $200,000 plus interest.

117.    As a result of these breaches of contract, Plaintiff suffered, and continues to suffer, ongoing damages in an amount to be proved at trial. Plaintiff is entitled to damages, lost profits, and attorneys' fees under Section 19.7 of the franchise agreements.

## Count V: Trade Secret Misappropriation Under the Defend Trade Secrets Act, 18 U.S.C. § 1836

118.    Plaintiff repeats the allegations set forth above and below as if fully contained herein.

119.    Rooterman has maintained and developed valuable trade secrets, as defined under 18 U.S.C. § 1839(3)(A)(B) ("Defend Trade Secrets Act" or "DTSA"), and other proprietary information which are safeguarded as confidential and secret and protected from direct or indirect disclosure. These trade secrets and confidential information are necessary to conduct a uniform nationwide business, and include, without limitation, pricing and financial information, service fees, proprietary customer information, standards for services, marketing and trademark information, among other things.

120.    Rooterman's trade secrets and other proprietary information are highly valuable and critical to the operation of the Rooterman System, as well as its retention of customers and overall goodwill.

121.    Defendants conduct constitutes actual or threatened misappropriation, misuse, and reliance upon Rooterman's trade secrets and other confidential and proprietary information.

122.    Belegu (and/or his applicable entity) failed to protect or otherwise not use or disclose Rooterman's trade secrets and other confidential and proprietary information.

123.    Rooterman has taken reasonable precautions to preserve the secrecy of the trade secrets and confidential and proprietary information, including, but not limited to, disclosing the information solely to the restricted group of Franchisees, entering into Agreements with Franchisees containing non-disclosure and non-competition clauses, and establishing and maintaining policies with respect to the confidentiality of proprietary information and trade secrets.

124.    These trade secrets are related to a service used in, or intended for use in, interstate or foreign commerce.

125.    Belegu (and/or his applicable entity) was given limited access to these trade secrets and obligated to use them only for Rooterman purposes, as evidenced by the Franchise Agreement's restrictive covenants. Defendants were obligated to return all trade secrets, customer lists, and other confidential, proprietary, and trade secret materials promptly upon termination, and have failed to do so.

126.    Defendants, both prior to and after termination of the Franchise Agreements, have misused, misappropriated, relied upon and disclosed the trade secrets in bad faith and to enable Defendants to unfairly compete and obtain the business of Rooterman's customers.

127.    As a result of the bad faith misappropriation, misuse, and reliance of Rooterman's trade secrets by Defendants, Plaintiff has suffered damages and should be awarded its reasonable attorneys' fees.

### Count VI: Fraudulent Transfer

128.    Plaintiff repeats the allegations set forth above and below as if fully contained herein.

129.    Plaintiff filed suit and sought injunctive relief, initially on December 4, 2024.

130.    Plaintiff obtained preliminary injunctive relief on April 11, 2025, restraining Belegu under Rule 65.

131.    Within days, Belegu transferred his company assets, and the businesses that were restrained, to his attorney and Reach and Apply Defendants, Sandro Paterno of Paterno & Associates, who had formed a corporation specifically named and designed to continue Mr. Belegu's restricted activities.

132.    Belegu (and/or his applicable entity) did not receive any reasonably equivalent value in exchange for the transfer of the entities and assets. Moreover, substantial assets that were transferred, including accounts receivable, belonged to Plaintiff and constitute damages Plaintiff alleged (such as accounts receivable from the unfairly competing businesses)

133.    Belegu (and/or his applicable entity) was aware, believed, or reasonably should have believed, that he would incur significant debts in this case, beyond his ability to pay.

134.    Defendants transferred their assets and entities with the specific intent to hinder, delay, or defraud Plaintiff, and attempt to circumvent this Court's Order of injunctive relief, in violation of G.L. c.109A, §§5 and 6 and in violation of Fed. R. Civ. P. 65.

135.    Sandro Paterno and/or Paterno & Associates were the first transferees of the interests of the Defendants, or the party for whose benefit the transfer was made, and as such,

along with 911 Plumbing and Restoration, supposedly solely owned by Paterno, are liable to the Plaintiff for damages arising from the transfer of the Defendants' interests pursuant to G.L. c.109A, §9(b).

136.    As a result of the fraudulent transfer, the Plaintiff is entitled to the equitable relief of voiding the transfer and/or the reach and apply of Reach and Apply Defendants' assets in payment of the Defendants' debt any property, right, title or interest, real or personal, of the Reach and Apply Defendants that are liable to be attached or taken on execution in a civil action against the Defendants (such assets having been fraudulently conveyed by the Defendants with intent to defeat, delay or defraud the Plaintiff, pursuant to G.L. c.214, §3(6), (8)).

## Count VII: Civil Conspiracy

137.    Plaintiff repeats the allegations set forth above and below as if fully contained herein.

138.    Plaintiff obtained preliminary injunctive relief restraining Belegu and the Defendant entities from competing with Rooterman for a period of two years post-termination.

139.    Immediately after the Court entered its April 11 Order, Defendants transferred Mr. Belegu's operations in Defendants and substantially all of their assets, to his attorney of decades, the Reach and Apply Defendants. This was a fraudulent transfer, and an attempt to circumvent this Court's April 11, 2025 Order.

140.    Belegu (and/or his applicable entity) was aware of his duty not to compete for a period of two years by way of the Franchise Agreements and this Court's Order.

141.    Belegu (and/or his applicable entity) was aware that, as Section 18.1 of his Franchise Agreements provided, this duty extended to the Defendants' "family members or its officers, directors, other key personnel, employees or stockholders," as well as the Defendants' "officers, agents, servants, employees, and attorneys," and Belegu was also aware (or should have

been aware) that these obligations extended to Reach and Apply Defendants by operation of law under Fed. R. Civ. P. 65.

142.     Paterno, Paterno Associates (and/or his new applicable "911" entity) was also aware of Belegu's duty arising from the Franchise Agreements, this Court's Order and Rule 65.

143.     Despite being aware, Defendants fraudulently transferred their assets and engaged in a conspiracy with the Reach and Apply Defendants to undertake that fraudulent transfer, attempt to circumvent this Court's Order of April 11, 2025 and conduct the same business that was enjoined.

144.     Belegu (and/or his applicable entity) knowingly assisted and encouraged Paterno (and/or his applicable entity) to obtain the assets of the Defendants' entity(ies) in a plot to continue competing with Rooterman and to circumvent and violate this Court's Order and the reach of Rule 65.

145.     As a result of this civil conspiracy between Defendants and Reach and Apply Defendants, Plaintiff has suffered damages in an amount to be proved at trial.

### Count VIII:  Reach and Apply

146.     Plaintiff repeats the allegations set forth above and below as if fully contained herein.

147.     The Plaintiff is a creditor of the Defendants, who have breached their obligations to the Plaintiff.

148.     The Reach and Apply Defendants hold property rights of the Defendants, located outside the Commonwealth of Massachusetts, which cannot be reached to be attached or taken on execution.

149.    The interests of the Defendants cannot be reached and applied until a future time, and/or are of uncertain value.

150.    The Plaintiff is entitled to reach and apply Defendants' interests in the Reach and Apply Defendants and/or the assets the Reach and Apply Defendants obtained from Defendants including, without limitation, accounts receivable, trucks, customers, and customer revenue, pursuant to G. L. c.214, §3, and various subsections therein, such as (1), (6) and (8).

## Count IX:  Accounting

151.    Plaintiff repeats the allegations set forth above and below as if fully contained herein.

152.    Plaintiff demands the equitable remedy of an accounting of defendants' books and records and the books and records of 911 Plumbing & Restoration, as well as the relevant records of Sandro Paterno, and the relevant records of Paterno & Associates, to determine the money received from the improper competition asserted herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    **<u>Enter judgment</u>** against Defendants Klodian Belegu, Quality Air Care Corporation, RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation and judgment against the Reach and Apply Defendants, Sandro Paterno, Paterno & Associates, and 911 Plumbing and Restoration for:

1. Misusing Plaintiff's trademarks and violating Plaintiff's trademark rights, permanently enjoining same.

2. Breaching Plaintiff's contractual covenants, including the contracts' restrictive covenants.

3. Violating this Court's Order of April 11, 2025.

4. Aiding and abetting the violation of this Court's Order of April 11, 2025.

5. Transferring assets fraudulently, in a civil conspiracy therefore, and with an intent to violate this Court's Order of April 11, 2025.

**<u>And</u>**

B.    Awarding damages against Defendants Klodian Belegu, Quality Air Care Corporation, RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation and judgment against the Reach and Apply Defendants, Sandro Paterno, Paterno & Associates, and 911 Plumbing and Restoration in an amount to be proved at trial, and no less than at least $300,000 in unpaid royalties and Opt Out Fee, over $250,000 per month from September 16, 2024 for unfairly competing under the trademark, trade secret, and contract obligations to Plaintiff, with interest on both amounts, statutory damages under the trademark and trade secret laws, with

interest thereon, and also attorneys' fees available by trademark and trade secret statutes, as well as available by contract; and awarding equitable relief to find void the fraudulent transfers asserted herein.

**And**

C.    Granting such other and further relief this Court deems necessary and proper, such as an accounting, other equitable relief, and/or other remedies available to Plaintiff at law and in equity.

Respectfully submitted,

ROOTERMAN, LLC

By its Counsel,

Dated: May 28, 2025

*Jeffrey M. Rosin*

Jeffrey M. Rosin, BBO# 629216
Lisbeth Valdez, BBO# 715826
O'HAGAN MEYER, PLLC
140 Kendrick Street, Bldg. C
Needham, MA 02494
Telephone: (617) 843-6800
Fax: (617) 843-6810
jrosin@ohaganmeyer.com
lvaldez@ohaganmeyer.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of May 2025, *Plaintiff's Second Amended Complaint* was electronically filed.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.


<u>*/s/ Jeffrey M. Rosin*</u>

Jeffrey M. Rosin