UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rooterman, LLC,<br>   *Plaintiff/Counterclaim Defendant*,<br>v.<br>Klodian Belegu, Quality Air Care Corporation, Water Damage Restoration, Ltd f/k/a RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation.<br>   *Defendants/Counterclaim Plaintiffs*. | Civil Action No. 1:24-cv-13015<br><br>**DEFENDANTS' OPPOSITION TO PARTIAL 12(C) MOTION FOR JUDGMENT ON DEFENDANTS' COUNTERCLAIMS** |

Counterclaim Plaintiffs Klodian Belegu and Quality Air Care Corporation ("QAC")[1] hereby oppose Counterclaim Defendant Rooterman's Partial 12(c) Motion for Judgment on the Counterclaims (ECF No. 100). The claim for unfair and deceptive practices under G.L. c. 93A is properly stated and judgment on the pleadings is inappropriate.

**1.0 Factual Background**

Mr. Belegu is the owner of QAC, which collectively entered into 12 franchise agreements with Rooterman's predecessor, A Corp., from 2019-2021. (ECF No. 98, Counterclaims, at ¶¶ 11, 12, & 14).[2] Prior to entering into these agreements, Mr. Belegu was in the water damage restoration business, a service not then offered by the Rooterman franchise. *Id.* at ¶¶ 15-16. Mr. Belegu formed QAC in 2013, and it has been in the mold remediation business since then. *Id.* at ¶ 17. Mr. Belegu formed two other companies, WDR and Water Damage Solutions, Inc., in 2019

---

[1] Plaintiffs' motion is only directed to Count VI of the Counterclaim, which is brought solely by Mr. Belegu and QAC. Thus, no response from Water Damage Restoration Ltd. f/k/a RM Water Damage Restoration Ltd. ("WDR"), or 911 Sewer & Drain Corp. ("911") are required.
[2] The relevant facts are drawn from the Counterclaim.

and 2022, which both operate in the water damage restoration business. *Id.* at ¶¶ 18-19. The franchise agreements were never expanded to specifically include water damage restoration and neither Mr. Belegu nor QAC knowingly agreed that the franchised business might include water damage restoration services. *Id.* at 21-22. Notably, Rooterman does not require its franchisees to provide water damage restoration services, thus it is not part of the franchised business, as § 3.1(B) limits the meaning of the franchised business to only include those required services, § 9.1(G) excludes from the listing of tools and supplies needed for the franchise business those tools needed for water damage restoration, and Rooterman's claimed marks are not for the class of services that include water damage restoration. *Id.* at ¶¶ 22-27.

To induce Mr. Belegu and QAC to enter into the agreements, A Corp. was supposed to license (§§ 1.8 & 8.1) the trademarks "Rooter-Man;" "Rooter-Man to the Rescue;" and "Rotor-Man", yet this was fraudulent as neither A Corp. nor Rooterman owns (let alone has applied for) a standard character mark for "Rooter-Man," "Rooter-Man to the Rescue," "Rotor-Man," or even "RM". *Id.* at ¶¶ 28-37.

To induce Mr. Belegu and QAC to enter into the agreements, A Corp. promised (§ 1.10.1) to provide locally optimized websites, yet A Corp. and Rooterman failed to sufficiently do so. *Id.* at ¶¶ 38-39.

To induce Mr. Belegu and QAC to enter into the agreements, A Corp. promised (§ 7.1(B)) to design certain FRANCHISEE Webpages, yet failed to sufficiently do so. *Id.* at ¶¶ 40-41.

To induce Mr. Belegu and QAC to enter into the agreements, A Corp. promised (§ 3.1(E)) not to license anyone else to operate another Rooter-Man franchise in their territories, yet by failing to police their name and marks, they impliedly licensed such operation. *Id.* at ¶¶ 42-43.

RANDAZZA | LEGAL GROUP

To induce Mr. Belegu and QAC to enter into the agreements, A Corp. promised (§§ 8.5(A) & (B)) to ensure reasonable action should be taken against those using the supposedly licensed marks, yet they took insufficient action and unreasonably withheld permission for Mr. Belegu/QAC to take their own action.  *Id.* at ¶¶ 44-47.

To induce Mr. Belegu and QAC to enter into the agreements, A Corp. promised (§ 9.1) to provide a training program, yet no such program was provided.  *Id.* at ¶¶ 48-49.

To induce Mr. Belegu and QAC to enter into the agreements, A Corp. promised (§ 9.1(E)) to provide ongoing operation assistance and supervision, yet no such assistance or supervision occurred.  *Id.* at ¶¶ 50-51.  No representative from A Corp. or Rooterman ever accompanied Mr. Belegu or QAC employees on a job, inspected or reviewed the quality of their work, engaged in any form of quality control as to work performed, engaged in any form of quality control over advertising or marketing, despite having contractual authority (§ 12.8 (permitting operation inspections)) to do so.  *Id.* at ¶¶ 52-56.

The foregoing were all material misrepresentations that Mr. Belegu and QAC relied upon in entering into the agreements.  *Id.* at ¶¶ 59-64.  To the extent the contracts are not void, Rooterman's failures represent breaches of contract.  *Id.* at ¶¶ 70-79.

**2.0   Legal Standard**

Motions under Rule 12(b)(6) and 12(c) "ordinarily warrant the same treatment." *Collier v. City of Chicopee*, 158 F.3d 601, 602 (1st Cir. 1998).  In determining whether to dismiss for failure to state a claim, the Court must "accept the factual allegations in the plaintiff's complaint as true, construe reasonable inferences in its favor, and 'determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted.'" *Project Veritas Action Fund v. Conley*, 244 F. Supp. 3d 256, 260-61 (D. Mass. 2017) (Saris, U.S.D.J.) quoting *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71 (1st Cir. 2014).

A plaintiff's complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). A complaint should only be dismissed when the "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)).

Although Rooterman denies some of the allegations in its answer to the counterclaims (ECF No. 99), the facts must be viewed in the light most favorable to Mr. Belegu and QAC and "Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006). Rooterman fails to meet this standard.

## 3.0   Analysis

Counterclaim Plaintiffs bring six counts against Rooterman: 1) Fraud in the Inducement, 2) Breach of Contract; 3) Declaration that Rooterman lacks any rights under the Lanham Act in "Rooterman" or "RM"; 4) Cancellation of Rooterman's claimed marks for failure to police (15 U.S.C. §§ 1064 & 1119); 5) Cancellation of Rooterman's claimed marks by virtue of their naked licensing thereof (15 U.S.C. §§ 1064 & 1119); and 6) Violation of Mass. Gen. Laws, ch. 93A, § 11, for the fraudulent inducements. This time around,[3] Rooterman only challenges Count VI.

//

---

[3] Rooterman previously lost a motion to dismiss the previously-stated counterclaims. (ECF No. 84).

RANDAZZA | LEGAL GROUP

**3.1     Rooterman May be Held Liable for Unfair and Deceptive Trade Practices**

A claim under Mass. Gen. Laws, ch. 93A, § 11, "has three elements: (1) the defendant engaged in an unfair method of competition or committed an unfair deceptive act or practice; (2) a loss of money or property was suffered; and (3) the defendant's unfair or deceptive method, act or practice caused the loss suffered." *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st Cir. 2021).  Under Chapter 93A, the definition of "unfair or deceptive act or practice" exceeds the scope of common law fraud and deceit; "Massachusetts law clearly rejects the broad assertion that the elements of a chapter 93A claim must track those of analogous common-law claims." *Nightingale v. Nat'l Grid USA Serv. Co.*, 107 F.4th 1, 5 (1st Cir. 2024).  The claims are well pled.

Rooterman claims it is entitled to judgment on the pleadings under the last paragraph of Section 11, which states:

> No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth. For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.

G.L. c. 93A, § 11.  Rooterman raised the issue as part of its Fifth Affirmative Defense (ECF No. 99 at 15).  However, this is not a determination that a court can typically make on a Rule 12 motion. *See, e.g., Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc.*, 733 F.Sup.2d 204, 213 (D.Mass. 2010) ("Due to the fact finding process necessarily involved in evaluating the issue, this particular ground for challenging a c. 93A claim—absent some extraordinary pleading concession by a claimant—cannot be resolved on Rule 12 motions") (internal quotation marks and citation omitted).  Rather, the "issue is an affirmative defense to be decided on the basis of factual findings which are not appropriately made at the pleading stage." *Id.* at 213 (cleaned up).  Rooterman, in its motion, even admits this is a "fact intensive inquiry[.]" (ECF No. 100 at 4).

Rooterman invents a legal requirement that Mr. Belegu and QAC be located in Massachusetts to claim the protection of Chapter 93A.  Contrary to the assertion on Page 5 of its motion, *Guest-Tek Interactive Entm't, Inc. v. Pullen*, 731 F. Supp. 2d 80, 92 (D. Mass. 2010), does not require the claimant be located in Massachusetts;[4] rather it highlights a presumption of satisfying the statutory requirement if the claimant is located in Massachusetts.  It does not exclude non-Massachusetts claimants.

Even if a Rule 12(c) motion could properly be brought, there is no basis to grant the motion. "There is no bright line test to determine when actions or transactions violating Chapter 93A occur primarily and substantially within the Commonwealth." *Clinton Hosp. Ass'n v. Corson Grp., Inc.*, 907 F.2d 1260, 1266 (1st Cir. 1990).  It depends upon "the context" of the claim and "the center of gravity of the circumstances that give rise to the claim." *Sonoran Scanners, Inc. v. PerkinElmer, Inc.*, 585 F.3d 535, 546 (1st Cir. 2009).

Rooterman is correct that the word "Massachusetts" does not generally appear in the counterclaims.  However, it is Rooterman's burden to prove the gravity of the allegations occurred outside Massachusetts.  Rooterman fails to meet its burden.[5]  Mr. Belegu and QAC allege the following material misrepresentations by A Corp., for which Rooterman is liable as successor-in-interest:

---

[4] And if Rooterman read but one paragraph up in *Guest-Tek*, it would see the quote from *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F.Supp.2d 102, 118 (D.Mass. 2003) that "it would seem that a motion to dismiss is no longer an appropriate vehicle for raising the issue." 731 F. Supp. 2d at 92.

[5] The Court should disregard Rooterman's shell-game; where Rooterman is presently located is immaterial to what A Corp. did in Massachusetts for which Rooterman is liable.  While Rooterman denies successor liability, it does not seek such a finding in the motion and the allegations of successor liability are sufficient.

a) To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented that it owned the marks "Rooter-Man," "Rooter-Man to the Rescue," and "Rotor-Man." (ECF No. 98 at ¶ 102);

b) To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented that no other person or entity would be suffered to ply their trade in plumbing and sewer work in the territories under the name "Rooter-Man" or any variant thereof. (*Id.* at ¶ 103);

c) To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented by omission that Mr. Belegu would be otherwise able to separately and permanently operate his pre-existing trade of water damage restoration; (*Id.* at ¶ 104); and

d) To induce Mr. Belegu and QAC to enter into the agreements, A Corp. materially misrepresented that locally optimized websites would be developed for the marketing of their services in the territories. (*Id.* at ¶ 105).

If the claim was solely about making false statements being sited in Massachusetts, then Rooterman is correct that *Bushkin Assocs. v. Raytheon Co.*, 393 Mass. 622, 637-38, 473 N.E.2d 662, 671-72 (1985) might be controlling. However, *Bushkin* did not also have the circumstances where the contract was expressly governed by the laws of Massachusetts,[6] or where the recipient of the contract payments (A Corp.) was located in Massachusetts. And Rooterman does not meet its burden of proof that Mr. Belegu and QAC did not suffer losses in Massachusetts where

---

[6] Although the choice of law provision was not dispositive in *HC&D, LLC v. Precision NDT & Consulting LLC.*, Civil Action No. 22-cv-10224-ADB, 2024 U.S. Dist. LEXIS 197069 (D. Mass. Oct. 30, 2024), such does not mean that it should not be considered as part of the context showing the overall center of gravity.

fraudulently-induced contract payments were made to a Massachusetts company (A Corp.) in Massachusetts.

**4.0   Conclusion**

On a more-developed record, Rooterman may be able to convince a jury that the center of gravity is outside Massachusetts.  But, at the pleading stage, Rooterman cannot prevail. Even if such a motion were proper, it is not Mr. Belegu's or QAC's burden to plead or prove that the center of gravity is in Massachusetts, but that of Rooterman to plead it is outside.  And, in the entire context, where A Corp., a Massachusetts company, made false representations (likely from Massachusetts), to induce the execution of 13 Massachusetts contracts, that called for payments to the Massachusetts-based company, the counterclaim complaint sufficiently states a claim under G.L. c. 93A, § 11.

WHEREFORE this Honorable Court should deny Counterclaim Defendant Rooterman's Partial Motion for Judgment on the Counterclaims (ECF No. 100).

Dated: July 9, 2025.                                Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
Jay M. Wolman, BBO# 666053
jmw@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

*Attorneys for Klodian Belegu and Quality Air Care Corp.*

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Mr. Belegu and QAC respectfully request a hearing on Rooterman's motion and believe that oral argument may assist the ourt.

/s/ Marc J. Randazza
Marc J. Randazza

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2025, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza