IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rooterman, LLC <br><br> *Plaintiff,* <br><br> v. <br><br> Klodian Belegu, Quality Air Care Corporation, RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation. <br> *Defendants,* <br><br> Sandro Paterno, Paterno & Associates and 911 Plumbing & Restoration Inc. <br><br> *Reach and Apply Defendants.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:24-cv-13015 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFF'S OPPOSITION TO REACH AND APPLY DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff, Rooterman, LLC ("Rooterman") hereby opposes Reach and Apply Defendants

Sandro Paterno, Paterno & Associates and 911 Plumbing & Restoration Inc.'s (collectively,

"Reach and Apply Defendants") motion to dismiss for lack of personal jurisdiction ("Motion").[1]

---

[1]     Reach and Apply Defendants simultaneously filed a "Motion for Leave to Appear *Pro Se*" and "Motion to Dismiss", purporting to have the corporate Reach and Apply Defendants appear in this matter *pro se*. See ECF 104. However, such appearances are improper under well-established law and the District of Massachusetts Local Rules. See Rowland v. California Men's Colony, 506 U.S. 194, 201-202 (1993) (Corporate entities "may appear in the federal courts only through licensed counsel"); see also L.R., D. Mass. 83.5.5(c). While Paterno & Associates and 911 Plumbing & Restoration Inc. are prohibited from appearing *pro se*, and as such should be stricken from the Motion to Dismiss, Plaintiff still argues that this Court holds proper jurisdiction not just over Sandro Paterno individually (who may proceed *pro se*) but over his two entities, and therefore all three Reach and Apply Defendants. Plaintiff does so reserving all rights and waiving none, pertaining to its Motion to Strike, filed July 31, 2025 (ECF-107)

#8231004v1

For the reasons below, the Motion should be denied and the Court should find that all of the Reach and Apply Defendants are properly within its jurisdiction.

## INTRODUCTION

On July 18, 2025, Reach and Apply Defendants Sandro Paterno, Paterno & Associates, and 911 Plumbing & Restoration Inc. (collectively, "Reach and Apply Defendants"), filed a Motion to Dismiss for Lack of Jurisdiction, arguing that the Court lacked personal jurisdiction over all of the Reach and Apply Defendants. See ECF 106. In particular, Reach and Apply Defendants argue that they do not have any contact with Massachusetts and that it would be unfair to have them be hailed into this Court to litigate. However, jurisdiction is proper over Paterno individually, and all Reach and Apply Defendants due to the Court's inherent power to enforce its orders, as well as due to the Reach and Apply Defendants' knowing involvement in the fraudulent transfer of the enjoined defendant businesses.

Following this Court's April 11, 2025 Order enjoining Belegu and his corporate entities from competing with Rooterman, Sandro Paterno, Belegu's attorney of decades, entered into an agreement to effectively as alleged by Plaintiff participate in the fraudulent transfer of the enjoined corporations, and their assets, and continue their operations under the guise of "new management." In this regard, 911 Plumbing & Restoration is nothing more than a mere continuation of the enjoined businesses – it goes by the same names, employs the same people, took over the enjoined businesses' lease, and conducts the exact same business. Paterno is a lawyer, presumably duly aware of the significance of a Court's Order. Yet, in creating 911 Plumbing & Restoration, Paterno knowingly engaged in a scheme to assist Defendants in circumventing this Court's Order and continue operations of the enjoined businesses, and he has thereby placed himself, and the entities through which he operates, squarely within the jurisdiction of this Court. Worse, Paterno, who entered this litigation through a declaration

signed under oath prior to being brought in as a party to this suit, was fully aware of this Court's Order enjoining the Defendants from continuing to compete with Rooterman either directly or indirectly. Paterno's excuse is that Defendants' owed him money, and the transfer was merely to satisfy a debt. Not so, Paterno has hired Defendants' employees, taken full advantage of Defendants' receivables – *i.e.,* 10's of 1000's of dollars in money that was obtained by way of Defendants' improper competition and misusing of Plaintiff's trademarks – and effectively transferred it to himself. In no uncertain terms, Paterno's actions, in concert with Defendants, have impacted this proceeding, here in Massachusetts. It is not just the act of an attorney helping a client defy a Court Order; it is the act of an attorney taking over the very company and business operations that were enjoined.

Reach and Apply Defendants cannot possibly be surprised they are being joined into litigation here in Massachusetts, when they acted so intentionally and flagrantly and within days of this Court's Order, which enjoined not only the Defendants but also their attorney and any persons in active concert or participation with the Defendants. Indeed, Plaintiff sent them a cease and desist letter, but they defied it. As detailed more fully below, this Court should find that it has proper jurisdiction over the Reach and Apply Defendants and deny their Motion to Dismiss.

## FACTUAL BACKGROUND

Rooterman began this underlying litigation after Defendants Klodian Belegu, Quality Air Care Corporation, RM Water Damage Restoration LTD, and 911 Sewer & Drain Corporation (collectively, "Defendants") failed to pay substantial royalties, failed to comply with the post-termination clauses of the Franchise Agreements and willfully infringed upon the Rooterman trademarks ("Marks"). See ECF 89, Second Amended Complaint (hereinafter, "Complaint"), ¶¶ 2-4 Specifically, Defendants continued to use the Rooterman Marks for months post-termination, failed to return confidential information and materials, and continued to compete with

Rooterman by providing the same services in the exact same location as their previously franchised business. When they did seek to disassociate, they did so under the company name, "911 Sewer & Drain" but still wanted to continue to operate "RM Water Damage Restoration", purportedly a separate business.  This Court properly rejected the Defendants' claim that those entities were somehow not competing, or engaged in a separate business that Rooterman did not even engage in.  Paterno's new company name was an unabashed, "911 Plumbing & Restoration", was formed after this Court's Order, and admittedly was "sold" to Paterno so Paterno would forgive receivables Defendants owed his law firm, Paterno & Associates – *i.e.,* receivables that constituted the "fruits" of Defendants' violation of their non-competition covenants.

Sandro Paterno is an attorney who owns and operates the Reach and Apply Defendant law firm, Paterno & Associates, through which Paterno has provided legal services to defendant Belegu, for decades, and through which Paterno assisted Belegu in forming numerous corporations, including defendant RM Water Damage Restoration LTD. See Complaint ¶ 13; id., Exhibit F thereto (Paterno & Associates acknowledges firm has "represented Mr. Belegu in various legal matters over the past 30 years"); see also Exhibit 1, Deposition of Klodian Belegu, at pp. 74-75. In response to a Subpoena Duces Tecum to Paterno & Associates, Paterno provided information and documents relating to businesses he assisted in incorporating "at the request of Klodian Belegu and/or his business partners," including defendant RM Water Damage Restoration LTD. See Exhibit 2. Moreover, Paterno and Paterno & Associates have admitted to their "full" awareness "of the court order restricting Mr. Belegu and other defendants from competing with Rooterman." See Complaint, Exhibit F thereto.

On April 11, 2025, this Court entered an Order that Defendants be preliminarily enjoined from competing with Rooterman and otherwise directly or indirectly engaging in, holding any interest in, or being involved in any way with any of the services that comprise the Rooterman system for a period of two years from termination of the Franchise Agreements, until September 16, 2026. See ECF 50, pp. 13, 19; see also Complaint, ¶¶ 5, 55.

Within four days of this Court's order granting the preliminary injunction and ordering Defendants to stop competing, on April 11, 2025, Sandro Paterno caused the corporation, 911 Plumbing and Restoration Inc., to be incorporated under the laws of the state of New Jersey. See Exhibit 3. Paterno is the "incorporator, sole shareholder, and sole board member" of defendant 911 Plumbing & Restoration, Inc. See Complaint ¶ 14. Notably, on that same day, Sandro Paterno entered into an agreement with Klodian Belegu and RM Water Damage Restoration LTD to participate in Defendants fraudulently transferring certain of the assets of the Defendant corporations, that, Plaintiff argues is a clear effort to circumvent this Court's Order, allow those entities to continue competing, but now as "Paterno's" as 911 Plumbing & Restoration Inc. See Complaint ¶¶ 5, 71-86; see also Exhibit 4.

Notably, this Agreement with Paterno transferred the businesses that Belegu attested, under oath, had a yearly income of $3,000,000, in order to satisfy an outstanding balance of $124,000 owed onto Paterno for the alleged legal services he was providing. See Exhibit 4; see also ECF 18-1 ("a year's lost income for Defendants" is at least "$3,000,000). However, this transfer also included assets, and not just receivables, but customer goodwill, which were the fruits of the violation of the non-compete and use of the trademarks for months post-termination. See Complaint ¶ 132.

Within weeks of filing its incorporation papers, moreover, 911 Plumbing & Restoration filed an amendment to include Travis Hershner, the managing plumber and part-owner of Belegu's entity, defendant RM Water Damage Restoration LTD, as a "Manager." See Exhibit 3. Then, within days of Rooterman filing its Second Amended Complaint, 911 Plumbing & Restoration amended its officers to exclude Mr. Hershner as an officer. See id. This does not change the fact that Mr. Hershner was an officer and manager of both the enjoined defendant RM Water Damage Restoration LTD and Reach and Apply Defendant 911 Plumbing & Restoration.

Equally telling is that 911 Plumbing & Restoration also holds a "Certificate of Alternate Name" to do business as both "911 Sewer and Drain" and "RM Water Damage Restoration." See Exhibit 3. It is no mere coincidence that 911 Plumbing & Restoration has set forth to conduct business under the exact same names as the Defendants' enjoined businesses. In fact, Paterno himself has admitted that this entity provides services to customers of the enjoined business, under the same name as the enjoined business: "[S]ince the entry of the injunction, upon information and belief, Water Damage Restoration, Ltd., has ceased operations. For New Jersey customers, services are now provided by my company, 911 PR d/b/a 911 Sewer & Drain." See ECF 59-3, Declaration of Sandro Paterno ¶ 1. Paterno has also admitted that 911 Plumbing & Restoration employs the same employees of the Defendants' enjoined companies. See id. ¶ 4 (employs the Plumber "Ron"); Complaint, Exhibit F thereto (admitting to acquiring assets of and hiring employees of the enjoined companies). Moreover, 911 Plumbing & Drain also holds the same principal place of business as the enjoined defendant RM Water Damage Restoration LTD. See Complaint ¶ 85; Exhibit 3. Not only does 911 Plumbing & Drain hold the same principal place of business, the parties agreed to actually "transfer the lease of the building at 1049 Church

Road, Toms River to 911 Plumbing and Restoration Inc." See Exhibit 4.  There should be no doubt that Paterno, his law firm, and his new entity have engaged in conduct intentionally combative with this lawsuit in Massachusetts, and well-knowing the effects it would have on this litigation here in Massachusetts.

Plaintiff filed its Second Amended Complaint on May 28, 2025 to include Reach and Apply Defendants Sandro Paterno, Paterno & Associates, and 911 Plumbing & Restoration Inc. after Defendants fraudulently transferred substantially all of the assets out of the then existing defendant corporations into Paterno's 911 Plumbing & Restoration Inc. within days of this Court's April 11, 2025 Order. See Complaint, ¶¶ 5, 13-14, 130-136; see also ECF 59-1, ¶ 3 (stating that 911 Plumbing & Restoration Inc. has taken over providing services to "New Jersey customers" on behalf of 911 Sewer & Drain).

On July 18, 2025, Paterno filed a Motion for Leave to appear *pro se* on behalf of his corporate entities, as well as a Motion to Dismiss to the same extent. See ECF 104; ECF 106. To date, and contrary to well-established law, Reach and Apply Defendants Paterno & Associates and 911 Plumbing & Restoration Inc. are not represented by an attorney licensed to practice in the District of Massachusetts.

## ARGUMENT

In determining whether the Court has personal jurisdiction over a nonresident defendant, the Plaintiff must demonstrate: (1) purposeful availment of conducting activities in the forum state; (2) the relation of the claim to the defendant's forum contacts; and (3) the exercise of jurisdiction is reasonable and does not offend traditional notion of fair play and substantial justice. See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016) (quoting C.W. Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d 59, 65 (1st Cir. 2014)); see also Diamond Group, Inc. v. Selective Distribution Int'l, Inc., 84 Mass. App. Ct.

545, 552 (2013) (quoting <u>Bulldog Investors Gen. Partnership v. Secretary of the Commonwealth</u>, 457 Mass. 210, 217 (2010)).

Reach and Apply Defendants wrongly argue that there is no personal jurisdiction over them as the Massachusetts long-arm statute does not confer jurisdiction and there are no sufficient "minimum contacts" with Massachusetts that would confer jurisdiction. However, Reach and Apply Defendants make that argument while failing to address Plaintiff's reasons for jurisdiction as articulated in the Second Amended Complaint. <u>See</u> ECF 89, Second Amended Complaint, ¶¶ 16-17. Specifically, Plaintiff argues that this Court can exercise personal jurisdiction over all the Reach and Apply Defendants as they had actual knowledge of this Court's April 11, 2025 Order preliminary enjoining the Defendants from competing with Plaintiff, and actively aided and abetted Defendants' by actively participating in Defendants' attempts to circumvent the Order. <u>See id.</u> ¶ 16. Reach and Apply Defendants have acted in concert with Defendants to circumvent the injunction and utilize Plaintiff's goodwill, and the goodwill Defendants assisted Plaintiff in building to continue competing with Rooterman, which effort is a clear attempt to circumvent, and thereby violation, this Court's Order. These actions provide jurisdiction over the Reach and Apply Defendants pursuant to the Courts "inherit authority to enforce their own injunctive decrees" under Rule 65 and as the act of aiding and abetting the violation of the injunction supplies the "minimum contacts" for personal jurisdiction. <u>See</u> <u>Waffenschmidt v. MacKay</u>, 763 F.2d 711, 717-718 (5th Cir. 1985) (finding defendants placed themselves "within the personal jurisdiction of the district court" by knowingly participating in a scheme to violate an injunction); <u>see also</u> <u>Angiodynamics, Inc. v. Clarion Med. Techs.</u>, Civil Action No. 18039938-MGM, 2019 U.S. Dist. LEXIS 233819, at *30 (D. Mass. Sep. 25, 2019) (citing <u>Waffenschmidt</u> 763 F.2d at 714 (denying motion to dismiss

where entity is "allegedly involved in a complex scheme to violate this court's orders and shield assets from plaintiff").

Rule 65(d) provides that any order granting an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 36 (1st Cir. 1980) (quoting Fed. R. Civ. P. 65(d)). Notably, this Rule is a codification of the common-law doctrine that a "decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, or subject to their control." Id. (quoting Regal Knitwear Co. v. National Labor Relations Board, 324 U.S. 9, 14 (1945)). "The nationwide scope of an injunction carries with it the concomitant power of the court to reach out to nonparties who knowingly violate its orders." See Waffenschmidt, 763 F.2d at 717. "Its essence is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." See Little Kids v. 18th Ave. Toys, No. 180533WES, 2020 U.S. Dist. LEXIS 231719, at *27-28 (D.R.I. Dec. 10, 2020) (citing G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 35 (1st Cir. 1980).

As to the personal jurisdiction of nonparties subject to an injunction, the Court in Waffenschmidt found that:

> Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum.

See Waffenschmidt, 763 F.2d at 714. Indeed, it is well established that Rule 65 provides courts with the inherent authority to enforce their own orders, including injunctive degrees, and extend jurisdiction over nonresidents to such effects, even where those nonresidents lack other contacts

with the forum. See SEC v. Homa, 514 F.3d 661, 675 (7th Cir. 2008) (finding district court properly determined it had jurisdiction over defendants who knowingly acted in concert with enjoined defendant to violate court order); ClearOne Communs., Inc. v. Bowers, 651 F.3d 1200, 1216 (10th Cir. 2011) (finding defendant "subjected himself to the district court's jurisdiction" by having actual knowledge of the injunctive order and, in active concert or participation with the enjoined parties, violated the injunction); see also Little Kids v. 18th Ave. Toys, 2020 U.S. Dist. LEXIS 231719, at *32 (finding defendants conduct was "deliberately adopted" to circumvent forum state and as such extending jurisdiction would "not offend traditional notions of fair play or substantial justice or be unreasonable").

Courts cannot impose their will "on persons whose actions do not place them in a position where they reasonably can foresee that they might be called to account in that jurisdiction." See Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 287-288 (1st Cir. 1999) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). To satisfy the Due Process Clause, "a defendant must have 'certain minimum conducts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Knox v. MetalForming, Inc., 914 F.3d 685, 690 (1st Cir. 2019) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). However, due process is satisfied where a person knowingly aids and abets a party in violating an injunction, thereby providing minimum contacts with the forum state. See Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 42 (1st Cir. 2000) (explaining that nonparty's conduct "in active concert or participation with the named defendant" renders named defendant agent of nonparty "and the nonparty's right to due process will have been satisfied vicariously"); see also Waffenschmidt,

763 F.2d at 721 (finding nonresident defendant subjected himself to jurisdiction of court by knowingly participating in scheme to dissipate funds subject to injunction).

In fact, Courts have reasoned that extending jurisdiction to those who actively aid and abet the violation of an injunction is "necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process." See ClearOne Communs., Inc., 651 F.3d at 1215 (citing Homa, 514 F.3d at 675); Waffenschmidt, 763 F.2d at 716 (finding actions which knowingly and intentionally violate an injunction are conduct "designed to have purpose and effect in the forum"). Notably, the court in Angiodynamics, Inc. found that jurisdiction was proper as the defendants all "worked together to continue the same [enjoined] business under the guise of different, non-Biolitec branded entities in order to conceal the revenues and prevent [Plaintiff] from enforcing its judgment against those revenues." See Angiodynamics, Inc., 2019 U.S. Distt. LEXIS 233819, at *13.

Here, Plaintiff has set forth allegations that Reach and Apply Defendants have acted in concert with Defendants to circumvent this Court's April 11, 2025 Order. See Complaint ¶¶ 130-136. Reach and Apply Defendants have participated in this scheme by accepting the fraudulent transfer of assets for a business they knew to be enjoined from competition by the Court, and continuing its operation under the guise of a new business, thereby effectively taking over the receivables and goodwill of businesses who were enjoined by this Court, and impacting the litigation here in Massachusetts in this way.

While Reach and Apply Defendants admit to acquiring the assets of the Defendant companies, they state that such transfer was not fraudulently conveyed as the "transaction occurred well before any potential liability of Mr. Belegu to the Plaintiff arose from the alleged breach of contract." See ECF 106, at p. 4. That is a shocking statement and flagrantly false.

Notably, the fraudulent transfer of these assets occurred on April 15, 2025, within four (4) days of this Court's Order enjoining Defendants from competing with Plaintiff. See Exhibit 4. Indeed, the agreement for this fraudulent transfer even states "WHEREAS, the Sellers are now forced to shut down their business **due to a court order** . . . " See id.

At the time of the transfer, Defendants and Reach and Apply Defendants were on notice that Plaintiff had a likelihood of success on the merits of their claims of unfair competition, by way of the April 11 Order. Despite this, the Reach and Apply Defendants engaged in a knowing scheme to continue the operation of the enjoined business and attempt to shield Plaintiff from recovering the damages they were owed. See Complaint ¶¶ 130-136.

Notably, the Franchise Agreements states in relevant part:

[N]either FRANCHISEE nor any of his family members or its officers, directors, other key personnel, employees or stockholders, if applicable, shall directly or indirectly engage in, hold interest in, or be involved in any way with any of the services comprising the [Rooterman] System.

See Complaint, Exhibit C, § 18.1. Thus, one step further, Paterno and Paterno & Associates, by way of the "key" person relationship to Belegu and his businesses over the years, could also be argued to have been preliminary enjoined from competing with Rooterman by way of Rule 65. See Angiodynamics, Inc., 2019 U.S. Distt. LEXIS 233819, at *13; see also Alexander & Alexander, Inc. v. Danahy, 488 N.E.2d 22, 30 (Mass. App. Ct. 1986) ("a stranger to a noncompetition agreement who is aware of the agreement may be enjoined from violating the agreement" when doing so is "reasonable").

Paterno makes this argument all the more logical as evidenced by his new company being a combination of the names, "911 Sewer & Drain" and "RM Water Damage Restoration", and now, having a "DBA" of those Defendant entity names, as set forth above. This is not just a

tangential connection to this lawsuit; it is Paterno operating the very Defendant entity businesses that were enjoined by this Court's injunction as his "DBA's".

Paterno argues that the "legitimate business purpose" for the creation of 911 Plumbing & Restoration Inc. was to "ensure that employees of Mr. Belegu's companies . . . could continue to receive a salary." See ECF 106. Yet, Paterno had his own personal and professional interest in Belegu's companies by way of his own admitted six-figure credit due for professional services rendered. See id. The agreement for the fraudulent transfer alleges that Paterno provided legal services to RM Water Damage Ltd. from at least November 2022 at a price of "$13,000 per month for a term of one year, which Agreement was renewed for the years 2023, 2024, and 2025," and that the total outstanding obligation at the time of transfer was $124,000. See Exhibit 4.[2] More needs to be discovered about this "innocent" explanation.  Indeed, Belegu testified that his businesses had a yearly income of $3,000,000; yet, he transferred them in exchange for release of a $124,000 unsecured debt.  See ECF 18-1, Declaration of Klodian Belegu, ¶ 55 (stating a years' lost income for Defendants is "at least $3,000,000.00");[3] see also Complaint ¶ 82.

Moreover, 911 Plumbing & Restoration has continued the exact same business that was enjoined. First, it operates out of the same location as the enjoined businesses and had even taken over the lease of such businesses. See Exhibit 4. Second, Paterno has admitted that 911 Plumbing

---

[2]     It is unclear if Paterno is admitted to practice in New Jersey, where Defendants operate. See New Jersey Courts Attorney Search, https://portalattysearch-cloud.njcourts.gov/prweb/PRServletPublicAuth/app/Attorney/-amRUHgepTwWWiiBQpI9_yQNuum4oN16*/!STANDARD?AppName=AttorneySearch (last visited July 31, 2025) (no results for Sandro Paterno).
[3]     Plaintiff has additional information through the discovery process that Belegu's "lost income" is not $3,000,000, nothing close. Plaintiff is still investigating that matter, but preliminarily, it is quite troubling since this claim by Belegu prompted this Court to require Plaintiff to post a significant bond.

& Restoration services the exact same customers as the enjoined businesses, thereby conducting the same restricted activities within the same location as the enjoined businesses. See ECF 59-1, ¶ 3. Next, it has the same employees as the enjoined businesses. See id. ¶ 4; see also Complaint, Exhibit F. It even had shared an officer/manager of RM Water Damage Restoration LTD, Travis Hershner. See Exhibit 3; Complaint, ¶ 84. Finally, it does business under the exact same names of the enjoined businesses, "911 Sewer and Drain" and "RM Water Damage Restoration LTD". See Exhibit 3. Thus, 911 Plumbing & Restoration is nothing more than the continuation of the enjoined businesses, owned by a person who should be deemed directly included in the preliminary injunction under federal law. Therefore, this Court can exercise personal jurisdiction over the Reach and Apply Defendants for their attempts to aid and abet the circumvention of this Court's order, and assumption of Defendants' businesses and goodwill, the very goodwill the injunction protected. See Waffenschmidt, 763 F.2d at 721 (finding nonresident defendant subjected himself to jurisdiction of court by knowingly participating in scheme to dissipate funds subject to injunction).

Contrary to Paterno's averments, a successor itself does not necessarily need minimum contacts with the forum in order for there to be jurisdiction. See Rodriguez-Miranda v. Benin, 829 F.3d 29, 45 (1st Cir. 2016) (finding proper jurisdiction over successor who knowingly obtained fraudulently transferred property as personal jurisdiction was established over the original party); Hurwitz v. Fung Holdings (1927) Ltd., 666 B.R. 115, 1330134 (Bankr. S.D.N.Y. 2024) (citing numerous case law extending personal jurisdiction to nonresident defendant who knowingly received fraudulent transfer) ; see also Desiano v. Envision Foods, Inc., 34 Mass. L. Rep. 437 (Mass. Super. Ct. 2017) (finding lack of long-arm jurisdiction over nonresident did not preclude reach and apply claim, founded on *quasi in rem* jurisdiction). In fact, the case that

Reach and Apply Defendants cite in support of this argument is silent on the question of successor liability. Rather, the Court in LaVallee found that there was no personal jurisdiction over an individual who acted as an agent of a corporation as there was no allegation that the agent, in his individual capacity, "derived any personal benefit from his contacts in the Commonwealth nor to have acted beyond the scope of his employment." See LaVallee v. Parrot-Ice Drink Prods. of Am., Inc., 193 F. Supp. 2d 296, 302 (D. Mass. 2002). Here, it is the opposite: Paterno has directly benefitted – admittedly benefitted – from the injunction in Massachusetts.

Thus, as here, a court can impute the personal jurisdiction of a "predecessor corporation upon the successor corporation which purchases its assets" when the transfer "is a fraudulent effort to avoid liabilities of the predecessor" or if "the successor is a mere continuation of the predecessor." See Guzman v. MRM/Elgin, 409 Mass. 563, 566 (1991); see also Wetteman v. Nucleus Research, No. 1984CV0334-BLS2, 2022 Mass. Super. LEXIS 9, at *4-5 (Feb. 16, 2022) (finding facts in complaint plausibly suggest that debtor "transferred the business and assets of [predecessor] to [successor] in an attempt to avoid [predecessor]'s debt" to Plaintiff). Under such circumstances, the court can find an adequate basis to exercise personal jurisdiction and impute the predecessor's contacts with the forum to hold the successor liable for the actions of the predecessor. See Wetteman, 2022 Mass. Super. LEXIS at *5 (quoting Hetronic Int'l, Inc. v. Hetronic Germany GmbH, 20 F.4th 1016, 1028 (10th Cir. 2021); see also Jackson v. Tanfoglio v. Giuseppe, S.R.L., 615 F.3d 579, 586 (5th Cir. 2010) (quoting Patin v. Thoroughbred Power Boats, 294 F.3d 640, 653 (5th Cir. 2002) (as the corporations are essentially the same entity, "the jurisdictional contacts of one are the jurisdictional contacts of the other").

Here, like in Wetteman, Plaintiff has set forth various allegations in their complaint which suggest that Reach and Apply Defendants are liable under the "fraudulent transfer" theory

of successor liability. See Wetteman, 2022 Mass. Super. LEXIS at *5 . This includes the fact that Defendants transferred all of their assets, including profits of unfair competition which rightfully belong to Plaintiff, to 911 Plumbing & Restoration within days of this Court's Order enjoining the Defendants as a means of both circumventing this Court's Order, and in an attempt to hinder, delay, or defraud Plaintiff from receiving the funds rightfully owed to them. See Complaint ¶¶ 130-135. Moreover, as set forth above, the only value that Defendants seemingly received for such transfer, which they allege is worth $3,000,000 a year, was the waiver of a mere $124,000 unrecorded obligation.

The "mere continuation" theory of successor liability "envisions a reorganization transforming a single company from one corporate entity into another", such that the purchasing corporation is "merely a new hat for the seller" Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 557 (2008) (quoting McCarthy v. Litton Industries, Inc., 410 Mass. 15, 21-23 (1991); see also id. at 558 (quoting 15 W.M. Fletcher, Cyclopedia of Corporations § 7124.2, at 287 (rev. perm. Ed. 2008) ("The mere continuation of business exception reinforces the policy of protecting rights of a creditor by allowing a creditor to recover from the successor corporation whenever the successor is substantially the same as the predecessor"). Some factors that can determine whether a successor company is a mere continuation include: "continuity of directors, officers, and stockholders; and the existence of only one corporation after the sale of assets." See id. (quoting McCarthy, 410 Mass. at 23). Here, 911 Plumbing & Restoration did continue the same formation of officers (Travis Hershner) of the enjoined business, until they were caught doing so, and necessarily took over the roles of RM Water Damage Restoration LTD and 911 Sewer & Drain after the sale of assets occurred. See Complaint ¶¶ 84-84. The evidence of such is overwhelming: 911 Plumbing & Restoration took over the office lease of the enjoined

businesses, they took over the customer base of the enjoined businesses, they took responsibility over the enjoined businesses' employees, they conduct the same services in the exact same location, and, most importantly, they operate under the DBA's of the enjoined Defendants' identical names, and they fraudulently received the assets of the enjoined business (minus some trucks). See Complaint ¶¶ 73-86; Complaint, Exhibit F; ECF 59-1; Exhibit 4.

Reach and Apply Defendants argue that it would be "unduly burdensome" for nonresident defendants to litigate in Massachusetts "with no connection to the forum." However, extending the Defendants personal jurisdiction to the Reach and Apply Defendants does not counter traditional notions of fair play. Rather, by not imputing jurisdiction over these defendants, "the owners of the property could merely transfer legal ownership of the assets from once shell corporation to another in a different jurisdiction, putting a party whose initial suit satisfied the jurisdictional requirements to the immense burden of chasing the involved assets from courtroom to courtroom." See Rodriguez-Miranda, 829 F.3d at 45 (quoting 3M v. Eco Chem., Inc., 757 F.2d 1256, 1263 (Fed. Cir. 1985). Here, like in Rodriguez-Miranda, the Reach and Apply Defendants were on notice that Plaintiff "sought to hold them liable" for their continued operations of the Defendants' enjoined business . See id. at 39 (motion to join constitutes sufficient notice); Complaint, Exhibit E thereto (cease and desist letter dated May 15, 2025). In fact, in granting the preliminary injunction, this Court necessarily found that the Plaintiff had a likelihood of success on the merits, thereby placing Defendants on notice that they could be liable for a judgment on such claims. See ECF 50. Reach and Apply Defendants have taken the very receivables, assets and goodwill that would directly impact Plaintiff's ability to recover on such judgment. They must be held accountable, and they must not be permitted to squander off with the fruits of Defendants improper competition. Thus, this Court should find

that it has proper jurisdiction over the Reach and Apply Defendants and deny the Motion to

Dismiss, as to Paterno and by corollary (to the extent they retain counsel, as Massachusetts law

and this Court require), to the corporate reach and apply Defendants.

## CONCLUSION

For all of the reasons above, this Court should find that there is proper jurisdiction over

the Reach and Apply Defendants and deny the Reach and Apply Defendants' Motion to Dismiss.

RESPECTFULLY SUBMITTED,

ROOTERMAN, LLC

By its counsel,

Date: August 1, 2025

*/s/ Jeffrey M. Rosin*
Jeffrey M. Rosin, BBO# 62916
Lisbeth Valdez, BBO# 715826
O'HAGAN MEYER, PLLC
140 Kendrick Street, Bldg. C
Needham, MA 02494
Telephone: (617) 843-6800
Fax: (617) 843-6810
jrosin@ohaganmeyer.com
lvaldez@ohaganmeyer.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of August 2025, *Plaintiff's Opposition to the Reach and Apply Defendants' Motion to Dismiss for Lack of Jurisdiction* was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Lisbeth Valdez*
Lisbeth Valdez