IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rooterman, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>Klodian Belegu, Quality Air Care Corporation, RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation.<br>*Defendants,*<br><br>Sandro Paterno, Paterno & Associates and 911 Plumbing & Restoration Inc.<br><br>*Reach and Apply Defendants.* | Civil Action No. 1:24-cv-13015 |

## PLAINTIFF'S MOTION TO REDUCE BOND

Pursuant to Local Rule 67.1(h), Rooterman, LLC ("Rooterman"), hereby seeks a reduction in the amount of the security bond Ordered by the Court. As grounds for this request, discovery has made clear that defendant Klodian Belegu's Declaration that led to this Court's determination of the amount of the bond is (a) false and (b) substantial material information was omitted. Meanwhile, Rooterman was required by bonding companies to put up $535,000 in cash for the $535,000 bond and Rooterman did so, but this amount was premised upon the Court's accepting the representations in Belegu's Declaration as true.[1]

Local Rule 67.1(h) states, in relevant part: "The amount or terms of a bond or similar undertaking may be changed at any time as justice requires. . . ." As set forth below, justice requires a reduction in the amount of the $535,000 bond here.

---

[1] This is not the first time Belegu has put false information into his Declarations. See ECF 29 at pp. 2-5, 7; ECF 45 at pp. 3-4, 9-10.

#8320587v1

## INTRODUCTION

On April 11, 2025, this Court ordered an injunction preliminary enjoining Defendants Klodian Belegu, Quality Air Care Corporation, RM Water Damage Restoration LTD, and 911 Sewer & Drain (collectively, "Defendants") from competing with Rooterman by providing various plumbing, drain cleaning and restoration services in the same area as their former Franchised Business through September 2026. See ECF 50. The Court will recall that it initially found a bond of $300,000 proper, which relied, in part, on the Belegu's statements about his income from his operations of the defendant corporations. See ECF 50 at p. 18. In particular, Belegu declared under penalties of perjury: "If the Court does see fit to issue a preliminary injunction, then the bond should be at least a year's lost income for Defendants. Such is at least $3,000,000." See ECF 18-1 ¶ 55 (emphasis added).

On April 15, 2025, Defendants filed a motion for a partial stay of the preliminary injunction and attested the amount of the bond would not have covered the amount of expenses they would incur, and that they would incur $535,000 in expenses (including rent and auto loans) during the period they would be enjoined. See ECF 54. While the Court denied the Defendants' motion, it did order the amount of security bond increased to $535,000 to cover the expenses which Belegu declared, under oath, that his businesses would incur. See ECF 63. As such, Plaintiff posted the $535,000 security bond, fully in cash, on May 20, 2025. See ECF 87.[2]

Since then, Plaintiff has learned:

- On April 15, 2025, the same date that Belegu attested his businesses would incur $535,000 while enjoined, Defendants transferred all of their assets in the enjoined

---

[2] In the course of attempting to obtain a bond, Plaintiff learned from bonding companies that there was no ability to put up a "percentage" of the bond amount, which Plaintiff had thought would be the case similar to obtaining a "bail bond." It took time for Plaintiff to explore that option with bonding companies, but ultimately, there was no such option, leaving Plaintiff with only a full cash option.

- businesses, including accounts receivable which were the fruits of the Defendants continued violations, to Sandro Paterno, Belegu's attorney of two decades, and to Paterno's new business 911 Plumbing and Restoration Inc., for the release of a $124,000 unrecorded obligation due to Paterno's law firm, Paterno & Associates. See Exhibit 1.

- On that same date, Defendants transferred all of their trucks and the equipment within them to Edison Qose for the release of $285,000 in unrecorded obligations owed to Qose for "works performed" by Qose and his company, EDD General Construction LLC. See Exhibit 2.

- Within days thereafter, both 911 Plumbing and Restoration Inc. and EDD General Construction LLC filed to operate under the DBA "911 Sewer & Drain" to perform "drain cleaning" services. See Exhibit 3, NJ Business Entity Documents for 911 Plumbing and Restoration Inc.; Exhibit 4, NJ Business Entity Documents for EDD General Construction LLC. Moreover, 911 Plumbing and Restoration Inc. filed to operate under a second DBA of "RM Water Damage Restoration LTD". See Exhibit 3.[3]

- Furthermore, Belegu's entities have never made an income of $3,000,000. Rather, in 2023 and 2024, defendant RM Water Damage Restoration LTD had a net income of $2,100 and $9,790 respectively (see Exhibit 6 *infra*), clearly significantly less than the $3,000,000 which Belegu claimed under oath was the "income" of this business. Even in 2023, looking at Mr. Belegu's joint tax return summary page, it shows only $156,509 in personal income from his three admitted plumbing and restorations businesses he owned

---

[3] In effect, because of this, the enjoined defendants 911 Sewer & Drain and RM Water Damage Restoration, were operating again, identically, under Paterno's "new" entity, and thereby plainly violating the injunction. See Exhibit 3,; see also Exhibit 1; Complaint ¶¶ 73-86; Complaint, Exhibit F; ECF 59-1.This matter is being separately addressed by way of Plaintiff's opposition to those entities' motion to dismiss claims against them.

3

(see Exhibit 7 (tying $153,010 from Rooterman of New Jersey, $4320 from Water Damage Solutions of New Jersey, and -$821 from Sewer Man).[4]

For these reasons, and those further reasons below, this Court should reduce the security bond to what Belegu's actual business income was in 2024, about $10,000, or alternatively, no greater than $150,000, which is at best, what Belegu's financials show is his possible salary lost by not competing. However, since Belegu did compete (improperly) from the time of his franchise termination September 16, 2024 to April 11, 2025, and earned substantial income and receivables during that time, this Court should exercise its discretion and re-set the security bond to the lower end of that proposed range.

## ARGUMENT

"The amount or terms of a bond or similar undertaking may be changed at any time as justice requires. . . ." Loc. R. 67.1(h); see also 7-Eleven, Inc. v. Grewal, 60 F. Supp. 3d 272, 286 (D. Mass. 2014) (noting court's discretion in whether to issue injunction without requiring bond and finding a $150,000 bond proper). Here, justice requires reducing the bond to $10,000 or no greater than $150,000 as the facts supporting the $535,000 bond Ordered are not what Defendants' claimed; not even close.

In their motion for a partial stay, Defendants stated that the total expenses they would incur while enjoined would be $535,000. See ECF 54. Specifically, Belegu attested, under the pains and penalties of perjury, that the amount of the bond was insufficient to cover the amount of his expenses, at a total of $535,000, the entities would incur while enjoined, including:

---

[4] These figures were learned in the course of a confidential First Circuit mediation, but they are factual and supported by the actual documents produced in the mediation, which are subject to discovery. Thus, and because those underlying facts are otherwise subject to discovery, they are not confidential. See Ark. Teacher Ret. Sys. v. State St. Bank & Trust, Co., 523 F. Supp. 3d 181 (D. Mass. 2018) ("the mediation privilege does not protect from disclosure any evidence otherwise and independently discoverable merely because it was presented in the course of the mediation").

      (a) two business loans in the amount of $120,000;
      (b) credit card debt in the amount of $70,000;
      (c) office rent at "over" $9,000 a month, or a total of $171,000 while enjoined;
      (d) warehouse rent at $5,500 a month, or a total of $104,500 while enjoined; and
      (e) two work vehicles with auto loans of around $70,000.

See id. at pp. 5-6 (totaling $535,000, the amount of the bond eventually Ordered); see also ECF 54-5, Declaration of Klodian Belegu ¶¶ 5-9.[5] However, the Defendants businesses would never have incurred these expenses, as on the same date Defendants filed the Motion for a Partial Stay of the then $300,000 required bond, Belegu entered into agreements transferring his businesses assets and vehicles to his associates. See Exhibit 1; Exhibit 2, Notably, both of these agreements state that the purpose of the transfers is "due to a Court Order" which enjoined the businesses from continuing to compete in violation of the Franchise Agreements. See Exhibit 1; Exhibit 2.

    In the agreement between the Defendants and Paterno, Belegu agreed to "transfer the assets of the corporation" to Paterno and 911 Plumbing and Restoration Inc. for the release of $124,000 in an unrecorded obligation due to Paterno & Associates. See Exhibit 1. The agreement transfers all of RM Water Damage Restoration LTD's "office furniture and accounts receivable," as well as a transfer of the office lease for the 1049 Church Road location. However, this transfer also included assets, and not just receivables, but customer goodwill, which were the fruits of the violation of the non-compete and use of the trademarks for 7-8 months post-termination. See ECF 89, Second Amended Complaint (hereinafter, "Complaint"), ¶ 132.

    In the agreement between the Defendants and Edison Qose, Belegu agreed to transfer nine (9) trucks used for plumbing and remediation, as well as "all respective equipment associated with the above trucks" for the release of $285,000 in unrecorded obligations owed to

---

[5] Plaintiff notes that the "total" expenses for the office and warehouse rent are seemingly calculated at a period of 19 months, despite the 17 month period between when the injunction was ordered in April 2025 through the period of enjoinment of September 2026.

5

Qose. See Exhibit 2. Defendants have transferred all of the trucks and equipment of their enjoined businesses to Qose, as the agreement between Defendants and Paterno states that the "trucks and equipment of the corporation are expressly excluded from this sale and shall be sold separately to Edison Qose." See Exhibit 1. Specifically, this obligation is for "works performed by" Qose to Defendants. See Exhibit 2. There is no further description as to what "works" were performed, when these obligations were incurred, or even as to the calculation of total obligations owed. Moreover, the agreement states that the assets are "free from liens, encumbrances, and legal claims," despite the fact that the Defendants still owed $70,000 in loans for two of these vehicles. See id. Similarly to Paterno, Qose's entity "EDD General Construction LLC", which has a main business address in Little Falls, New Jersey and was formed with the purpose of engaging in general construction work, has filed to operate under the DBA "911 Sewer And Drain" and will engage in "drain cleaning" work. See Exhibit 4. In fact, it seems as though this "911 Sewer & Drain of Little Falls" has been operating and providing services to customers in New Jersey, namely through the website of the enjoined 911 Sewer & Drain. See Exhibit 5, "911 Sewer & Drain of Little Falls" webpage on 911sewerdrain.com; see also Google, "911 Sewer & Drain of Little Falls", https://share.google/Y0JzxNMuSnFeauAB2.

In doing so, Belegu clearly eliminated expenses (c)-(e) from his Declaration, quoted above, on the same day he declared them; moreover, his failure to inform the Court he was doing so on the same day he made those transfers is a material omission from the Declaration that led to the $535,000 bond, and certainly not an act of candor to the Court. For lack of any other better words, these statements under oath were both false and misleading, and such omissions of

6

material fact also lead to substantial doubt about expenses (a)-(b) from Belegu's Declaration (expenses he submitted no proof to support).[6]

And again, most troubling, Belegu made these misrepresentations about the amount of expenses that the enjoined businesses would incur, while knowing that these debts and liabilities were in the process of being transferred on the same day to his colleagues, pursuant to the agreements signed the exact same day as the Declaration. Those colleagues would, in effect, set up "their own" identical businesses to take over the customer base, operations and goodwill of Belegu's businesses. See Exhibit 3, Exhibit 4.

The elimination of Belegu's expenses in this regard is also only one-half of the story of the false statements in Belegu's Declaration. Plaintiff has received financial documents from Defendants with clearly belie Defendants claims regarding their yearly income. Specifically, Plaintiff has learned that Defendants businesses do not have anywhere near an income of $3,000,000, as attested to by Belegu. The $3,000,000 number that Belegu misrepresented as income only reflects the gross sales and receipts of RM Water Damage Restoration LTD, which is totaled at over $3,000,000. However, apparently due to expenses of about $1.8 million dollars and cost of goods of about $1.2 million, in 2024, RM Water Damage Restoration LTD only had a net income of $9,790, and less in 2023. See Exhibit 6.[7] In 2023, as set forth above, Mr. Belegu's joint tax return summary page, it shows only $156,509 in personal income from his three admitted plumbing and restorations businesses he owned (see Exhibit 7 (tying $153,010

---

[6] For example, it is unclear if, as part of the transfer, the transferees took on any of Belegu's business loans, or entered into some form of a deal to pay those loans for Belegu even if they were, in fact, an obligation of Belegu. It is also unclear if those loans were business loans only without a personal guarantee, and whether Belegu truly needed to pay them after the transfers of the businesses' assets at all.

[7] Based on other information learned in discovery, Belegu additionally claimed over $100,000 in W-2 wages from RM Water Damage Restoration LTD in 2024.

from Rooterman of New Jersey, $4320 from Water Damage Solutions of New Jersey, and -$821 from Sewer Man)

In short, Defendants' theoretical "loss" of actual "income" (as opposed to gross revenues) from business operations is a small fraction of the $3,000,000 Mr. Belegu led this Court to believe he earned in ECF 18-1 ¶ 55. And, Belegu's personal income was nothing close to $3,000,000.

Moreover, it should not escape observation that when Belegu transferred his assets upon this Court's April 11, 2025 Order, he received value from the "sale" of assets of the enjoined corporations, in an amount exceeding $210,000.  Notably, if it is assumed from the financials that Belegu took a salary from his enjoined businesses of approximately $140,000, this $210,000 puts Belegu essentially "even" by the time the Court's injunction expires in approximately 1.5 years by September 2026.  That is, the approximate 17-18 months of the Court's injunction from April 11, 2025 to September 2026 is approximately 1.5 years of "lost income" for Belegu, or $140,000 x 1.5 = $210,000.  And, it is important to highlight that from September 2024 to April 11, 2025 when Belegu was terminated as a franchisee but improperly competing and Ordered on April 11, 2025 to stop, he presumptively earned about 8 months of that same income, or an estimated $80,000-$100,000 enjoying the fruits of Plaintiff's goodwill and trademarks when he should not have been.

For all of these reasons, this Court should exercise its discretion to reduce the amount of the $535,000 bond.

## CONCLUSION

For all of the reasons above, Plaintiff respectfully requests that this Court reduce the amount of security bond to $10,000 or, alternatively, and amount no greater than $150,000.

RESPECTFULLY SUBMITTED,

ROOTERMAN, LLC

By its counsel,

Date: August 11, 2025

*/s/ Jeffrey M. Rosin*
Jeffrey M. Rosin, BBO# 62916
Lisbeth Valdez, BBO# 715826
O'HAGAN MEYER, PLLC
140 Kendrick Street, Bldg. C
Needham, MA 02494
Telephone: (617) 843-6800
Fax: (617) 843-6810
jrosin@ohaganmeyer.com
lvaldez@ohaganmeyer.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of August 2025, *Plaintiff's Motion to Reduce Bond* was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Jeffrey M. Rosin*
Jeffrey M. Rosin

**CERTIFICATE OF CONSULTATION**

I, Jeffrey M. Rosin, hereby certify that on this 8th day of August 2025, I conferred by e-mail with counsel for the Defendants, providing the information above. The parties were unable to reach an agreement.

*/s/ Jeffrey M. Rosin*
Jeffrey M. Rosin
