UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rooterman, LLC,<br><br>             Plaintiff,<br><br>     v.<br><br>Klodian Belegu, Quality Air Care Corporation, Water Damage Restoration, Ltd f/k/a RM Water Damage Restoration LTD and 911 Sewer & Drain Corporation,<br><br>             Defendants<br><br>Sandro Paterno, Paterno & Associates, and 911 Plumbing & Restoration, Inc.,<br><br>             Reach and apply Defendants. | Civil Action No. 1:24-cv-13015<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REDUCE BOND** |

    Rooterman offers no valid reason why its preliminary injunction bond should be reduced. If anything, it confirms (albeit through a sanctionable use of evidence obtained as part of the 1st Circuit mediation program) that Defendants' original request that the bond be set at $3 million was proper. Not only is there a demonstrable loss of $3 million in annual revenue, Defendants have also recently ascertained that the entire franchise agreements, which include the non-compete clause, violate the FTC's Franchise Disclosure rule and, therefore, are unenforceable. This is in addition to reasons previously given as to why Defendants are likely to succeed in this matter and will need to be compensated from the bond for the harms caused by the preliminary injunction. The motion to reduce bond (ECF No. 113) should be denied.

    First, Plaintiff claims that the $535,000 in expenses previously documented by Defendants Belegu and Water Damage Restoration no longer justify the bond because the business assets were transferred to avoid expenses. However, absent from Rooterman's presentation is any recognition

that it means the applicable defendants had to forfeit substantial and valuable assets in order to avoid incurring much of the ongoing expenses (it did not cancel the $70,000 in credit card debt). The purpose of the bond is to address the harm of a preliminary injunction in the event the plaintiff loses the case.  If *and when* Rooterman loses, Mr. Belegu and WDR will need to repurchase the assets to resume business and will need the bond proceeds to do so.  Mr. Belegu will not be "even" upon the expiration of the preliminary injunction and only a serious misunderstanding or misrepresentation of economics and accounting could suggest as much.

Second, the exhibits filed show gross receipts in 2023 of $4,101,506 (ECF No. 113-7 at 3, 113-6 at 2) and total income in 2024 of $3,131,253 (ECF No. 113-6).  While Plaintiff points to net take-home pay to Mr. Belegu, once more this ignores the reality that debts and expenses do not disappear upon the entry of a preliminary injunction – but the injunction does cut off positive cash flow, while debts and expenses continue to accrue.

Moreover, the P&L statement shows significant reinvestment in the business, which is now all lost, and which Mr. Belegu could have taken in wages instead.  A bond of only 1/6 the demonstrable lost gross revenue is an unjust gift to Rooterman. Rather than demonstrating cause for reduction, this justifies Defendants' initial request for a $3 million bond.[1]

Third, the Court should not reward Rooterman's gross violation of mediation confidentiality.  Rooterman previously filed copies of the document appearing at ECF 113-1, but Defendants did not seek sanctions at that time as they were unsure of the source.  However, Rooterman could only have obtained ECF Nos. 113-6 (profit and loss statement) & 113-7 (tax

---

[1] Although Rooterman spends 8 pages in argument, it is largely repetitive and boils down to these first two points—Rooterman's lack of understanding that transactions require giving something up and that a loss of gross revenue is a loss that is not necessarily offset by a concomitant reduction in expenses.

return) as part of a set of documents transmitted under the confidentiality of 1st Cir. Local Rule 33.0(c). In fact, 113-6 was specifically *created for purposes of the mediation*. The document at ECF No. 113-2 was also part of the transmission. Hon. Patrick J. King indicates this Court should determine how best to handle this breach of confidentiality. Although Rooterman claims mediation confidentiality doesn't matter because some of the documents may have been "independently discoverable" citing *Ark. Teacher Ret. Sys. v. State St. Bank & Trust Co.*, 523 F. Supp. 3d 181, 195 (D. Mass. 2018), the profit & loss statement does not remotely fit that category as it was developed for mediation purposes only. Rooterman should not be rewarded for its egregious misconduct.[2]

Finally, while the Court previously determined that the non-compete provision was enforceable under Massachusetts law (which Defendants are presently challenging on appeal), Defendants' arguments at that time were in their nascency. The "Rooter-man" brand is a franchise. As such, it is governed by the Federal Trade Commission's Franchise Rule, 16 CFR Parts 436 & 437. Pursuant to 16 C.F.R. § 436.2, it is an unfair or deceptive act under Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45), and derivatively, under G.L. c. 93A, § 2(b),[3] for a franchisor to have failed to furnish the required disclosure document before the franchise agreement is executed. Plaintiff claims the benefit of the actions of A Corp., but A Corp. made a glaring omission from its disclosures. That omission renders the franchise agreement(s) subject to rescission. *See Commonwealth v. DeCotis*, 366 Mass. 234, 245 (1974) (stating c. 93A "granted full authority to the courts to use their traditional equity power to fashion decrees to remedy the wrong complained of and to make the decree effective").

---

[2] Defendants reserve the right to separately move for sanctions.
[3] A violation of the Disclosure Rule is a *per se* violation of Chapter 93A upon a showing of causation. *See Zotbelle, Inc. v. Kryolan Corp.*, 416 F. Supp. 3d 33, 55 (D. Mass. 2019).

Under 16 C.F.R. § 436.5(m)(4), if a principal mark "is not registered on the Principal Register of the United States Patent and Trademark Office," A Corp. was required to state: "We do not have a federal registration for our principal trademark. Therefore, our trademark does not have many legal benefits and rights as a federally registered trademark. If our right to use the trademark is challenged, you may have to change to an alternative trademark, which may increase your expenses."  The principal marks were "Rooter-Man", "Rooter-Man to the Rescue", and "Rotor-Man".  (ECF No. 7-3 at 7).  However, at no point in the disclosure is the fact that A Corp. did not have a Standard Character Mark in any of those principal marks made, whether in the FTC's required language or otherwise.  *See, e.g.,* **Exhibit A**, Monmouth & Ocean Counties Disclosure, Item 13, Trademarks, at 13-17.  In fact, not only is this mandatory language missing, there is an express misrepresentation—A Corp. claimed "ROOTERMAN (words only)" for Registration No. 3,859,654 (*id.* at 15).  Yet, it is not a Standard Character Claim per 37 CFR § 2.52(a).  Rather, it is a Special form drawing, per § 2.52(b), described as:

> The mark consists of The wording "ROOTER MAN" in stylized and upper-case letters as demonstrated in the sample. The letters in the word "ROOTER" are in solid red. The letters in word "MAN" are blue lined around the white letters. The two words are connected by a blue dot.

**Exhibit B** (Registration Certificate for Reg. No. 3,859,654).  According to the USPTO database, there has never even been an application for standard character marks in "Rooter-Man", "Rooter-Man to the Rescue", and "Rotor-Man".[4]  Only once was a standard character mark filed for anything remotely related to the brand—it was in 1980, for "Rooterman", by a different entity, Rooterman, Inc., of Cincinnati, Ohio, and which application (No. 73456290) was abandoned in 1985 for failure to respond to an office action.  **Exhibit C** (TSDR Summary, Serial No. 73456290).

---

[4] The sole "Rotor-Man" related mark, which is not a standard character mark, Reg. No. 1,848,341, was cancelled on Feb. 14, 2025.

Simply put, the most principal of marks, the name "Rooter-man", which A Corp. purported to license, was not registered on the Principal Register and A Corp. failed to make the FTC's required disclosure. Thus, the franchise agreements with Mr. Belegu and QAC[5] were invalid for violation of the disclosure rule and the non-compete clause therein is unenforceable. As a result, Defendants are likely to prevail in this litigation and will require compensation for the lost revenue and other financial harms occasioned by the preliminary injunction. Even the current bond of $535,000 is insufficient and, in no way, should be reduced.

The Court should deny Plaintiff's sanctionable motion to reduce the bond.

Dated: August 25, 2025.                    Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
Jay M. Wolman, BBO# 666053
jmw@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

*Attorneys for Defendants.*

---

[5] And, presumably, throughout the entire Rooterman franchise system.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2025 the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza