UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROOTERMAN, LLC,

     Plaintiff,

        v.

KLODIAN BELEGU, QUALITY AIR CARE
CORPORATION, RM WATER DAMAGE
RESTORATION LTD, and 911 SEWER &
DRAIN CORPORATION,                      CIVIL ACTION NO. 24-13015-PBS

     Defendants,

        and,

SANDRO PATERNO,
PATERNO & ASSOCIATES, and
911 PLUMBING & RESTORATION INC.,

     Reach and Apply Defendants.

REPORT AND RECOMMENDATION ON
<u>REACH AND APPLY DEFENDANTS' MOTION TO DISMISS (#125.)</u>[1]

KELLEY, U.S.M.J.

I. <u>Introduction.</u>

     On December 6, 2024, Rooterman, LLC, a provider of plumbing, sewer, and drain cleaning

services, brought this suit against Klodian Belegu, Quality Air Care Corporation, and RM Water

Damage Restoration LTD, alleging that they had infringed on its "Rooterman" trademarks and

violated certain "post-franchise restrictive covenants" when, without permission, they continued

to use its marks and unfairly compete against it despite the fact that the thirteen franchise

agreements they had operated under had been terminated.  (#1 ¶¶ 1, 11); *see* #89 ¶ 61.

     Ten days later, on December 16, 2024, Rooterman filed an amended complaint and named

---

[1] This matter was referred to this court for report and recommendation on October 9, 2025.  (#127.)

an additional entity, 911 Sewer & Drain Corporation, as a defendant. (#7.) On December 19, 2024, Rooterman filed a motion for preliminary injunction (#9),[2] seeking to enjoin the four defendants "from the unauthorized use of the 'Rooterman' trademarks, service marks, and other marks . . . and to restrict Belegu (either individually, or through his entities) from competing and soliciting and using [Rooterman's] confidential and proprietary information in violation of the restrictive covenants in his terminated franchise agreements." (#9 at 1.)

On April 11, 2025, District Judge Saris allowed so much of Rooterman's motion that sought enforcement of the noncompetition provision of the franchise agreements. *See* #50. On May 28, 2025, Rooterman filed a second amended complaint (#89), adding allegations that Belegu and his businesses, Quality Air Care Corporation, RM Water Damage Restoration LTD, and 911 Sewer & Drain Corporation, (collectively, "the Defendants"), had fraudulently transferred substantial business assets after the April 11 Order to Sandro Paterno, Paterno & Associates, and 911 Plumbing and Restoration Inc. ("911 Plumbing") as part of a conspiracy to continue competing against Rooterman, and lodging claims against the three new defendants.[3] (#89 ¶¶ 1-6, 9-11.)

Paterno, Paterno & Associates, and 911 Plumbing (the "Reach and Apply Defendants") now move to dismiss Rooterman's claims against them for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); for improper venue pursuant to Fed. R. Civ. P. 12(b)(3); and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (#125.) Rooterman opposes. (#126.)

For the reasons explained below, the court recommends that the motion (#125) be denied.

II. <u>Background.</u>

The facts are drawn from Rooterman's second amended complaint and are accepted as true

---

[2] Rooterman previously had filed a motion for a preliminary injunction on December 6, 2024, together with the original complaint. *See* #2.

[3] Though titled as "911 Plumbing & Restoration Inc." in this case's caption, the parties consistently refer to the business as "911 Plumbing and Restoration Inc." This court will do the same.

at this stage of the case.[4]

### A. The Court Enjoins the Defendants from Competing with Rooterman.

As mentioned above, on April 11, 2025, Judge Saris allowed in part and denied in part Rooterman's motion for a preliminary injunction, denying Rooterman's request to bar the Defendants from using its marks, but allowing Rooterman's request for an injunction enforcing the noncompetition provision of its franchise agreements. (#50 at 19). That Order stated:

> Defendants shall not directly or indirectly engage in, hold any interest in, or be involved in any way with any of the services comprising the Rooterman system for two years following termination of the franchise agreements (i.e., through September 16, 2026) within the zip codes constituting the franchise territories under the thirteen agreements signed by Belegu on behalf of himself, QAC, or Water Damage Solution of Bergen LLC.

Id.

### B. Four Days After Judge Saris' Order on the Motion for a Preliminary Injunction, the Defendants Transfer Their Assets to the Reach and Apply Defendants.

In Rooterman's second amended complaint, it alleges that after the court's April 11 Order, the Defendants "fraudulently transferred all of their assets in their businesses to Reach and Apply Defendants Paterno and Paterno & Associates, through the entity 911 Plumbing and Restoration Inc." (#89 ¶¶ 5, 75.) As Rooterman explains, four days after Judge Saris ruled on Rooterman's motion for a preliminary injunction, Paterno, a citizen of New Jersey and the owner of New York-based law firm Paterno & Associates, who was Belegu's "long-time lawyer," entered into a "Contract for the Sale of Assets" with Belegu. Id. ¶¶ 13-14, 75; see #126-4, "Exhibit 4." That contract,[5] dated April 15, 2025, lists defendants RM Water Damage Ltd. and Belegu as "Sellers"

---

[4] See McKee v. Cosby, 874 F.3d 54, 59 (1st Cir. 2017); Barrett v. H&R Block, Inc., 652 F. Supp. 2d 104, 112 (D. Mass. 2009) (additional citation omitted).

[5] The court considers the contract (#126-4), which is attached to Rooterman's opposition to the motion to dismiss, to be part of the record. Ordinarily, on a motion to dismiss, a court may only consider facts alleged in the complaint and exhibits attached to it. See Freeman v. Town of Hudson, 714 F.3d 29, 35-36 (1st Cir. 2013) (additional citations omitted). Certain "'narrow exceptions'" exist, however, for "'documents the authenticity of which are not disputed by the parties; . . .

and Paterno as "Buyer" and reads:

. . .

Recitals

WHEREAS, in November 2022, the Sellers entered into an agreement with the Buyer whereby the Buyer would furnish legal services and be paid $13,000 per month for a term of one year, which Agreement was renewed for the years 2023, 2024, and 2025;
. . .

WHEREAS, the Sellers now owe the Buyer $91,000 for unpaid payments for missing months and an additional $33,000 for the shortfall over the last six months, totaling $124,000 in outstanding obligations;

WHEREAS, the Sellers are now forced to shut down their business due to a court order and are unable to pay the outstanding bills;

WHEREAS, the Sellers desire to transfer the assets of the corporation to the Buyer, including office furniture and accounts receivable, in exchange for the release of their obligations to the Buyer's law firm;
. . .

Article 1: Sale of Assets

1.1 The Sellers agree to sell, assign, and transfer to the Buyer, and the Buyer agrees to purchase, the following assets of the Sellers' corporation:

- All office furniture;
- All accounts receivable.

. . .

1.3 As soon as possible, the Buyer shall transfer the lease of the building at 1049 Church Road, Toms River to 911 Plumbing and Restoration Inc. a new Corporation Incorporated by the Buyer.
. . .

Article 3: Representations and Warranties

3.1 The Sellers represent and warrant that:

---

official public records; . . . documents central to plaintiffs' claim; [and] . . . documents sufficiently referred to in the complaint.'" *Id.* at 36 (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)) (ellipses and alteration in original). The "Contract for the Sale of Assets" submitted by Rooterman fits into three of these four categories: it is referenced in detail throughout the second amended complaint; it is at the heart of Rooterman's fraudulent transfer claim; and neither party disputes its authenticity.

- They have full authority to enter into this Contract and transfer ownership of the assets;
- The assets are free and clear of any liens or encumbrances, except as disclosed herein[.]

(#126-4 at 1-2.)

C. Paterno Incorporates "911 Plumbing."

According to Rooterman, the same day the "Contract for the Sale of Assets" was signed, Paterno incorporated a new company, 911 Plumbing and Restoration Inc., in New Jersey, to continue the operations of the businesses that had been enjoined: Quality Air Care Corporation, RM Water Damage Restoration LTD, and 911 Sewer & Drain Corporation. (#89 ¶¶ 72-75, 80); *see* #126-3, "Exhibit 3," at 1-2, "New Jersey Department of the Treasury, Certificate of Incorporation."[6]

When incorporating 911 Plumbing, Paterno used the same principal place of business as that of RM Water Damage Restoration LTD, and two days after its incorporation, Paterno filed a "Certificate of Alternate Name" to conduct business as "911 Sewer and Drain."[7] (#89 ¶¶ 75-76, 85, 90); *see* #126-3 at 6, April 17, 2025 "Certificate of Alternate Name." On May 29, 2025, he filed a second Certificate on 911 Plumbing's behalf to conduct business as "RM Water Damage Restoration." (#126-3 at 5, May 29, 2025 "Certificate of Alternate Name.") According to Rooterman, 911 Plumbing now "conducts the same business in the same location as the restricted businesses, with the same telephone number(s) and for the same customers, and employs

---

[6] For the reasons set out in n.5, *supra*, the court considers #126-3, an attachment to Rooterman's opposition which contains copies of 911 Plumbing's State of New Jersey Certificate of Incorporation and two State of New Jersey Certificates of Alternate Name, to be part of the record. These documents are copies of official public records, and their authenticity is not at issue. *See Freeman*, 714 F.3d at 36.

[7] On April 23, 2025, Paterno, as "incorporator, sole shareholder, and sole board member" of 911 Plumbing, stated in a signed declaration filed in this matter that "[s]ince the entry of the injunction, upon information and belief, Water Damage Restoration, Ltd., [] has ceased operations" and that, "[f]or New Jersey customers, services are now provided by my company, 911 [Plumbing and Restoration, Inc] d/b/a 911 Sewer & Drain." (#89 ¶ 77) (quoting #59-1 ¶¶ 2, 3).

substantially all of the same employees[.]"  (#89 ¶ 85.)

    D. <u>Rooterman Sends Paterno a Cease and Desist Letter.</u>

       On May 15, 2025, Rooterman sent Paterno a letter warning him "to cease and desist his actions to aid and abet the Court Order [sic] [.]"  *Id.* ¶ 78.[8]  Paterno responded the same day, on Paterno & Associates letterhead, acknowledging that the court order restricted Belegu and other Defendants from competing with Rooterman, but stating that he, as Belegu's creditor, had established 911 Plumbing "'[t]o safeguard [his] interests'" and "'recover the funds owed'" to him and his law firm by "'acquir[ing] the assets of Mr. Belegu's previous corporation, including its accounts receivable.'"  *Id.* ¶¶ 79-80 (quoting #89-6 at 1-2, "Exhibit F").  Paterno asserts that 911 Plumbing "operates independently as a distinct entity engaged in the Plumbing and Restoration business within New Jersey."  (#89-6 at 2.)

       Rooterman argues, however, that Paterno incorporated 911 Plumbing "to effectuate the transfer [of] substantially all of the assets out of the then existing defendant corporations, and with full knowledge of the injunction granted April 11, 2025," in order "to circumvent [that] injunction and serve as a means for Belegu to satisfy debts to his counsel as well as to continue the business of Belegu's company under a related umbrella" in the same area as Belegu's franchised territory,[9] "in violation of the exclusivity, non-competition, non-solicitation, and/or confidentiality protections in Belegu's franchise agreements" with Rooterman.  (#89 ¶¶ 14, 42.)

       Additional facts have been added below where appropriate.

III. <u>Legal Standards.</u>

    A. <u>Fed. R. Civ. P. 12(b)(2) – Lack of Personal Jurisdiction.</u>

---

[8] The court assumes Rooterman meant to say: "aid and abet [*the violation of*] the Court Order." *See* #89-5 (Cease and Desist letter, which says "aid and abet the violation of" the Order).

[9] Rooterman claims that those assets include accounts receivable that represent the fruits of "improper competition" and alleged damages in this litigation.  (#89 ¶ 80.)

"It is basic law that a court must have personal jurisdiction over the parties to hear a case[.]" *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 617 (1st Cir. 2001). The plaintiff carries "the burden of showing that personal jurisdiction is both statutorily authorized and consistent with the constitutional requirements of due process." *Motus, LLC v. Cardata Consultants, Inc.*, 23 F.4th 115, 121 (1st Cir. 2022) (additional citations omitted). "'[A] district court may choose from among several methods for determining whether the plaintiff has met [this] burden[,]'" the most common of which assesses personal jurisdiction by using the "prima facie approach[.]" *Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 51 (1st Cir. 2020) (quoting *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016)) (additional citation omitted); *see Carp v. XL Ins.*, 754 F. Supp. 2d 230, 232 (D. Mass. 2010).

Under this method, a court "draw[s] the relevant facts from 'the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts'" and "'ask[ing] only whether the plaintiff has proffered facts that, if credited, would support all findings essential to personal jurisdiction.'" *Ward v. Alphacore Pharma, LLC,* 89 F.4th 203, 209 (1st Cir. 2023) (first quoting *Baskin-Robbins*, 825 F.3d at 34, and then *Chen*, 956 F.3d at 51) (additional citation and quotations omitted). In making this showing, a plaintiff cannot "rely solely on conclusory averments but must 'adduce evidence of specific facts.'" *Chen*, 956 F.3d at 54 (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995)).

B. <u>Fed. R. Civ. P. 12(b)(3) – Improper Venue.</u>

Venue is governed by 28 U.S.C. § 1391, which provides, in relevant part, that . . .

(b) . . . [a] civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). When venue has been challenged, "'the burden is on the plaintiff to establish that venue is proper in the judicial district in which the action has been brought.'" *Turnley v. Banc of Am. Inv. Servs.*, 576 F. Supp. 2d 204, 211 (D. Mass. 2008) (quoting *Transamerica Corp. v. Trans-American Leasing Corp.*, 670 F. Supp. 1089, 1090 (D. Mass. 1987)) (additional citations omitted).

In evaluating a motion to dismiss for improper venue, "'[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits' and the Court 'may examine facts outside the complaint to determine whether its venue is proper.'" *Avidyne Corp. v. Lewis,* Civil Action No. 16-10179-JCB, 2016 WL 9402846, at *2 (D. Mass. Nov. 17, 2016) (quoting *Turnley*, 576 F. Supp. 2d at 211) (alteration in original); *see* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352 (3d ed. 2004).

C. Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim.

To survive a motion brought under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing such a motion, the court employs a two-step process in which it first "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (additional citation omitted). It then "take[s] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's

favor," to "see if they plausibly narrate a claim for relief." *Id.* (additional citation omitted).

III. Discussion.

    A. Rule 12(b)(2) – The Court Has Personal Jurisdiction over the Reach and Apply Defendants.

    A court may not reach the merits of any case without first determining that it has personal jurisdiction over the parties. *See Old Republic Nat'l Title Ins. Co. v. Bank,* Civil Action No. 24-12668-AK, 2025 WL 1737155, at *2 (D. Mass. June 23, 2025) (citing *Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 162 n.8 (1st Cir. 2022)).

    1. Personal Jurisdiction Derived from Fed. R. Civ. P. 65(d).

    Rooterman alleges that personal jurisdiction over the Reach and Apply Defendants is appropriate here, where they

> had actual knowledge of this Court's April 11, 2025 Order and actively aided and abetted Defendants[] in assisting [their] attempt to circumvent the Order, which was the fraudulent transfer of the Defendants' assets to them, thereby placing themselves within the personal jurisdiction of this Court's injunction and this Court.

(#89 ¶ 16.) Rooterman cites Fed. R. Civ. P. 65(d) as providing the basis for personal jurisdiction. *See* #126 at 9-12. Fed. R. Civ. P. 65(d), "Contents and Scope of Every Injunction and Restraining Order," provides, in relevant part, that:

> . . .
>
> (2) . . . [t]he order binds only the following who receive actual notice of it by personal service or otherwise:
>
> (A) the parties;
>
> (B) the parties' officers, agents, servants, employees, and attorneys; and
>
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d).

    If Rooterman's claim against the Reach and Apply Defendants was for contempt for violating Judge Saris' preliminary injunction Order enforcing the noncompetition provision in the

franchise agreements, *see* #50 at 19, there is no question that the court would have personal jurisdiction over the Reach and Apply Defendants. "[It] is well settled that Fed. R. Civ. P. 65(d) permits the court that issued the injunction to exercise jurisdiction over a non-party that knowingly aids and abets a violation of its order even though the non-party lacks other contacts with the forum." *Little Kids v. 18th Ave. Toys*, Civil Action No. 18-533WES, 2020 WL 7264267, at *10 (D.R.I. Dec. 10, 2020), *report and recommendation adopted*, 2021 WL 124241 (D.R.I. Jan. 13, 2021) (citing *Waffenschmidt v. MacKay*, 763 F.2d 711, 716-19 (5th Cir. 1985)); *see Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 75 (1st Cir. 2002) (acknowledging that nonparties "'in active concert or participation with the party specifically enjoined'" "may be liable for civil contempt") (additional citations omitted); *see also Chesterton Capital LLC v. Legacy Point Capital LLC*, Civil Action No. 16-10848-LTS, 2020 WL 823172, at *4 & n.12 (D. Mass. Jan. 31, 2020) (collecting cases).

But Rooterman is not proceeding against the Reach and Apply Defendants under Rule 65(d) for contempt; rather, his claims are for Fraudulent Transfer (Count VI); Civil Conspiracy (Count VII); Reach and Apply (Count VIII); and Accounting (Count IX). *See* #89 ¶¶ 128-52. As a court in this district recently concluded in a case with strikingly similar facts, where a plaintiff argued that personal jurisdiction over a newly-added defendant was supported by an allegation that the defendant knowingly violated an injunction, personal jurisdiction "grounded in Fed. R. Civ. P. 65(d)" could not "stretch[] to encompass" related claims beyond one for contempt. *18th Ave. Toys*, 2020 WL 7264267, at *10-11 (citing *Franko Maps LTD v. Nielsen*, Civil Action No. 16-00600-LEK-RLP, 2017 WL 4381669, at *12 (D. Haw. Sept. 29, 2017)). That court considered "whether a traditional due process analysis" involving the state's long-arm statute and due process concepts established specific personal jurisdiction over the defendant. *Id.* This court will conduct the same analysis here.

2. <u>Personal Jurisdiction Under the Traditional Analysis.</u>

In this case, subject matter jurisdiction is premised on the existence of a federal question. (#89 ¶ 15.)  "In the mine-run of federal question cases, Federal Rule of Civil Procedure 4(k)(1) erects the framework for establishing personal jurisdiction by service of process[,]" where "personal jurisdiction may derive either from a state long-arm statute that sets the boundaries of a state court's jurisdictional reach or from a federal statute permitting nationwide personal jurisdiction by service of process." *Motus, LLC*, 23 F.4th at 121-22 (citing Fed. R. Civ. P. 4(k)(1)(A), (C)).  Here, because the Reach and Apply Defendants limit their jurisdictional objection to constitutional grounds, "the court need only consider those particular grounds."  *Id.* at 122 (additional citation omitted).

To satisfy the constitutional demands of due process, "a defendant must have 'certain minimum contacts with [the forum state]'" such that exercising personal jurisdiction over that defendant is consonant with "'traditional notions of fair play and substantial justice.'"  *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (additional citation omitted) (alteration in original).  This inquiry is "'fact-specific'" and "'not susceptible of mechanical application; rather, the facts of each case must be weighed.'"  *Id.* (first quoting *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992), and then *Kulko v. Superior Ct. of Cal.*, 436 U.S. 84, 92 (1978)) (additional citations omitted).

"Personal jurisdiction may be either general or specific."  *Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010) (additional citation omitted).  The constitutional analysis for specific personal jurisdiction has three components: relatedness, purposeful availment, and reasonableness. *See Knox*, 914 F.3d at 690 (citing *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018)).

Rooterman must show that

(1) [its] claims directly arise out of or relate to the [Reach and Apply Defendants']

forum activities; (2) the [Reach and Apply Defendants'] forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering [their] involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable.

*Id.* For reasons explained below, this court finds that Rooterman has satisfied all three prongs.

      a. <u>Relatedness.</u>

The Reach and Apply Defendants argue that Rooterman's allegations "fall short of showing a nexus between any Massachusetts-based activities . . . and the alleged harms" Rooterman claims to have suffered where Rooterman "has failed to show any Massachusetts-based activities at all." (#125 at 4.)

"[T]he jurisprudence of minimum contacts casts a wide net," and an out-of-state defendant "may not always be able to elude th[at] net by such simple expedients as remaining physically outside the forum or limiting contact with the forum to a single commercial transaction." *Pritzker v. Yari,* 42 F.3d 53, 62 (1st Cir. 1994). Relatedness, in the context of personal jurisdiction, has been described as a "'flexible, relaxed standard,'" requiring "only that the claim have a 'demonstrable nexus' to the defendant's forum contacts[.]" *Knox,* 914 F.3d at 691 (first quoting *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 25 (1st Cir. 2005), and then *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998)) (additional citations omitted).

The court agrees with Rooterman that the actions of the Reach and Apply Defendants reached Massachusetts when they engaged in a conspiracy to "accept[] the fraudulent transfer of assets for a business they knew to be enjoined from competition by the Court" and took steps to continue competing against Rooterman, thereby "impacting the litigation here in Massachusetts[.]" (#126 at 12.) *See 18th Ave. Toys*, 2020 WL 7264267, at \*11 (relatedness prong was "readily traversed" where defendant's "intentional machinations" were sufficient to establish that its conduct, despite being out of state, was sufficiently related to the forum state "in that it was timed and calculated to evade the known-to-it proceedings and injunctions in Rhode Island"; specific

jurisdiction was rooted in "conduct directed at evading the power of the [Court]" of the forum state).

  b. <u>Purposeful Availment.</u>

  The gist of the purposeful availment prong is that the exercise of personal jurisdiction must be "voluntary and foreseeable" rather than "premised on a defendant's 'random, fortuitous, or attenuated contacts[.]'" *Knox*, 914 F.3d at 691 (quoting *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011)) (additional citations omitted).  Specific jurisdiction "must rest on a defendant's voluntary contact with the forum and not on 'the unilateral activity of another party or a third person.'" *Id.* at 692 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (additional citation and quotations omitted); *see Burger King Corp.*, 471 U.S. at 474 ("'[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'") (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (ellipsis in original).

  The Reach and Apply Defendants argue that they have not conducted any activity in Massachusetts, let alone "activity that would have purposefully availed them of the privilege of conducting activities in the Commonwealth." (#125 at 4.)  Again, however, the Reach and Apply Defendants' contacts with Massachusetts arise through their having intentionally engaged in activity in knowing violation of an order imposed by a court of this district, contacts that can hardly be said to be random or fortuitous.  According to Rooterman, mere days after the court's April 11 Order enjoining the Defendants from competition, Paterno, through his law firm "and in full awareness of the [O]rder," conspired with Belegu, "his longtime client[,]" to fraudulently transfer assets and continue competing against Rooterman through a new company that shares the same names, employees, and office space as the enjoined businesses.  (#126 at 2, 5, 9-10.)  These assertions are supported by the record exhibits Rooterman cites.  *See* #126-3; *see also 18th Ave.*

*Toys,* 2020 WL 7264267, at *11 (where defendant's conduct "was deliberately adopted in coordination with [an enjoined defendant] to avoid Rhode Island and to defenestrate the power of its federal Court[,]" it had purposefully availed itself of that forum, and there was "nothing unfair, unforeseeable, random or fortuitous about haling [it] into the Court whose orders and authority it strategized to undermine") (additional citation omitted).

   c. Reasonableness.

   "Reasonableness" is evaluated by considering

> (1) the defendant's burden of appearing [in the forum], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Knox,* 914 F.3d at 694 (listing the five "gestalt" factors) (quoting *Ticketmaster-N.Y., Inc. v. Alioto,* 26 F.3d 201, 209 (1st Cir. 1994)) (additional citation omitted) (alteration in original).

   As the Reach and Apply Defendants point out, these factors "'play a larger role in close cases[,]'" which this one is not.  (#125 at 5) (quoting *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 61 (1st Cir. 2016)).  The Reach and Apply Defendants do not address these five factors; nevertheless, this court finds that they do not bend in their favor.  *See 18th Ave. Toys,* 2020 WL 7264267, at *11 (finding that aside from "the *de minimis* burden" on the non-resident defendant in appearing in the forum state, all of the other factors "auger[ed] for the exercise of personal jurisdiction" over the defendant in the forum state).

   Having met all three prongs, Rooterman has carried its burden to demonstrate that specific personal jurisdiction exists over the Reach and Apply Defendants.

  B. Rule 12(b)(3) – The Reach and Apply Defendants Waived the Defense of Improper Venue.

   The Reach and Apply Defendants next move to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue.  In response, Rooterman argues that the Reach and Apply Defendants waived that defense, in addition to "all Rule 12(b)(6) arguments[,]" by failing to assert them in their first

defensive move.  (#126 at 2, 6-8.)

On July 18, 2025, about two months before this motion to dismiss was filed, the Reach and Apply Defendants, citing Fed. R. Civ. P. 12(b)(2), filed a "Motion for Leave to Appear Pro Se for the Limited Purpose of Filing a Motion to Dismiss for Lack of Personal Jurisdiction" (#103).  That same day, they filed a "Motion to Dismiss for Lack of Personal Jurisdiction" (#105).  *See* ##103-06.  Neither of these submissions referenced Fed. R. Civ. P. 12(b)(3) or (6).

Two weeks later, on August 1, 2025, Rooterman moved to strike these filings.  *See* #107.  Rooterman opposed the Reach and Apply Defendants' motions and also sought sanctions against Paterno "for flagrantly . . . citing cases that do not stand for the proposition" for which he had cited them.  (#107 at 7); *see* #108.  On August 19, 2025, the Reach and Apply Defendants, now represented by counsel, moved to withdraw ##103-06.  (#115.)  This court, which had been referred the pending motions, *see* #110, allowed their withdrawal, but in denying Rooterman's motion to strike and for sanctions as moot, remarked that the question whether sanctions was appropriate was "an exceedingly close one."  (#117); *see* #118.

Fed. R. Civ. P. 12(h) provides, in relevant part, that "(1) . . . a party waives any defense listed in Rule 12(b)(2)-(5) by: . . . (B) failing to . . . (i) make it by motion under this rule[.]"  This waiver necessarily encompasses the defense of improper venue, codified in Rule 12(b)(3).  Venue is "a personal privilege which may be waived[,]" and "defendants wishing to raise an improper venue defense 'must do so in their first defensive move, be it a Rule 12 motion or a responsive pleading.'"  *Avidyne Corp.*, 2016 WL 9402846, at *2 (finding that defendant had waived the defense of improper venue where he had failed to raise it in his first defense move) (quoting *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment and Allied Indus. Fund*, 967 F.2d 688, 691-92 (1st Cir. 1992) (emphasis and additional citations omitted); *see Saving Bank Mut. Life Ins. Co. of Mass. v. Advantage One Brokers*, Civil Action No. 1:23-11786-LTS, 2024 WL 6822740, at *3 (D. Mass. July 1, 2024) (waiving any personal jurisdiction defense under Rule

12(b)(2), which defendants should have raised "in their first defensive move").

The Reach and Apply Defendants argue in reply that Rooterman's argument fails to appreciate that their prior submissions, made before counsel was retained, were "withdrawn, without any action from the Court[.]" (#129 at 2.) However, any such distinction in the caselaw or the federal rules is not apparent, as Rule 12(h) "speaks not in terms of adjudication of the motion, but its filing." *Advantage One Brokers*, 2024 WL 6822740, at *4 & n.2 (rejecting defendants' argument that waiver was inapplicable even though the parties had agreed, among other things, "to withdraw the pending motion[] to dismiss" and the court had not adjudicated it).

This waiver does not extend to the defense of failure to state a claim under Fed. R. Civ. P. 12(b)(6). By omitting subdivision (6), among others, from those enumerated defenses capable of being waived, Rule 12(h) "specifically provides that the defense of failure to state a claim pursuant to [Rule] 12(b)(6) is preserved against waiver." *Lu v. Canton Corp.*, Civil Action No. 15-10088-ADB, 2015 WL 2402925, at *1 (D. Mass. May 20, 2015) (citing, and then summarizing, *Hickey v. MetroWest Med. Ctr.*, 193 F. App'x 4, 5 (1st Cir. 2006) (per curiam) for the proposition that a defendant had not waived a Rule 12(b)(6) defense "by failing to include it in [its] first motion to dismiss for insufficient service of process"); *see* Fed. R. Civ. P. 12(h), "Notes of Advisory Committee on Rules—1966 Amendment" ("while the defenses specified in subdivision (h)(1) are subject to waiver as there provided, the more substantial defenses of failure to state a claim upon which relief can be granted," in addition to others not applicable here, "are expressly preserved against waiver by amended subdivision (h)(2) and (3)").

In sum, the Reach and Apply Defendants have waived any defense with respect to improper venue (Rule 12(b)(3)) but not with respect to failure to state a claim (Rule 12(b)(6)).

C. Rule 12(b)(6) – Rooterman Adequately Makes Fraudulent Transfer
   and Civil Conspiracy Claims Against the Reach and Apply Defendants.

The Reach and Apply Defendants make a final argument, under Rule 12(b)(6), that

Rooterman has failed to state a claim against them in Count VI (Fraudulent Transfer) and Count VII (Civil Conspiracy) (Count VII).[10]  (#125 at 9-13.)

### 1. "Fraudulent Transfer" (Count VI).

As set out above, in Count VI, Rooterman alleges that within days of the court's April 11 Order enjoining the Defendants, "Belegu transferred his company assets, and the businesses that were restrained, to his attorney and [the] Reach and Apply Defendants . . . who had formed a corporation specifically named and designed to continue Mr. Belegu's restricted activities."  (#89 ¶ 131.)  According to Rooterman, "substantial assets . . . , such as accounts receivable from the unfairly competing businesses" which "constitute damages" were transferred "with the specific intent to hinder, delay, or defraud" Rooterman and "circumvent th[e] [c]ourt's Order of injunctive relief, in violation of G.L. c.109A, §§ 5 and 6[.]"  *Id.* ¶¶ 132, 134.  Because, as Rooterman explains, "Paterno and/or Paterno & Associates were the first transferees of the interests of the Defendants, or the party for whose benefit the transfer was made," they, "along with 911 Plumbing[,]" are liable to Rooterman "for damages arising from the transfer . . . pursuant to G.L. c.109A, § 9(b)."  *Id.* ¶ 135.

To prevail on a claim of fraudulent transfer under Mass. Gen. Laws ch. 109A, the Uniform Fraudulent Transfer Act ("UFTA"), a plaintiff "must demonstrate (1) that he is a creditor and (2) that [defendant] fraudulently transferred [] property."  *Alford v. Thibault*, 990 N.E.2d 93, 97 (Mass. App. Ct. 2013) (citing Chapter 109A, § 5).

### a. Rooterman is a "Creditor" for Purposes of the UFTA.

The UFTA defines a "creditor" as "a person who has a claim" and a "debtor" as "a person who is liable on a claim."  Mass. Gen. Laws ch. 109A, § 2.  The statute defines "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed,

---

[10] The Reach and Apply Defendants do not address Count VIII ("Reach and Apply") or Count IX ("Accounting") in their motion, so the court does not address these counts.

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id; see Alford*, 990 N.E.2d at 97.

Rooterman alleges that its trademark and breach of contract claims against the Defendants were pending, *see* #7, December 16, 2024 Amended Complaint, ¶¶ 33-55, when the Defendants, in April 2025, fraudulently transferred substantial business assets to the Reach and Apply Defendants, including "accounts receivable from the unfairly competing businesses" that represent an aspect of Rooterman's damages in this litigation.   (#89 ¶ 132.)   The Reach and Apply Defendants argue in response that Rooterman was not a creditor at the time of the alleged transfer but "merely a plaintiff in pending litigation, asserting an unliquidated claim." (#125 at 12.)  The First Circuit, however, has rejected this argument, reading Chapter 109A, § 2 as making "luminously clear" that a plaintiff "is not barred from creditor status merely because her claims are disputed or have not been reduced to judgment."  *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 45-46 (1st Cir. 2020) (acknowledging that "unresolved civil claims . . . are sufficient to confer creditor status") (additional citations omitted); *see Innis v. Robertson*, 854 N.E.2d 105, 110 (Mass. App. Ct. 2006) ("One need not have obtained a judgment in order to qualify as a creditor for fraudulent conveyance purposes.") (additional citation omitted); *see also Hoult v. Hoult,* 862 F. Supp. 644, 650 (D. Mass. 1990) ("It follows that one who is alleged to have committed a tort against another is a 'creditor' of the victim of the tortious activity.")

Accordingly, for purposes of the UFTA, Rooterman is a creditor.

> b. The Reach and Apply Defendants, as the Parties for Whose Benefit
> <u>the Transfer Was Made, are Liable to Rooterman Under the UFTA.</u>

As for the second element of this claim,

> under § 5 of the UFTA, a transfer is fraudulent if a debtor makes a transfer either '(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer . . . , and the debtor . . . (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.'

*Alford,* 990 N.E.2d at 98 (quoting Chapter 109A, § 5(a)(1), (2)(ii)).[11]  Any such transfer must result in a "diminution of the assets available to the creditor." *Id.* (additional citations omitted).

Digging deeper into the statute, Rooterman alleges that under § 9(b), the Reach and Apply Defendants are liable as "(1) the first transferee[s] of the asset or the person[s] for whose benefit the transfer was made; or" as "(2) . . . subsequent transferee[s][.]"[12]  Mass. Gen. Laws ch. 109A, § 9(b). In evaluating fraudulent intent, "[t]he UFTA suggests several factors (i.e., badges of fraud) that a court 'may' consider to determine whether a debtor acted with 'actual intent' to hinder, delay or defraud." *Alford,* 990 N.E.2d at 98 (citing Chapter 109A, § 5(b)(1)-(11)).  Those factors include whether:

. . .

(3) the transfer or obligation was disclosed or concealed;

---

[11] Rooterman focuses its briefing only on whether it has satisfied part (1) of the second element of its fraudulent transfer claim.

[12] Mass. Gen. Laws ch. 109A, § 9 reads, in relevant part, that:

(b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under paragraph (1) of subsection (a) of section eight, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less.  The judgment may be entered against:

(1) the first transferee of the asset or the person for whose benefit the transfer was made; or

(2) any subsequent transferee other than a good-faith transferee or obligee who took for value or from any subsequent transferee or obligee.

Mass. Gen. Laws ch. 109A, § 9(b)(1), (2).  Section 8 in turn provides that:

(a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in section nine, may obtain:

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim[.]

Mass. Gen. Laws ch. 109A, § 8(a)(1).

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

. . .

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mass. Gen. Laws ch. 109A, § 5(b).

The Reach and Apply Defendants do not address these factors but argue that the transfer "reflects a lawful and straightforward effort to recover debts owed, not an intent to hinder, delay, or defraud Rooterman." (#125 at 12.) The court disagrees. In this case, § 5(b)'s "badges" cut against the Reach and Apply Defendants and in the direction of fraud. Rooterman plausibly alleges that within days of having been enjoined by the court and ordered not to compete, the Defendants, in coordination with the Reach and Apply Defendants and with notice of the injunction and Rooterman's legal claims against them, intentionally transferred substantial assets—assets that allegedly represent the "profits of unfair competition" and the "fruits" of the Defendants' "use of [Rooterman's] trademarks for months post-termination"—to the Reach and Apply Defendants in an attempt to hinder Rooterman from recovering its alleged damages and in an effort to facilitate ongoing competition. (#126 at 4, 14, 17); *see* #89 ¶ 132.

Taking a different tack, the Reach and Apply Defendants cite Fed. R. Civ. P. 9(b) and argue that Rooterman's allegations do not satisfy Rule 9(b)'s heightened pleading standard where they fail to state "with particularity the time, place, or manner of any fraudulent act[.]" (#125 at 10.)

The First Circuit has suggested that "[w]hether and to what extent Rule 9(b) applies to fraudulent conveyance claims, brought under either the UFTA or the common law, is a matter of some uncertainty[.]" *Foisie*, 967 F.3d at 49-50. To the extent the Rule applies, "it would require only that a plaintiff specify in sufficient detail the who, what, where, and when of the challenged transfers" and nothing more. *Id.* (additional citation omitted).

Rooterman easily meets that particularity standard here, and its allegations do not demand the sort of "exceptional inferences" that the Reach and Apply Defendants suggest are necessary. (#125 at 10.) Rooterman alleges with sufficient detail (1) "who" engaged in the allegedly fraudulent transfer: the Defendants and the Reach and Apply Defendants, through RM Water Damage Restoration LTD and Belegu, as "Sellers," and Paterno, as "Buyer"; (2) "what" was transferred: substantial business assets,[13] including accounts receivable described in the "Contract for the Sale of Assets" as being in exchange for "all obligations owed to [Paterno's] law firm" but which Rooterman alleges are in reality damages it is owed in this lawsuit; (3) "where" the transfer occurred: presumably in New Jersey, given the citizenship of the Defendants and Paterno and the location of the newly-incorporated business;[14] and (4) "when" it was transferred: on April 15, 2025, just four days after the court's Order on Rooterman's Motion for Preliminary Injunction.

The Reach and Apply Defendants, for whose benefit the fraudulent transfer was made, are "transferees" for purposes of Mass. Gen. Laws ch. 109A, § 9(b), and Rooterman states a plausible fraudulent transfer claim against them.

2. "Civil Conspiracy" (Count VII).

---

[13] To the extent the Reach and Apply Defendants argue that the business assets transferred were "passive in nature and unrelated to the operation of a competing business[,]" the court finds that resolution of this argument is inappropriate at this stage. (#125 at 7.)

[14] As the Reach and Apply Defendants disclose in reply, Paterno & Associates "has maintained offices" at this very same address, an address it apparently shares with 911 Plumbing. (#129 at 5.)

Rooterman alleges that

> [i]mmediately after the Court entered its April 11 Order, Defendants transferred Mr. Belegu's operations in Defendants and substantially all of their assets . . . and engaged in a conspiracy with the Reach and Apply Defendants to undertake that fraudulent transfer, attempt to circumvent th[at] [Order][,] and conduct the same business that was enjoined.

(#89 ¶¶ 139, 143.)

Under Massachusetts law, two possible causes of action may be labelled "civil conspiracy." *See Soni v. Boston Med. Ctr. Corp.,* 683 F. Supp. 2d 74, 100 (D. Mass. 2009). The form which Rooterman alleges here "'is more akin to a theory of common law joint liability in tort[,]' and it 'is invoked to support liability of one person for a tort committed by another.'" *Id.* (quoting *Aetna Cas. Surety Co. v. P & B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994)). Such a claim requires that a plaintiff show "'a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement.'" *Id.*; *see Bartle v. Berry*, 953 N.E.2d 243, 253 (Mass. App. Ct. 2011). "'[A]n inference of an implied agreement [can] properly be drawn from the conduct of two or more parties.'" *Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018) (quoting *Kyte v. Philip Morris, Inc.*, 556 N.E.2d 1025, 1028 (Mass. 1990)) (alterations in original).

As the Reach and Apply Defendants acknowledge, Rooterman's civil conspiracy claim is derivative, and its success depends on Rooterman demonstrating "the underlying tortious act of the alleged fraudulent transfer." (#125 at 10-11.) Although the Reach and Apply Defendants dispute the existence of any fraudulent transfer claim, this court has found that the second amended complaint plausibly alleges the claim. Moreover, though Rooterman lacks proof of any express agreement between them, Rooterman's allegations support the reasonable inference that the Defendants and the Reach and Apply Defendants conspired to fraudulently transfer assets Rooterman claimed as damages in this litigation in order to evade Rooterman's recovery, satisfy legal expenses, and incorporate a new company that would continue to compete against it.

Accordingly, Rooterman states a plausible civil conspiracy claim against the Reach and Apply Defendants.

IV. Conclusion.[15]

For these reasons, the court recommends that the Reach and Apply Defendants' motion (#125) be denied.

December 19, 2025                                          /s/ M. Page Kelley
                                                          M. Page Kelley
                                                          United States Magistrate Judge

---

[15] Under the provisions of Fed. R. Civ. P. 72(b), any party who objects to this Report and Recommendation must file specific written objections with the Clerk within fourteen (14) days of receipt of this Report and Recommendation. The objections must specifically identify the portion of the Report and Recommendation to which objections are made and state the basis for such objections. Non-compliance waives review. *See Santos-Santos v. Torres-Centeno*, 842 F.3d 163, 168–69 (1st Cir. 2016).